KYRA A. KAZANTZIS (SBN: 154612) kyrak@lawfoundation.org
ANNETTE D. KIRKHAM (SBN: 217958) annettek@lawfoundation.org
NADIA AZIZ (SBN: 252966) nadia.aziz@lawfoundation.org
THOMAS P. ZITO (SBN: 304629) tom.zito@lawfoundation.org
LAW FOUNDATION OF SILICON VALLEY
FAIR HOUSING LAW PROJECT
152 North Third Street, 3rd Floor
San Jose, CA 95112
Telephone: (408) 280-2411
Facsimile: (408) 293-0106

CONSTANCE F. RAMOS (SBN: 203637)  cframos@winston.com
COREY D. ATTAWAY (SBN: 306752)  cattaway@winston.com
WINSTON & STRAWN, LLP
101 California St., 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (OAKLAND OR SAN FRANCISCO DIVISION)

|  |  |
|---|---|
| DOMENICA LEWIS; JERROLD LEWIS; DOMENICA LEWIS as guardian ad-litem for their minor children S. L. and E. L., on behalf of themselves and all others similarly situated; and PROJECT SENTINEL, a California non-profit corporation, on behalf of itself and the general public,<br><br>          Plaintiffs,<br><br>     v.<br><br>SILVERTREE MOHAVE HOMEOWNERS' ASSOCIATION, INC., CAROL LEE ADAMS a/k/a LEE ADAMS, MARILYN BLACK, ANAND BHASKARAN, and TAMELA DURANT, individually and as members of the Board of Directors of Silvertree Mohave Homeowner's Association, Inc.; and DONALD W. MURPHY individually and d/b/a  MANAGEMENT SOLUTIONS,<br><br>          Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL FAIR HOUSING ACT, CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, UNRUH ACT, AND FOR BREACH OF FIDUCIARY DUTY**<br><br>**[42 U.S.C § 3601, et seq.; Cal. Gov't Code 12955 et seq.; Cal. Civ. Code § 51; Cal. Corp. Code § 7231]**<br><br>**DEMAND FOR JURY TRIAL** |

# I. **INTRODUCTION**

1.      This action arises from Defendants' intentional and unlawful discrimination against children and families with children living at the Silvertree Mohave Condominium complex, located at 416 Sequim Common in Fremont, California ("the Complex").  For more than 15 years, Defendants have unlawfully implemented, enforced, and maintained rules that prohibit resident children from engaging in the most natural of childlike behavior: outdoor play.

2.      To the detriment of the community, Defendants have conducted a malicious campaign of prohibiting resident children from engaging in any outdoor play in the common areas of the Complex, and have threatened and intimidated even very young children with intent to discourage those children from using and enjoying the outdoor gardens and other common areas, including for quiet enjoyment.  Defendants' actions unlawfully discriminate against residents of the Complex based upon age and family status.

3.      Plaintiffs Domenica and Jerrold Lewis are resident owners in the Complex with two young children.  They bring this action for damages, injunctive and declaratory relief on behalf of themselves, their minor children, and all other similarly situated residents and former residents of the Complex, for injuries caused by Defendants' unlawful acts. The Complex is a common-interest development community, established in 1983, consisting of 108 condominium homes, separately owned by individual homeowners.

4.      Plaintiff Project Sentinel is a non-profit fair housing organization, and joins the Lewis's complaint for Defendants' violations of federal and state fair housing laws.  When the Lewis family and other residents of the Complex complained to Project Sentinel, Defendants retaliated by engaging in a campaign of intimidation against residents and homeowners. The Lewis family and Project Sentinel now bring this suit to recover damages for all families affected by Defendants' unlawful acts in violation of the Federal Fair Housing Act (42 U.S.C § 3601, et seq.), California's Fair Employment And Housing Act (Cal. Gov't Code 12955 et seq.), and the Unruh Civil Rights Act (Cal. Civ. Code § 51), and to stop Defendants from continuing their illegal and threatening activity.  Plaintiffs further seek damages and injunctive relief from each

**COMPLAINT, Lewis v. Silvertree-Mohave HOA et al.**

individually named board member of the Silvertree Mohave Homeowner's Association (defendants Marilyn Black, Carol Lee Adams, Anand Bhaskaran, and Tamela Durant), and its agent Donald Murphy, in connection with their individual and collective violations of their fiduciary duties to homeowner residents in the Complex under California Corporations Code § 7231.

## II.    JURISDICTION AND VENUE

5.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state law claims, because those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of related facts.  Plaintiffs' state law claims under California's Fair Employment And Housing Act and the Unruh Civil Rights Act are related to Plaintiffs' federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

6.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) in that the unlawful conduct that gives rise to these claims occurred within the Northern District of California.

## III.    INTRADISTRICT ASSIGNMENT

7.     Intradistrict assignment in Oakland or San Francisco is proper because the unlawful conduct that gives rise to these claims occurred in Alameda County and the Complex is located in Fremont, a city of Alameda County, California.

## IV.    PARTIES

8.     Plaintiffs Domenica and Jerrold Lewis are resident owners in the Complex. When they purchased and moved into their condominium in 2007, they had no children.  They now have two minor children: E. L. (age 8) and S. L. (age 5), both of whom are represented herein by their guardian *ad litem*, plaintiff Domenica Lewis.

9.     Plaintiff Project Sentinel is a non-profit corporation organized under the laws of the State of California with its principal place of business located at 1490 El Camino Real in

Santa Clara, California.  Project Sentinel's mission is to develop and promote fairness and equality of housing for all individuals, and to advocate peaceful resolution of disputes for community welfare and harmony.  One of its specific goals is the elimination of all forms of illegal housing discrimination.  To this end, the activities in which Project Sentinel engages include, but are not limited to:  (1) investigating allegations of discrimination; (2) conducting tests of housing facilities to determine whether equal opportunity in housing is provided; (3) taking such steps as it deems necessary to ensure such equal opportunity and to counteract and eliminate discriminatory housing practices; and (4) providing outreach and education to the community with the goal of preventing housing discrimination.

10.     Defendant Silvertree Mohave Homeowners' Association, Inc. (the "Association"), is a California corporation that was established to govern the operation and management of the Complex through the promulgation, implementation, and enforcement of Rules and Regulations (the "Rules") consistent with the Second Restated Declaration of Covenants, Conditions, and Restrictions (hereinafter "CC&Rs") and the Restated Bylaws (hereinafter "Bylaws").

11.     All homeowners in the Complex are members of the Association.  Thus, upon purchase of their condominium in 2007, Mr. and Ms. Lewis became members of the Association.

12.     Defendant Marilyn Black is a member of the Association's Board of Directors (the "Board").  She is currently the Secretary of the Board.  She has been a member of the Board and its Secretary since at least 2002.  As far as Plaintiffs are aware, Ms. Black is a resident owner.

13.     Defendant Carol Lee Adams has been a member of the Board and its President since at least 2002.  As far as Plaintiffs are aware, Mr. Adams owns two condominiums in the Complex, but lives in Oakdale, California.

14.     Defendant Anand Bhaskaran has been a member of the Board since at least 2013.  He is currently the Treasurer of the Board.  Mr. Bhaskaran owns a condominium in the Complex, but as far as Plaintiffs are aware, he lives in another location in Fremont, California.

**COMPLAINT, Lewis v. Silvertree-Mohave HOA et al.**

15.     Defendant Tamela Durant has been a member of the Board and its Vice President since at least 2004.  As far as Plaintiffs are aware, Ms. Durant is a resident owner in the Complex.

16.     Each of the Defendants Black, Adams, Bhaskaran, and Durant, as Board members, are individually and collectively vested with the authority to implement and enforce the Rules of the Complex, consistent with the CC&Rs and for the benefit of all homeowners.

17.     Defendant Donald W. Murphy owns and operates Management Solutions. Management Solutions is a fictitious business name for Mr. Murphy.  Defendant Murphy was hired by the Association sometime before the year 2000 to manage the Complex, and is the Association's agent for service of process.  Since at least 2000, Defendant Murphy has managed the duties and responsibilities of the Association to its homeowners, pursuant to Article V, Section 5.2C of the CC&R's.  Defendant Murphy's business address is 6200 Buena Vista Drive, Newark, California.

18.     At all times relevant to this complaint, Defendants Black, Adams, Bhaskaran, Durant, and Murphy were the agents and/or employees of the Association and of each other; each Defendant was acting within the scope of such agency or employment in doing the things herein alleged, and the alleged acts or omissions of each Defendant were subsequently ratified and adopted by each other.

## V.     FACTS

### Background

19.      Mr. and Ms. Lewis moved into the Complex in March 2007.  It was the first home that they had purchased together.

20.     They chose to purchase in the Complex because it appeared to be a nice place to raise children, it was close to their immediate family, and Mrs. Lewis was expecting their first child.  Shortly after they moved in, their son, E.L., was born.

21.     While none of the condominium homes have any private yard space, the Lewis's condominium, as with many others, faces an adjacent, large common area, along with approximately 30 other condominiums.  The Complex's condominiums are grouped and

arranged around three such common areas, called "quads." Until recently, and at the time the Lewises moved into the Complex, two quads (including theirs) contained grass and redwood trees, and the third (center) quad contained a grassy area around the community pool.

22.     The common areas of the Complex—including the quads and swimming pool—are designed and designated for use by all residents in the CC&Rs.  There is no restriction against children, and no restriction against outdoor play in the common areas.  In fact, the basic configuration of the Complex, with individual condominium homes each facing into an open, common quad area, naturally invite community interaction, including play among resident children.

23.     There are no parks or playgrounds in the immediate area around the Complex; the nearest park is the Warm Springs Park about half a mile away, which requires crossing a street with high traffic volume to reach.  It is a dangerous street for children to cross, especially young children, even when accompanied by an adult.  It is also an inconveniently long walk for young children.

24.     Mr. and Mrs. Lewis were unaware at the time they purchased and moved into the Complex that the Association had a long history of discrimination against children and families with children; in particular, a history of rules that forbid children to play in the common areas of the Complex, including the quad areas.

### The History of Discrimination Against Families with Children at Silvertree Mohave

25.     The Association publishes a monthly newsletter for the residents and homeowners called the "Silvertree Mohave Newsletter" (the "Newsletter").  Among other things, the Newsletter purports to provide "legal notice" to all members of the Association.  Resolutions passed by the Board are published in the Newsletter.

26.     The Newsletter is published by Management Solutions and sent to all Association members by Management Solutions.  The Board requires nonresident homeowners to provide the information in the Newsletter to their tenant residents in the Complex.

27.     According to the Board's documents and Newsletters, since at least August 30, 2000, the Association has had a multitude of rules, stated in various forms and enforced by fines,

**COMPLAINT, Lewis v. Silvertree-Mohave HOA et al.**

which discriminate against children and families with children, and which continue to this day. *See, e.g.,* Exhibits 1-5 (example Newsletters).

28.    For example, on information and belief, as of at least August 30, 2000, the Association has enforced rules prohibiting children under the age of 14 from playing in all common areas of the Complex, including swimming in the pool without adult supervision, and playing outside with or without adult supervision.

29.    For example, in response to occurrences of children playing in the common areas in September 2003, the Board passed a resolution prohibiting "all sports play within the quad areas." The 2003 Resolution, as passed, reads:

> RESOLVED, THAT ALL MEMBERS OF THE SILVERTREE HOMEOWNERS ASSOCIATION AND THEIR FAMILIES, ARE PROHIBITED FROM ENGAGING IN ANY SPORTS PLAY ACTIVITY WITHIN THE QUAD AREA OF THE SILVERTREE MOHAVE COMMON AREA.

30.    The reason stated by the Board for passing the 2003 Resolution alleged that flag football was "now being played in the quad areas," which had "resulted in increased noise problems with neighbor disputes and increased cost, time and involvement of the Association and Management Solutions in properly maintaining this Common Area." However, there is no mention in any Board meetings minutes for all of 2002 and through September 2003 that any members of the Association or residents of the complex had been playing flag football in the quad areas. Rather, the July and August 2003 board minutes discuss children playing in the common area.

31.    The 2003 Resolution was signed by Marilyn Black as Secretary of the Board.

32.    In connection with the 2003 Resolution, the Board implemented the following Rule:

> There is no running, skating, skateboarding, bicycling, roller-blading, playing ball or any kind of sports activity permitted within the Common Areas of the Association. Any activity, which could

cause damage or a nuisance to others, such as basketball, football and general rough play, is prohibited.  This includes sidewalks, lawn areas, ground cover areas, parking areas, etc.  Any infraction is an insurance liability and subject to automatic fine of $50.00 for each infraction.

Silvertree Mohave Homeowners Association Rules and Regulations, Revised and Approved: 9-08-03 at Rule 1.7.

33.    On information and belief, the Association insurance policy does not prohibit or address the activities enumerated in the above Rule.

34.    Similarly, notices have been published in the Newsletter continually from 2003 to the present, referring to a "No Sports Activity Policy" within the Association, "due to potential liability of children getting hurt," and threatening fines for "non-approved play."

35.    The Board has repeatedly assessed fines against residents whose children have been seen playing in the common areas from at least 2004 to 2015.

36.    The Board went so far as to encourage residents of the Complex to make complaints to "Child Protection Services." [1] Specifically, the June 2004 newsletter stated:

It is recommended to all residents, if you see small children alone in any of the common areas, call: *Child Protection Services.*"

(Emphasis original.)  (*See* Exhibit 2.)

37.    The July 2004 Newsletter further requested that residents of the Complex photograph other residents' children playing in the common areas, and reiterated that "[c]hildren playing in the common area must be supervised by an adult (parent) at all times."  (*See* Exhibit 3.)

---

[1] The Alameda County Department of Social Services is the county department that is responsible for responding to complaints of neglect or child abuse to the California Department of Social Services - Child Protective Services. *See* http://www.dss.cahwnet.gov/cdssweb/pg93.htm and http://www.alamedasocialservices.org/public/services/ children_and_family/responding.cfm (both websites last accessed June 24, 2016).

COMPLAINT, Lewis v. Silvertree-Mohave HOA et al.

38.     Defendants have also threatened parents that any children's toys, scooters, bikes, or baby strollers in the landscape, common areas, and outside of a resident's front door would be "removed by on-site maintenance and disposed of."

39.     At all times relevant to this complaint, Newsletters have repeatedly informed residents that *all play* is prohibited in the common areas, singling out as examples of prohibited activity use of children's toys and typical child play activities.

40.     On information and belief, Defendants—through Association Newsletters and personal communications to individual parents of resident children—have repeatedly falsely alleged that outdoor child play in the common areas is prohibited under the CC&Rs and Bylaws, and that children playing outdoors in the common areas poses an "insurance risk liability" to the Association.

41.     Fines for "children playing in the common areas" dramatically increased from $50 to $250, per infraction, from 2003 to 2015.  Some examples include:

| *Date* | *Fine* | *Reason* |
|---|---|---|
| June 2004 | $50 | Child resident seen playing in the landscape and using sidewalk chalk |
| July 2006 | $100 | Child resident had ridden his bike across a lawn |
| April 2015 | $50 (per occurrence) | Resident children observed playing outside |

42.     At least as early as August 2006, Newsletters have informed the residents and homeowners that the Complex has "no safe areas for children to play," presumably as justification for the "no play" Rule.  Board meeting minutes reflect that Defendants view children as "an insurance liability for safety" when they are in the common area, and that allowing children in the common area "is dangerous and unsafe."

43.     On information and belief, from at least 2007 to 2013, the Board routinely published legal notices in the Newsletter stating that no children under 14 are allowed to be outside in any common area without adult supervision, and that no children were allowed to engage in any "sports activity," broadly defined to include any sort of the usual outdoor play

activity of young children, such as riding scooters, playing in or around landscaped areas, tossing balls or Frisbees, playing near the common area access stairs and steps to their homes, playing with sidewalk chalk, riding bikes, climbing trees and/or pulling on tree branches, running, and sitting ("loitering") on the steps.

44.   From April 2014 through March 2015, every monthly Newsletter included the following notice to all residents:

### NO SPORTS ACTIVITIES IN THE COMMON AREAS

We seem to keep having the same issues with residents refusing to comply with our association's "NO SPORTS ACTIVITIES OR PLAYING IN THE COMMON AREAS" rule.

As stated in the CC&R's Bylaws, riding bikes, skateboards, scooters, etc.; on the narrow sidewalks through the landscape or around the small court landscaped areas etc., is *NOT ALLOWED!* This is an *automatic $250.00 Liability Violation Fine* and residents that are reported not complying with this rule will be fined.

For the safety of all residents, there is *NO SPORTS ACTIVITIES OR PLAYING IN THE COMMON AREAS* such as the quad, driveways, carports, etc. No play activity of any kind is allowed within the association. There are parks in the area for this type of activity.

Please be reminded that the following is not permitted for any resident to be doing in any common area:

-No riding bikes on sidewalks, in the driveways, in the quad areas, etc.

-No baseball, football, ball or Frisbee throwing, or basketball

-No loitering on the steps of stairwells

-No big wheel riding or any type of bike riding

-No climbing trees or pulling the tree branches

-No playing in or around the stairwells, driveways, carports or trash enclosures

-No skateboarding, roller skating, rollerblading, razor scooters or motorized scooters

-No motorized driving vehicle toys

-No residents under the age of 14 are to be left unsupervised/unattended at anytime

-No tampering with fire extinguishers

**COMPLAINT, Lewis v. Silvertree-Mohave HOA et al.**

-No chalking on sidewalks, driveways or in carport areas

This list is long for the many things that residents are *not permitted* to do within the common areas of the association. This is a very important safety and liability issue that we cannot express enough to all residents. We worry about everyone's safety within our community. Again, it's an automatic $250.00 fine, per occurrence.

(emphasis in the original documents).  Exhibits 4 and 5 reflect the relevant excerpts from the April 2014 and March 2015 newsletters.

45.     Contrary to the above notice, there is no language in the CC&Rs or Bylaws that prohibits any of the above-listed uses of the common areas.  In fact, the CC&Rs specifically provide:  "Each unit owner may use the condominium common area and recreational common area in accordance with the purposes for which they are intended without hindering the exercise of or encroaching upon the rights of any other unit owners."  Article 2.2(B).

46.     On information and belief, and at all times relevant to this complaint, Defendants have never enforced the Rule prohibiting sports activity in the common areas, nor sent a letter of intent to fine for violation of that Rule in connection with any adult's violation or alleged violation of that Rule. The Board has only enforced the "No Sports Activity in the Common Area" rule against children and families with children.

### *Removal of Grass in the Common Areas to Discourage Enjoyment By Children*

47.     Condominium homes in the Complex are arranged in groups of three quadrangles, each containing a common area quad.  One of the quads includes a swimming pool.  All common area quads, including the swimming pool, are intended for use by all residents.

48.     From the time that the Lewis family moved into their home through 2014, the common area quads had grassy lawns.  However, in or about late 2014 or early 2015, in part because children had been playing on the grass, the Association removed all grass from two of the three quads (including the quad in which the Lewis plaintiffs live), and replaced it with tanbark, rocks, and other plants.  This new landscaping is not conducive or suitable for children to play on or around.  On information and belief, this act was a violation of the CC&Rs, effectively eliminating the use of the open quad area for the enjoyment of child residents.

**COMPLAINT, Lewis v. Silvertree-Mohave HOA et al.**

*Events Beginning in April 2015 and Continuing Through the Present*

49.     In April 2015, a preschool child who lived in one of the condominiums threw a Frisbee that landed in the tanbark in the middle of her quad.  When two children went to retrieve the Frisbee, they were confronted by Defendant Marilyn Black.  Ms.  Black began yelling at the children, apparently because they had been playing in the common areas.  The children were both less than five years old, and were petrified with fear by Ms. Black's behavior.

50.     The parents of these preschoolers, who were outside supervising their activities at the time, quickly approached Ms. Black to intervene.  Mr. Lewis also approached Ms. Black and the two parents to observe the conversation.  The parents asked Ms. Black to stop yelling at their children because she was frightening them. They requested that instead she address her concerns to the parents.  Ms. Black, however, continued yelling at the preschoolers, making accusations about violating the common area rules.  Ms. Black's continuing exhibition of threatening behavior towards these two small children prompted their parents to call the Fremont Police Department, who responded and spoke to all parties about the altercation.

51.     Shortly thereafter, on or about April 8, 2015, Management Solutions sent Mr. and Mrs. Lewis a letter stating that the Association intended to fine the Lewis family because it had been reported that "the small residents from your unit are playing and running through the landscaping within the association which is not permitted."  The letter went on to state: "As per the association's rules and regulations, absolutely no sports activities are permitted.  We post this in every monthly newsletter, and all residents are required to follow the rules and regulations of the association. We have parks within our community for activities such as these."  The letter also stated that if the Lewis children did not stop playing outside, they would be fined $50.00 for each time they were observed doing so.  The letter was copied to another resident family with children, the tenants of 46630 Winema Common.

52.     The intent of the letter was to intimidate and harass the Lewis Plaintiffs and other resident families with children, apparently in retaliation for the incident involving Ms. Black, the preschool children, and the Fremont police.  The Lewis children, E.L. and S.L., had been present

and playing in the quad area the day that Defendant Black yelled at the young children over the Frisbee play.

53.     As far as Plaintiffs are aware, the parents of the other children who had attempted to retrieve the Frisbee were sent identical letters from Management Solutions, as the Association sought to fine them for their children's play activity in the quad as well.

54.     A week later, on or about April 13, 2015, the Plaintiffs and ten other households sent a six-page letter to the Association ("First Letter to HOA") describing the acts of Defendant Black screaming at young children and reporting the actions of Ann Filo, a resident owner and agent of the Board.  At all times relevant to this complaint, Ms. Filo has been an agent of the Board and regularly meets in executive session with the Board.  Ms. Filo had been observed taking photographs of young children in common areas without the knowledge or consent of those children's parents.

55.     The First Letter to HOA signed by members of all 11 households demanded that the Association do two things: "1) Abolish any HOA rules that discriminate against families with children" and "2) Instruct[] resident[s] to not take the enforcements in their own hands."  The letter included the full-page notice from the February 2015 Newsletter regarding "No Sports Activities in the Common Areas" (as reproduced above), and included a multi-page FAQ on fair housing law, describing examples of rules that were discriminatory against families with children.

56.     Mr. and Mrs. Lewis attended the next Board meeting in April, along with other parents who had also been threatened with fines.  (Some parents were informed that they could not participate in the board meeting because they were tenants, not "members," and therefore not entitled to participate.)  Ann Filo met with the Board in a closed, executive session at the conclusion of the meeting.

57.     The minutes from the April 2015 Board meeting contain false allegations that "foul language" had been used against Ms. Black during the altercation over the Frisbee play the week before.  The minutes went on to state, "[t]he bigger issue is youths playing in common

area."  The meeting minutes repeatedly refer to the preschool children who were involved in the Frisbee play incident as "youths."

58.     Following the April 2015 Board meeting, and, as outlined in more detail below, Project Sentinel began an investigation of the Defendants' discriminatory rule against outdoor play in the Complex.

59.     On or about May 5, 2015, Mr. and Ms. Lewis and other residents sent the Association another letter which addressed issues raised at the April 2015 Board meeting and the First Letter to HOA. The letter requested that the Board "Abolish any rules that are illegal and discriminate against families with children" and "Consider residents' suggestions for making this community fair to residents of all ages."  The letter also contained suggestions such as installing artificial turf, removing rocks and stumps, and leaving it up to parents as to when their children's play required supervision.

60.     In May 2015, the Board voted 3-1 to suspend the "No play in the common area" rule, in response to parents' written concerns.  Defendant Black voted against suspending the rule.

61.     The Board also approved the April minutes which included the false accusation that residents had used foul language towards Ms. Black.  In response, one of the parents involved in the Frisbee play incident wrote to Defendant Murphy of Management Solutions, reiterating that no one used foul words at all, and requesting that the minutes be amended to reflect that fact.

62.     Instead of offering to raise the issue with the Board, Defendant Murphy replied to the resident by writing: "There is no discrimination going on at this time.  This is all on hold as the board gets a handle on all of this. Marilyn [Black] is being discriminated against by individuals threatening to cause bodily injury to her with a bat. All of this will be discussed at the June meeting. Continued resolution is in the works."  The allegation that Ms. Black had been threatened with a bat was false.

63.     Throughout June, July, and part of August 2015, the rule remained in suspension while the Board considered and rejected residents' proposals to resolve this dispute, and

considered but rejected its own proposal to build a playground/designated play area for resident children, on speculative and unsubstantiated grounds that providing a designated play space was a "liability issue."

64.      Meanwhile, on July 13, 2015, the Board expressly allowed Defendant Black to install surveillance/security cameras in her home.  Ms. Black installed security cameras and pointed those cameras out into the recreational common area adjacent to her home.  Upon information and belief, she has been recording the activity of all children in the recreational common areas without their parents' permission or authorization, for the purpose of harassing and intimidating children and families with children.  As far as Plaintiffs are aware, Ms. Black only activates the cameras when children and other residents are in the recreational common areas, which were designed and intended for recreational use and enjoyment of all residents.

65.      The video monitoring by the Association of the recreational common area adjacent to Ms. Black's home offends and intimidates the residents of that quad, and specifically the Lewis family and at least two other resident families, including their minor children.  As such, it substantially interferes with the quiet enjoyment of the common areas, in contravention of the CC&Rs.

66.      On August 10, 2015, the Board approved an "emergency rule" that again prohibited typical outdoor child play activities in the common areas, namely, "(1) the use of bicycles, skates, scooters and the like on pedestrian walkways or sidewalks; and (2) prohibiting the use of stairs to recreate, run up and down or loiter."  One month later, on September 14, 2015, the Board voted to make this rule permanent.

67.      On October 5, 2015, Defendant Murphy sent a "Letter of Intent to Assess" to Mr. and Mrs. Lewis on behalf of the Association.  The letter read, "During a recent inspection, we noticed that there was a resident from your unit riding her scooter in the Common Area on September 16th at 7:20pm.  The Association does not permit the Common Area for playing or riding scooters."  The resident in question could only have been Plaintiff S.L., who was only five years old at the time.

68.     On October 7, 2015, Defendant Murphy also sent Mr. and Mrs. Lewis a letter of the Association's intention to fine them because their puppy was observed off-leash in the common area.  In response, Domenica Lewis provided Mr. Murphy and the Board with documentation demonstrating that the puppy had a broken leg, was consequently in a cast, and was ordered to be off-leash until the cast was removed.

69.     Nonetheless, the Association, through the Board and Mr. Murphy, subsequently fined Mr. and Mrs. Lewis $250.00 for having their puppy off-leash on October 19, 2015, at 5:53 p.m.  On information and belief, Defendant Black's offensive and intimidating surveillance cameras provided the Board with such alleged specifics.

70.     On information and belief, the fine was assessed and levied against the Lewis family by the Board and Management Solutions, in order to harass and intimidate Mr. Lewis, in retaliation for Mr. Lewis's involvement in petitioning the Board for a rule change concerning the common areas.

71.     On information and belief, Defendant Black's intrusive and intimidating use of surveillance cameras, aimed at discouraging children from engaging in outdoor play in contravention of the CC&Rs, is used to obtain information about the Lewis family and others who challenge the illegal "no play" rule, for the potential use of such information for retaliatory (or otherwise "chilling") purposes.

### *Other Acts of Defendants' Surveillance Against Children for Discriminatory Purpose*

72.     On information and belief, Ann Filo, who, while acting as an agent of the Board, takes photographs of children playing in the recreational common areas without parental consent, and provides those photographs to the Board for discriminatory purposes.

73.     Ms. Filo has been seen yelling at children and parents on numerous occasions about children playing in common areas, telling parents to "take the kids to the mall or the park."

74.     On at least one occasion, Ms. Filo stopped Plaintiffs S.L. and E.L. (ages five and eight) in order to take a video and audio interview of them, specifically questioning them about playing in the common area.  She took this video without parental permission or knowledge. Moreover, Ms. Filo did not inform S.L. or E.L. that they were being video or audio recorded.

**COMPLAINT, Lewis v. Silvertree-Mohave HOA et al.**

Rather, Ms. Filo approached S.L. and E.L. and began speaking to them with a tablet computer in her hand.  S.L. and E.L., as young children, were too intimidated to say "no" to Ms. Filo.

75.     On information and belief, Ms. Filo provided that video to the Board in an executive session, which is closed to other members of the Association.  Ms. Filo has participated in numerous closed executive sessions with the Board.

76.     On information and belief, Ms. Filo has made audio and video recordings of other resident children of the Complex and provided those recordings to the Board in order to enforce the discriminatory "no sports play" rule.

### Other Facts Specific To Mr. And Mrs. Lewis And Their Minor Children.

77.     Mr. Lewis homeschools his two minor children, S.L. and E.L.  Mr. Lewis began homeschooling E.L. in 2011.

78.     Under the curriculum they are required to follow, Mr. Lewis must ensure that the children get at least sixty (60) minutes of outdoor physical activity as part of the physical education requirement.

79.     Because of the illegal rules prohibiting outdoor play in the common areas, Mr. Lewis drives both children to local public parks every day of the week to meet their physical education requirement.  Because of the dangers presented by the busy street adjacent to the Complex, the young ages of their children, and the distance involved, any time the Lewis children wish or need to play outside, one of the parents must drive them to the park.  Similarly situated parents living at the Complex bear the same burden.

80.     Preparing the children and travelling to and from a park outside of the Complex takes at least an additional hour each day.  Again, Mr. Lewis must do this to ensure his children receive the required 60 minutes of daily outdoor physical activity and also comply with the Association's "no play" rule.

81.     Additionally, in order to allow the children to play outside and unmolested by members of the Board and/or its agents, Mr. and Mrs. Lewis must take their children to local public parks.

82.     While taking the children to the parks, Mr. Lewis has been confronted by Defendant Black on several occasions where she accuses him of letting the children play in the recreational common area.  Often when he is preparing to leave the house, the children will run outside ahead of him while he collects belongings and locks their home.  On more than one occasion, Ms. Black confronted him while he was locking his door, admonishing him that the children were forbidden from playing in the tanbark and other common areas.

### *The Importance Of Children Being Allowed To Engage In Outdoor Play.*

83.     The American Academy of Pediatrics ("AAP") recommends that children be physically active for at least 60 minutes per day.[1]

84.     According to a policy statement of the AAP, a good way to meet this physical activity need is "through an active lifestyle, including outdoor play and walking or biking for transportation.  For preschool-aged children, outdoor play may be particularly important, because their highest levels of physical activity occur outside."[2]

> Play enhances physical health by building active, healthy bodies. . .
> Children who are not engaged in play and physical activity outside of school hours spend time engaged in sedentary activities, such as viewing hours of television, playing video games, or listening to music.  This time is often spent in isolation without social interaction and without adult supervision.  In sharp contrast to the benefits of active, creative play, there is substantial evidence that excessive screen time has adverse effects.[3]

85.     Defendants' actions complained of herein are directly contrary to AAP policy and its 60-minutes-per-day recommendation and, as such, have caused harm to resident children of the Complex, and will continue to cause harm if not enjoined.

---

[1] Committee on Environmental Health, *The Built Environment: Designing Communities to Promote Physical Activity in Children*, Pediatrics vol. 123, June 2009 at 1592.
[2] *Id.*
[3] Regina M. Milteer, MD and Kenneth R. Ginsburg, MD, MSEd, *The Importance of Play in Promoting Healthy Child Development and Maintaining Strong Parent-Child Bond: Focus on Children in Poverty*, Pediatrics vol. 129, Jan. 2012, e205, e207.

**COMPLAINT, Lewis v. Silvertree-Mohave HOA et al.**

***Common Facts of All Class Members***

86.     On information and belief, Defendants have only enforced their unreasonable and objectively baseless "no sports activity" rule, in its various forms, against resident families with children.  Defendants have enforced this rule consistently and uniformly against all resident families with children.

87.     On information and belief, there are more than 35 households with minor children affected by the Association's rules.

***Facts Specific To Project Sentinel's Investigation***

88.     After the April 2015 Frisbee play incident and Board meeting described above, Plaintiffs and other residents contacted Project Sentinel to report the incident and request that Project Sentinel investigate.

89.     Project Sentinel investigated the incident by interviewing witnesses and compiling documentation from residents.  Based upon its investigation, Project Sentinel concluded there was supporting evidence of familial status discrimination by the Association.

90.     In late September 2015, Project Sentinel sent education letters to all residents of the Silvertree Mohave Complex to inform residents of their rights under federal and California fair housing law.

91.     In December 2015, Project Sentinel filed a complaint of discrimination with the U.S. Department of Housing and Urban Development ("HUD") about the Association's discriminatory rules and enforcement of those rules.

92.     In March 2016, HUD referred the case to the California Department of Fair Housing and Employment ("DFEH").  Also in March 2016, as part of its investigation, Project Sentinel conducted a survey of residents of Silvertree Mohave to determine how families with children were affected by the Association's policies.

93.     In April 2016, Project Sentinel attempted to mediate a settlement with the Association.  The mediation was unsuccessful.

94.     Thereafter, the Board authored a letter and sent it to all members of the association along with the April 2016 newsletter.  The letter disclosed confidential mediation

information and claimed, wrongly, "One (or more) of the residents has filed a complaint with the DFEH" and announced that because of the DFEH filing, "all legal costs will be paid for through a Special Assessment of the owners." The letter was signed by all Board members. The letter is attached to this complaint as Exhibit 6.

95.    On May 12, 2016, the Board sent another letter to all members of the Association announcing the adoption of an emergency resolution and imposed a special assessment of $500 on all members to pay for the anticipated costs of litigation as a result of the complaint pending at DFEH. The Board demanded all residents pay an initial assessment of $250 by June 1, 2016. For payments not made by June 15, members would be charged a 10% late charge and additional 12% annual interest. The letter and resolution also threatens non-payers with enforcement through the Association's governing documents. The resolution claims as one of the reasons for the special assessment was that an "unnamed member/resident of the complex" had contacted Project Sentinel. Defendant Black signed the resolution for the Board. The letter and resolution are attached to this complaint as Exhibit 7.

96.    Mr. and Ms. Lewis received the letters referenced in the two preceding paragraphs. They feel targeted and intimidated by the letters; that is, they feel that the Board is attempting to chill their fair housing rights.

### C.    CLASS ALLEGATIONS

97.    The Lewis Plaintiffs who, as of the date of filing this complaint, reside at the Complex, seek to bring this case on behalf of themselves and on behalf of a class of similarly situated individuals pursuant to Federal Rule of Civil Procedure 23.

98.    ***The Class.*** The Lewis Plaintiffs seek to represent a class composed of and defined as follows:

> All persons who currently live or have lived at the Silvertree-
> Mohave Condominium Complex in Fremont, California, at any
> time from August 30, 2000, through the present, and lived there
> with children under the age of 14, or who were themselves minor
> children under the age of 14.

99.   **Numerosity.**  The potential quantity of members of the Class as defined is so numerous that joinder of all members would be unfeasible and impractical.  The disposition of their claims through this class action will benefit both the parties and this Court.  The quantity of members of the Class is unknown to Plaintiffs at this time; however, it is estimated that the Class numbers well in excess of 100 individuals.  The quantity and identity of such membership is readily ascertainable via inspection of Defendants' records.

100.   **Commonality.**  This suit poses questions of law and fact that are common to and affect the rights of all members of the class.  The common questions of law and fact shared by all class members include, but are not limited to:

    a.   Whether Defendants had and continue to have a pattern or practice of discriminating against children and/or families with children;

    b.   Whether Defendants' rules prohibiting all outdoor play in the common areas had a discriminatory impact on children and families with children;

    c.   Whether Defendants have (or had) a policy or practice of enforcing rules more zealously and harshly against resident children and/or families with children;

    d.   Whether Defendants have retaliated against families with children and attempted to intimidate residents from asserting their fair housing rights by, among other things, levying a special assessment for legal fees because of the Board's illegal conduct;

    e.   Whether the Defendant Board members individually breached their fiduciary duties to homeowners, by implementing and enforcing a discriminatory rule against children and families with children for at least 15 years, despite homeowner protest, and by interfering with resident use of the common areas, in violation of the CC&Rs.

    f.   Whether Defendants have acted with malice, oppression, or intent.

101.   **Typicality.**  The claims of the Lewis plaintiffs are typical of the claims of all members of the Class defined herein, because all members of the Class have sustained similar harm, including damages, arising out of Defendants' common course of conduct in violation of

law, and the harm to all members of the Class was caused by Defendants' wrongful conduct in violation of law, as alleged herein, and in violation of the CC&Rs, Bylaws, and Articles of Incorporation of the Association.

102.    ***Adequacy of Representation.***  Plaintiffs are adequate representatives of the Class defined herein, will fairly protect the interests of the members of the Class, have no interests antagonistic to the members of the Class, and will vigorously pursue this suit via attorneys who are competent, skilled, and experienced in litigating matters of this type.  Class counsel is competent and experienced in litigating large class actions.

103.    ***Superiority.***  The nature of this action and the nature of laws available to Plaintiffs make the use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiffs for the wrongs alleged herein.  Individual joinder of all Class members is impractical.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender.  The damages suffered by the individual Class members, although not inconsequential, may be relatively small as compared to the expense and burden of individual litigation for each class member which makes it impractical for class members to seek individual redress for the wrongful conduct alleged herein.  In addition, the prosecution of separate actions would create the risk of inconsistent rulings, which may harm the interests of individual class members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests.

104.    Unless enjoined by this Court, Defendants will continue to engage in the unlawful acts and discrimination described above.  Plaintiffs have no adequate alternative remedy at law to halt Defendants' continuing unlawful conduct.  Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendants' acts and continuing discrimination against children and families with children unless relief is provided by this Court.  Accordingly, Plaintiffs and all Class members are entitled to injunctive relief.

1

### D.     INJURIES

2      105.     Plaintiff Project Sentinel has expended its valuable and limited resources

3   investigating complaints against Defendants, and providing education to residents of the

4   Complex targeted by Defendants' illegal acts.  Defendants' discriminatory actions have: (1)

5   perceptually impaired and frustrated Plaintiff Project Sentinel's mission of eliminating

6   discriminatory housing practices against persons based on their family status, by requiring

7   Project Sentinel to expend resources on programs and activities to counteract the Defendants'

8   discriminatory housing practices; and (2) forced Project Sentinel to devote its scarce resources

9   away from other activities it would have undertaken—such as counseling, educational programs,

10   and outreach—in order to identify and counteract Defendants' unlawful housing practices.

11   Project Sentinel has suffered economic losses in the form of staff pay, publication costs, and its

12   inability to undertake other efforts to end unlawful housing practices.

13      106.     Project Sentinel will continue to devote resources away from other activities until

14   Defendants' unlawful behavior is stopped. Accordingly, Project Sentinel is entitled to

15   compensatory damages.

16      107.     Because of Defendants' unlawful acts and practices, the Lewis family has felt

17   harassed and threatened, has been subjected to abuse and mental injury, and has been deprived of

18   quiet enjoyment of their home.

19      108.     Because of Defendants' unlawful acts and practices, the Lewis children have been

20   intimidated, harassed, photographed, video-, and audio-recorded without informed consent, and

21   subjected to abuse and mental injury, and have been deprived of the important ability and need to

22   play freely out of doors in the safety and security of their home.

23      109.     Defendants, acting individually and in concert, directly and through agents, have

24   discriminated against families with children and those associated with those persons. Since at

25   least August 30, 2000, Defendants have created and maintained a hostile environment for

26   families with children at the Complex.  Defendants continue to engage in such a pattern or

27   practice of discrimination so as to constitute a continuing violation.

28

110.    Defendants' rules prohibiting children from playing outside and engaging in unsupervised play in the common areas have had, and continue to have detrimental health effects on all children who have lived at the Complex since the rules went into place in 2000.

111.    Defendants' conduct was willful, with knowledge of (or with reckless disregard for) the consequences of their acts.  Accordingly, Plaintiffs and all Class members are entitled to compensatory damages, including emotional distress damages.

112.    Defendants further acted intentionally, maliciously, wantonly, recklessly, and in bad faith with respect to Defendants' conduct described herein.  Accordingly, Plaintiffs and all class members are entitled to punitive damages.

113.    There now exists an actual controversy between the parties regarding Defendants' duties under the federal and state fair housing laws.  Accordingly, Plaintiffs are entitled to declaratory relief.

114.    Unless enjoined, Defendants will continue to engage in the unlawful acts and discrimination described above.  Plaintiffs have no adequate remedy at law to halt the continuing unlawful conduct.  Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendants' discriminatory acts against children and families with children unless relief is provided by this Court.  Accordingly, Plaintiffs and all class members are entitled to injunctive relief, as set forth below.

## VI. CLAIMS

### FIRST CLAIM
*Violation of the Federal Fair Housing Amendments Act on the basis of family status*
**All Plaintiffs vs. All Defendants**

115.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in all paragraphs above.

116.    Defendants injured plaintiffs in violation of the Fair Housing Amendments Act by:

   a.    Discriminating against residents with children and their children on the basis of familial status in violation of 42 U.S.C. § 3604(b) and 24 C.F.R. § 100.65;

b.  Making statements of discrimination, limitation, or preference based upon family status in violation of 42 U.S.C. § 3604(c);

c.  Harassing residents and creating a hostile environment for residents because of their familial status in violation of 42 U.S.C. § 3604(b) and 24 C.F.R. § 100.65;

117.  As a proximate cause of Defendants' conduct, Plaintiffs have been damaged and continue to suffer damages, as set forth above.

118.  Wherefore, Plaintiffs pray for relief and judgment as set forth below.

**SECOND CLAIM**
***Violation of the California Fair Employment and Housing Act on the basis of familial status***
**All Plaintiffs vs. All Defendants**

119.  Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in all paragraphs above.

120.  Defendants have injured Plaintiffs in violation of the California Fair Employment and Housing Act by:

a.  Discriminating against or harassing Plaintiffs because of family status in violation of Cal. Gov't Code §§ 12955(a), 12955(d), 12955(k); and

b.  Making statements of discrimination, limitation, or preference based on family status, in violation of Cal. Gov't Code § 12955(c);

c.  Aiding, abetting, or inciting in the discrimination of residents because of family status in violation of Cal. Gov't. Code § 12955(g).

121.  As a proximate cause of Defendants' conduct, Plaintiffs have been damaged and continue to suffer damages, as set forth above.

122.  Wherefore, Plaintiffs pray for relief and judgment as set forth below.

**THIRD CLAIM**
***Violation of the California Unruh Act (Cal. Civ. Code § 51)***
**Domenica Lewis, Jerrold Lewis, S.L., E.L. and the Class vs. All Defendants**

123.  Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in all paragraphs above.

124.     In doing the things herein alleged, Defendants have violated Plaintiffs' rights to fair housing under the Unruh Civil Rights Act, Cal. Civil Code § 51 et seq., in that Defendants have discriminated against Plaintiffs based upon their familial status in the operation of the property, a business establishment.

125.     Each of the Defendants—the Association, its Board member agents, and its management company agent—have maintained a business and professional relationship with the Lewis Plaintiffs and the Class.

126.     As described above, Defendants have engaged in, or have allowed their agents to engage in conduct that was hostile against the familial status and ages of the Lewis Plaintiffs, both directly and through at least one agent of the Board (Ann Filo).  This conduct included discriminating against the Plaintiffs, promulgating and enforcing discriminatory rules against the Plaintiffs and the Class, and creating a hostile environment for Plaintiffs and the Class.

127.     Defendants' discriminatory conduct alleged herein constitutes a denial of full and equal access to housing accommodations to Plaintiffs and the Class within the meaning of California Civil Code § 51 et seq.

128.     In addition to compensatory damages, Plaintiffs and the Class are entitled to statutory damages under Civil Code § 52 of up to three times the amount of actual damages.

129.     Defendants did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiffs, and/or with an improper and evil motive amounting to malice.  Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

130.     As a proximate cause of Defendants' conduct, Plaintiffs have been injured and suffered damages, as set forth above. Defendants' unlawful conduct was a substantial factor in causing them harm.

131.     Wherefore, Plaintiffs pray for relief and judgment as set forth below.

**COMPLAINT, Lewis v. Silvertree-Mohave HOA et al.**

**FOURTH CLAIM**
*Violation of the Unfair Competition Act*
*California Business and Professions Code § 17200 et seq.*
**Domenica Lewis, Jerrold Lewis, S.L., E.L. and the Class vs. Defendant Murphy**

132.    Plaintiffs incorporate herein by reference each and every allegation contained in all paragraphs above as if fully set forth herein.

133.    California Business & Professions Code § 17200, et seq., the "Unfair Competition Law" ("the UCL") defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice.  The UCL authorizes this Court to issue whatever orders or judgments may be necessary to prevent unfair or unlawful practices, or to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." *Id*. § 17203.

134.    The Association and Defendant Murphy (d/b/a Management Solutions), individually and collectively, have engaged in, and continue to engage in, numerous acts and/or a pattern and practice of unfair and illegal conduct, and therefore, have engaged in acts of unfair competition as defined in the Business and Professions Code § 17200 et seq.  These unfair business practices include, without limitation, the following:

    a.   Violating federal and state fair housing law.  Federal and state housing law prohibit discrimination based upon family status.  Defendants violated these statutes by engaging in a pattern and practice of discrimination, harassment, and intimidation of resident minor children and families with minor children, based upon familial status.  Defendants' acts are in violation of the Federal Fair Housing Amendments Act ("FHAA"), and the Fair Employment and Housing Act ("FEHA") and thus constitute *per se* unlawful business practices;

    b.   Violating Plaintiffs' right to fair housing under the Unruh Civil Rights Act (Cal. Civ. Code § 51 et seq.);

    c.   Violating the Association's CC&Rs, which specifically designate the recreational common areas, including but not limited to the three quad areas, for the use and enjoyment of all residents, including minor children and their families.

135.     The Court's intervention is necessary to halt and remedy Defendants' unlawful and unfair acts and practices.

136.     Pursuant to California Business & Professions Code § 17203, Plaintiffs are entitled to an order enjoining Defendants from continuing to engage in unfair and discriminatory business practices in violation of California Business & Professions Code § 17200.  Plaintiffs and the general public will be irreparably harmed if such an order is not granted.

137.     Wherefore, Plaintiffs pray for relief and judgment as set forth below.

### FIFTH CLAIM
*Retaliation in Violation of the Federal Fair Housing Act*
**Domenica Lewis, Jerrold Lewis, S.L., E.L., and the Class vs. All Defendants**

138.     Plaintiffs incorporate by reference the allegations contained in all paragraphs above as if fully set forth herein.

139.     Defendants injured Plaintiffs in violation of the Fair Housing Amendments Act by unlawfully coercing, intimidating, threatening, or interfering with Mr. and Mrs. Lewis because they have attempted to exercise and enjoy their rights under the Fair Housing Act in violation of 42 U.S.C. § 3617.

140.     Defendants have further injured the Class of residents by unlawfully coercing, intimidating and threatening them, and interfering with their rights and assertion of rights under the Fair Housing Act in violation of 42 U.S.C. § 3617.

141.     As a proximate cause of Defendants' conduct, Plaintiffs have been injured and suffered damages, as set forth above. Defendants' unlawful conduct was a substantial factor in causing them harm.

142.     Wherefore, Plaintiffs pray for relief and judgment as set forth below.

### SIXTH CLAIM
*Retaliation in Violation of the California Fair Employment and Housing Act*
**Domenica Lewis, Jerrold Lewis, S.L., E.L., and the Class vs. All Defendants**

143.     Plaintiffs incorporate by reference the allegations contained in all paragraphs above as if fully set forth herein.

**COMPLAINT, Lewis v. Silvertree-Mohave HOA et al.**

144.    Defendants injured Plaintiffs in violation of the Fair Employment and Housing Act by unlawfully coercing, intimidating, and threatening them, and interfering with Mr. and Mrs. Lewis and the Class because they have attempted to exercise and enjoy their rights protected by Cal. Gov't Code § 12955 in violation of Cal. Gov't Code § 12955.7.

145.    As a proximate cause of Defendants' conduct, Plaintiffs have been injured and suffered damages, as set forth above. Defendants' unlawful conduct was a substantial factor in causing them harm.

146.    Wherefore, Plaintiffs pray for relief and judgment as set forth below.

**SEVENTH CLAIM**
***Violation of Fiduciary Duty Under California Corporations Code section 7231***
**Domenica Lewis, Jerrold Lewis, S.L., and E.L., and the Class vs. Defendants Marilyn Black,
Carol Lee Adams, Anand Bhaskaran, and Tamela Durant**

147.    Plaintiffs incorporate by reference the allegations contained in all paragraphs above as if fully set forth herein.

148.    Defendants Black, Adams, Bhaskaran, and Durant, individually and collectively, injured Plaintiffs in violation of the California Corporations Code, Section 7231, by failing to perform their duties as members of the Board in good faith, in a manner believed to be in the best interests of the Association, and with such care, including reasonable inquiry, as an ordinarily prudent Board member would use under similar circumstances.

149.    Defendants Black, Adams, Bhaskaran, and Durant, as Board members, each breached a fiduciary duty owed to the Lewis Plaintiffs and other members of the Class in promulgating, implementing, and enforcing discriminatory rules prohibiting outdoor play and the enjoyment of the outdoor common areas by minor children, to the detriment of the community and in violation of the Association's CC&Rs, Bylaws, and Articles of Incorporation.

150.    As a proximate cause of Defendants' conduct, Plaintiffs have been injured and suffered damages, as set forth above.  Defendants' unlawful conduct was a substantial factor in causing them harm.

151.    Wherefore, Plaintiffs pray for relief and judgment as set forth below.

1

## VII.   RELIEF

Wherefore, Plaintiffs pray for the following relief:

1. That the Court assume supplemental jurisdiction over all state law claims, pursuant to 28 U.S.C. § 1367;

2. That the Court appoint Domenica Lewis as Guardian ad Litem for her minor children;

3. That the Court certify the class defined herein;

4. That the Court enjoin all unlawful practices complained about herein and enjoin Defendants and their agents from:

   i. Enforcing or promulgating rules that discriminate against families with children, and children as individuals;

   ii. Promulgating rules that prevent playing in the common areas;

   iii. Threatening or intimidating children and families with children, with the intent to prevent or discourage them from using the common areas for play or other recreational activities allowable under the Covenants, Conditions, and Restrictions;

   iv. Harassing minor residents of the Complex through camera surveillance or other intrusive, discriminatory activities;

   v. Photographing, video recording, or audio recording minor children without parental knowledge or consent;

   vi. Taking any further actions that intimidate or "chill" residents of the Complex from advocating for and enforcing their fair housing rights; and

   vii. Raising the dues of any homeowner of the Association who is also a member of the Class, in order to pay for any costs of this lawsuit brought to enforce the homeowner's rights.

5. That the Court issue an order that: (a) prohibits any Defendant Board member from serving on the Board or acting as agents of either the Board or the Association; (b) requires all Defendants to participate in formal fair housing training; (c) requires all future board members to participate in formal fair housing training within 60 days of

their election to the Board, and annually thereafter; (d) requires the Association restore the landscaped quad areas to their original, more child-friendly state (such as grassy lawn), and remove the tanbark installed to discourage children from playing in the outdoor common areas; and (e) requires the Association to publish, in every Newsletter for at least five years, a notice that includes (1) retraction of the previous "no sports activity" policy, and (2) an express statement that resident children are to be allowed access to and enjoyment of the common areas in the Complex, including the quad areas and swimming pool, and for outdoor play activities.

6.    That the Court declare that Defendants have violated the provisions of applicable federal and state fair housing laws;

7.    That the Court declare that Defendants Black, Adams, Bhaskaran, and Durant each breached their fiduciary duties to the Lewis Plaintiffs and other members of the Class;

8.    That the Court award actual, statutory, emotional distress, and other compensatory, exemplary, and punitive damages to Plaintiffs according to proof;

9.    That the Court award up to three times the amount of actual damages to Plaintiffs against Defendants pursuant to California Civil Code § 52;

10.   That the Court grant costs of suit, including reasonable attorneys' fees; and

11.   That the Court grant all such other relief as the Court deems just.

Dated: June 24, 2016

LAW FOUNDATION OF SILICON VALLEY
FAIR HOUSING LAW PROJECT &
WINSTON & STRAWN, LLP

/s/ Thomas Zito
Thomas P. Zito
Attorney for Plaintiffs
Domenica Lewis, Jerrold Lewis, S.L., E.L., and Project Sentinel

**COMPLAINT, Lewis v. Silvertree-Mohave HOA et al.**

1

## **JURY DEMAND**

2

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby request a trial by jury

3

as to each and every claim for which they are so entitled.

4

Dated: June 24, 2016

5

6

LAW FOUNDATION OF SILICON VALLEY
FAIR HOUSING LAW PROJECT &
WINSTON & STRAWN, LLP

7

8

/s/ Thomas Zito

9

Thomas P. Zito
Attorney for Plaintiffs

10

Domenica Lewis, Jerrold Lewis, S.L., E.L.,
and Project Sentinel

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT, Lewis v. Silvertree-Mohave HOA et al.**