1  R. DEWEY WHEELER, SBN 1129968
   Dewey.wheeler@mcnamaralaw.com
2  LISA A. ROBERTS, SBN 141171
   Lisa.roberts@mcnamaralaw.com
3  McNamara, Ney, Beatty, Slattery,
   Borges & Ambacher, LLP
4  3480 Buskirk Avenue, Suite 250
   Pleasant Hill, CA 94523
5  Tel: (925) 939-5330
   Fax: (925) 939-0203
6
7  Attorneys for Defendants
   Silvertree Mohave Homeowners' Association,
8  Carol Lee Adams aka Lee Adams
   Marilyn Black, Anand Bhaskaran,
9  Tamela Durant and Donald W. Murphy

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12

13  DOMENICA LEWIS; JERROLD LEWIS;         CASE NO. C 16-03581 WHA
    DOMINICA LEWIS as guardian ad-litem for
14  their minor children S.L. and E.L., on behalf
    of themselves and all others similarly        DECLARATION OF GERALD G.
15  situated; and PROJECT SENTINEL, a            KNAPTON IN SUPPORT OF
    California non-profit corporation, on behalf  DEFENDANTS' OPPOSTION TO
16  of itself and the general public,            PLAINTIFFS' MOTION FOR
                                                 ATTORNEY FEES; EXHIBITS "1"
17                                               THROUGH "4"
                   Plaintiffs,
18                                               Courtroom: 8, 19th floor
          vs.                                    Judge:  Hon. William Alsup
19                                               Hearing Date:  November 16, 2017
    Silvertree Mohave Homeowners' Association,   Hearing Time: 8:00 a.m.
20  Inc., Carol Lee Adams aka Lee Adams
    Marilyn Black, Anand Bhaskaran, and
21  Tamela Durant, individually and as members
    of the Board of Directors of Silvertree
22  Mojave Homeowners' Association, Inc.; and
    Donald W. Murphy individually and dba
23  Management Solutions, .

24                 Defendants.

25

26

27

28
   4821-1779-3105.1                    - 1 -

## DECLARATION OF GERALD G. KNAPTON

1.      I, Gerald G. Knapton, make this declaration in support of the Opposition by Defendants to Plaintiffs' Motion for Attorneys' Fees and Costs (ECF document 95 -the "Fee Motion") in Case No. 3:16-cv-03581 – WHA (JSC).  I am making this Declaration as an expert witness, based on matter (including my specialized knowledge, skill, experience, training and education) perceived by, or personally known to me, or made known to me that is of a type that may reasonably be relied upon by an expert in forming an opinion upon the subject to which my testimony relates.

### I.      BACKGROUND AND QUALIFICATIONS OF EXPERT

2.      My background, qualifications as an expert, and experience is more fully set forth in Exhibit 1 attached to this Declaration.  I was educated at Brown University, U.C., Berkeley, and the School of Law at U.C.L.A.  I am an attorney at law licensed to practice in the State of California since 1977, and I am admitted to all federal courts within California and the Court of Appeals for the Ninth and Third Circuits.  I am a partner/shareholder of the law firm Ropers, Majeski, Kohn & Bentley, which has offices in San Francisco, Redwood City, San Jose, Los Angeles, Las Vegas, Seattle, New York City, and Boston.  I have been at Ropers Majeski since July 2002, and most of my time is spent as an expert for legal billing and ethical issues. About one half of my expert projects are in opposition to a request for fees and about one half are used for support a request or motion for fees. My time is billed by my firm and we are not compensated in any other manner for my work.

3.      I have personally reviewed over $4.5 billion dollars in legal fees and work product. I have reviewed hourly legal bills for professional services and supporting work product in many appeals and trials.  I have also reviewed hourly legal bills and supporting work product in class action, representative action and individual cases involving homeowners associations' methods of operating, tenants' rights disputes, discrimination claims, "civil rights" issues, federal and state "fair housing" claims, CC&Rs disputes, eminent domain suits, validation actions, as well as a vast assortment of other matters such as marketing programs and franchise disputes, real estate

related disputes, employment retaliation claims, wage and labor matters, hotel related disputes, individual and class actions in statutory-interpretation matters, environmental contamination matters, pharmaceutical cases, "Brown Act" compliance matters, notice compliance matters (for "clean water act" and "catalyst" cases), accounting cases, "civil rights" cases, retail credit compliance litigation, truth in lending lawsuits, ADA claims, discrimination lawsuits, FSLA lawsuits, private attorney general act claims, and individual actions for a great variety of clients who have questions about the charges.

4.      My past experience as an expert includes reviewing the bills and work product for requests for attorney fees, including many for matters based in the San Francisco Bay Area.  I have reviewed hundreds of motions to shift fees for cases in both trial and appellate courts, and in arbitrations.  Many of these motions were based on "attorney's fee provisions," codes, or statutes. I have also reviewed fees to determine the reasonableness of such fees, including those to be submitted as part of a settlement or as part of a motion to shift fees.  I have reviewed work product and actual legal bills for law firms, corporations, partnerships, insurance companies, cities, counties, trustees, and individuals for legal work in trial courts and for appellate work.

5.      I have also written and lectured on the issue of reasonableness and allocation of legal fees.  I have been qualified, and testified, as an expert witness on attorney fees on approximately 55 occasions—including before both judges and juries in trials and in arbitrations.

## II.    FACTUAL BACKGROUND

6.      This is a "fair housing" action on behalf of what became - by way of stipulation and settlement – a 233 member class of condominium residents with children (or who are children) under the age of fourteen. The complex is a common interest development established in 1983 consisting of 108 condominium homes separately owned or rented to tenants.  A former owner of a unit brought this suit to challenge the Home Owners Association's written (but in suspension) rule on the children's use of the common area courtyards. The condominiums are grouped around three common area quads that were often used by children for play. The "no sports play rule" for the common areas was adopted in 2003 and suspended in April 2015 and

then abandoned. It was never reinstated.  A new rule prohibiting "sports play" by wheeled

vehicles on pedestrian paths, sidewalks became effective on September 14, 2015.

      7.      Plaintiffs alleged that families with children living at Silvertree Mojave

Condominium Complex in Fremont have been discriminated against because all residents are

prohibited from engaging in sports activities in the common areas of the complex.

      8.      This was never a hotly-litigated and contentious matter.  Defendants were always

willing to discuss settlement and it was resolved by settlement before the hearing on class

certification on June 2, 2017 (ECF 81), which is a few weeks short of one year after suit was

commenced on June 24, 2016. There were two "PMK" depositions and no substantive motions.

Court settlement conferences resulted in settlement.

      9.      Plaintiffs have moved for fees of $468,888.00 and for nontaxable costs of

$3,461.02. (ECF 95, Motion page 14, line 23).

      10.      Their submissions claim 897.33 hours of time for work by eight timekeepers at

two law firms.

## III.    <u>MY CONCERNS:</u>

      11.      I have reviewed the motion materials, docket entries and Complaint, interviewed

counsel for defendants and I have these ten types of concerns that I will develop and quantify in

this declaration:

      1.      The only "pre-suit" alternative dispute resolution as required by the Davis-

Stirling Act (California Civil Code §§5930 *et seq.*) was with Project Sentinel where, according to

defense counsel, Defendants were prepared to resolve this matter but Project Sentinel walked out

of the meeting.;

      2.      The Lewis Plaintiffs did not engage in good faith settlement talks;

      3.      There was no "meet & confer" compliance before this motion for fees was

filed;

      4.      The time submitted of 897.33 hours is 257% of the time of 348.7 hours by

defendants;

5.      Plaintiffs do not list the tasks and times for each task;

6.      The work descriptions are not full and complete;

7.      The time by 8 timekeepers at two firms is excessive;

8.      The rates requested are much higher than the non-contingent hourly rates charged by and paid to law firms for similar litigation in San Francisco;

9.      The lead lawyers appear to be experienced in disability rights and intellectual property litigation and this is not that kind of matter so a good deal of time appears to be learning or training time; and

10.     The fees cross check using the benchmark of 25 percent of the results is much less than the lodestar.

## IV.    THE FEE MOTION

12.     Plaintiffs' fee motion is contained in Document 95 and its 8 attachments (95-1 to 95-8). It claims $468,888.00 in attorney's fees (plus $3,461.02 in costs) (page 14) under federal and state "fair housing" statutes (page 3) and proposes that the fees be determined by the lodestar process (page 4) rather than by the benchmark percentage of 25% of results often used in the 9th Circuit as a cross-check.

## V.    THE FEE-SHIFTING AUTHORITY

13.     It is customary and essential for me to examine the fee-shifting authority being asserted in a fee-shifting proceeding because that often affects the analysis I need to perform in order to assist the Court.  The papers I have reviewed indicate that plaintiffs seek to recover attorneys' fees pursuant to a court's discretion under both the federal and state "fair housing" acts, which each reads in relevant part as follows:

> 42 U.S.C. § 3613 (c)(2): In a civil action under subsection (a), the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs."
>
> California Gov't Code § 12989.2: In a civil action brought under this section, the court may, at its discretion, award the prevailing party, including the department,

reasonable attorney's fees and costs, including expert witness fees, against any party other than the state.

14.     These are standard fee-shifting provisions and the usual measure for hourly rates is what is <u>actually paid for noncontingent litigation</u> of the same type whether one uses the announced federal or state standard:

The federal test:

"[B]illing rates "should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." Davis, 976 F.2d at 1545; see also Carson v. Billings Police Dep't, 470 F.3d 889, 892 (9th Cir. 2006) (holding that the prevailing market rate -- not the individual contract between the applicant attorney and the client -- "provides the standard for lodestar calculations"))." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

The state guidance:

"We approved the calculation of attorney fees beginning with a lodestar figure based on the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting *noncontingent* litigation of the same type. ( Serrano IV, supra, 32 Cal. 3d at p. 625.)" *Ketchum v. Moses,* 24 Cal. 4th 1122, 1133, 104 Cal. Rptr. 2d 377, 385, 17 P.3d 735, 742 (2001, emphasis in original).

15.     This data on non-contingent hourly rates *actually paid* is now available and is provided in the exhibits and discussed further at paragraphs 24 to 34, below.

## VI.     <u>THE HOURS SUBMITTED BY TIMEKEEPER</u>

16.     Here is a table that shows the requested time and work dates by eight timekeepers in descending order of time:

| Name / Firm | Hours | Dates |
|---|---|---|
| Thomas Zito / Law Foundation | 303.00 | 6/22/2015 to 7/31/2017 |
| Corey Attaway / Winston | 253.43 | 1/11/2016 to 9/16/2017 |
| Constance Ramos / Winston | 117.90 | 1/21/2016 to 7/14/2017 |
| Matthew Warren / Law Foundation | 87.10 | 3/11/2016 to 8/31/2017 |
| Annette Kirkham / Law Foundation | 70.40 | 3/28/2016 to 9/18/2017 |
| Scotia Hicks / Winston | 35.30 | 1/5/2016 to 2/26/16 + 10/5/2016 |

| Nadia Aziz / Law Foundation | 27.20 | 10/30/2015 to 9/12/2017 |
| Yeletza Dunham / Winston | 3.00 | 10/15/16 + 10/17/2016 |

17.     Here are their years of experience based on law school graduation dates (with CA Bar admission date for Mr. Zito) and their assigned roles within their firms when the services were performed:

| Name / Firm | Date | Role |
| --- | --- | --- |
| Thomas Zito / Law Foundation | 2010/2015 | Senior Attorney |
| Corey Attaway / Winston | 2015 | Associate |
| Constance Ramos / Winston | 1999 | Principal |
| Matthew Warren / Law Foundation | 2015 | Staff Attorney |
| Annette Kirkham / Law Foundation | 2001 | Senior Attorney |
| Scotia Hicks / Winston | 2007 | Associate |
| Nadia Aziz / Law Foundation | 2001 | Senior Attorney |
| Yelitza Dunham / Winston | 2001 | Principal |

18.     Two of the lead lawyers who were very involved in this litigation are no longer with the Law Foundation or Winston & Strawn.

19.     Mr. Zito practiced housing and disability rights law in Massachusetts and was admitted to practice law in California on July 27, 2015. He left the Law Foundation and is now practicing at Disability Rights Advocates in Berkeley.

20.     Ms. Ramos had (and may still have) an intellectual property litigation practice; she left Winston & Strawn in August 2017 and now has her own law practice in Oakland.

Prevailing Party Issue

21.     I understand that Defendants dispute the entitlement to fees and costs on multiple grounds. It is not my role to opine on this aspect and I certainly do not concede that such entitlement or prevailing party status has been established. I will assume that counsel will argue and the Court will decide this issue.

## VII.  <u>RULES FOR DETERMINING A LODESTAR</u>

22.    It is my understanding that ***if*** the Court determines that the conditions precedent have been satisfied, then the traditional benchmark and lodestar approaches can be applied in the Court's discretion to determine reasonable & necessary fees if the moving parties meet their burden.

23.    The Chief Justice of the United States has recognized that in the context of "civil rights" fee-shifting motions, the prevailing attorneys seeking to recover their fees from the losing party have a <u>heightened duty to provide clear, convincing and detailed explanations</u> of their charges:

> I read the Court's opinion as requiring that when a lawyer seeks to have his adversary pay the fees of the prevailing party, **the lawyer must provide detailed records of the time and services for which fees are sought**. It would be inconceivable that the prevailing party should not be required to establish at least as much to support a claim under 42 U. S. C. § 1988 as a lawyer would be required to show if his own client challenged the fees. A district judge may not, in my view, authorize the payment of attorney's fees unless the attorney involved has established by **clear and convincing evidence** the time and effort claimed and shown that the time expended was necessary to achieve the results obtained.
>
> A claim for legal services presented by the prevailing party to the losing party pursuant to § 1988 presents quite a different situation from a bill that a lawyer presents to his own client. In the latter case, the attorney and client have presumably built up a relationship of mutual trust and respect; the client has confidence that his lawyer has exercised the appropriate 'billing judgment,' and unless challenged by the client, the billing does not need the kind of extensive documentation necessary for a payment under § 1988. That statute requires the losing party in a civil rights action to bear the cost of his adversary's attorney and there is, of course, no relationship of trust and confidence between the adverse parties. As a result, the party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed.
> *Hensley v. Eckerhart*, 461 U.S. 424, 440–441 (1983) (Burger, C.J., concurring) (emphasis added).

## VIII.   HOURLY RATE ANALYSIS

24.    I have examined the fee motion and its supporting exhibits and counsel's request regarding requested rates and compared those rates with my own experience reviewing legal invoices and the objective evidence of non-contingent hourly rates actually paid in the San Francisco community for similar litigation as discussed below.

25.    "Fair Housing" matters are classified as Real Estate Litigation. This kind of litigation in general and landlord/tenant disputes in particular is a widespread type of litigation with settled law for guidance and because of this the hourly rates actually paid are not as high as some other kinds of legal work such as intellectual property litigation or securities work or much transactional work. The requested rates of $325 to $880 are not supported by the data for actual rates that are paid. Perhaps they are using intellectual property rights legal work or contingent rates that have been awarded in other matters but these are not the rates that are actually charged and paid for "Fair Housing" matters.

26.    Attached as Exhibit 2 is the entire 2016 Real Rate Report (the latest iteration now available) which set forth its contents, methodology and procedures.  As explained on page 8, the data on actual hourly rates paid used for the 2016 Real Rate Report includes "more than $19.6 billion in fees billed for legal services in the United States during the six year period from 2010 to 2015." As explained at page 234, this Report "consists of data taken from client invoices submitted by US law firms for work performed from 2010 through 2015. All invoices were submitted through the ELM Solutions e-billing systems and approved prior to 2016."  This Report assembles the data on billions of dollars of rates in several ways that are relevant here as discussed below.

27.    These reports have been available only since 2012 and the yearly updates have gotten larger and (in my opinion) more useful in the last few years. Over the years I have found the Real Rate Report data to be excellent, reliable and conforming to the rates that I have seen actually paid for various kinds of legal work.  There are also several decisions in federal courts of California applying the data set forth in the Real Rate Report, finding that it is a more reliable

indication of reasonable hourly rates than unscientific surveys or self-reported hourly rates. (See, Downey Surgical Clinic, Inc. v. Optuminsight, Inc., 2016 WL 5938722, at *11 (C.D. Cal. May 16, 2016); Hightower v. JPMorgan Chase Bank, N.A., 2015 WL 9664959, at *11 (C.D. Cal. Aug. 4, 2015); Hicks v. Toys "R' Us-Delaware, Inc., 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014), and Rueda v. ADT LLC, 2016 U.S. Dist. LEXIS 4361, *3–4 & n.3 (C.D. Cal. Jan. 14, 2016).

28.     Here, from page 51 of Exhibit 2, is the range of rates actually paid for various kinds of real estate work in the United States:

## Section I: High-Level Data Cuts

**Detailed Practice Areas**
By Matter Type

| 2015—Real Rates for Partners, Associates, and Paralegals | | | | | | | Trend Analysis (Mean) | | |
| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
|---|---|---|---|---|---|---|---|---|---|
| Real Estate: Leasing | Litigation | Partner | 27 | $200.00 | $365.00 | $500.00 | $367.76 | $410.15 | $397.91 |
| | | Associate | 30 | $170.00 | $227.50 | $295.00 | $246.31 | $223.94 | $246.68 |
| | | Paralegal | 8 | $80.00 | $86.22 | $157.50 | $117.18 | $159.34 | $130.94 |
| | Non-Litigation | Partner | 161 | $330.00 | $417.59 | $520.00 | $441.69 | $445.12 | $424.03 |
| | | Associate | 135 | $225.00 | $260.00 | $315.00 | $279.03 | $280.05 | $273.98 |
| | | Paralegal | 39 | $125.00 | $177.33 | $200.00 | $172.45 | $169.75 | $154.68 |
| Real Estate: Property/Land Acquisition or Disposition | Litigation | Partner | 54 | $175.00 | $195.00 | $250.00 | $231.59 | $233.94 | $214.75 |
| | | Associate | 63 | $150.00 | $180.00 | $195.00 | $184.61 | $179.55 | $184.40 |
| | | Paralegal | 52 | $82.50 | $97.11 | $115.00 | $107.22 | $100.81 | $102.27 |
| | Non-Litigation | Partner | 179 | $390.00 | $475.00 | $663.20 | $544.72 | $541.77 | $475.50 |
| | | Associate | 152 | $250.00 | $315.00 | $395.00 | $350.49 | $371.42 | $317.53 |
| | | Paralegal | 52 | $156.00 | $194.38 | $225.00 | $194.59 | $196.07 | $178.23 |
| Real Estate: Titles | Litigation | Partner | 811 | $225.00 | $275.00 | $310.00 | $282.33 | $276.27 | $274.13 |
| | | Associate | 694 | $180.00 | $215.00 | $250.00 | $222.10 | $218.98 | $216.25 |
| | | Paralegal | 504 | $100.00 | $125.00 | $147.26 | $126.70 | $125.12 | $125.19 |
| | Non-Litigation | Partner | 1,053 | $225.00 | $275.00 | $325.00 | $292.50 | $291.34 | $283.57 |
| | | Associate | 874 | $176.83 | $215.62 | $250.00 | $225.50 | $227.19 | $217.74 |
| | | Paralegal | 536 | $100.00 | $125.00 | $150.00 | $130.98 | $129.05 | $124.89 |
| Real Estate: Other | Litigation | Partner | 225 | $266.54 | $390.00 | $530.00 | $435.09 | $395.28 | $381.84 |
| | | Associate | 171 | $195.00 | $250.00 | $330.00 | $283.26 | $260.02 | $259.45 |
| | | Paralegal | 101 | $105.00 | $130.00 | $179.00 | $149.19 | $159.28 | $149.29 |
| | Non-Litigation | Partner | 639 | $357.00 | $450.00 | $585.00 | $489.69 | $479.19 | $462.62 |
| | | Associate | 498 | $250.00 | $324.50 | $420.00 | $350.75 | $333.96 | $316.80 |
| | | Paralegal | 235 | $142.50 | $180.00 | $220.00 | $184.49 | $178.08 | $182.15 |

27.     At pages 186 to 189 there are 1,623 examples of rates that are actually paid for legal work in San Francisco.

DECLARATION OF GERALD KNAPTON ISO OPPOSITION BY DEFENDANTS

28.    The rates actually paid for partners and associates for <u>all types</u> of litigation in San Francisco is shown by 697 examples collected at page 65 of Exhibit 2. Here is a composite "snip" of those rates for ease of reference:

## Section I: High-Level Data Cuts

**Cities**
By Matter Type

| 2015—Real Rates for Partners and Associates | | | | | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|---|
| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
| San Francisco, CA | Litigation | Partner | 358 | $324.57 | $530.00 | $730.00 | $543.73 | $545.03 | $552.27 |
| | | Associate | 339 | $235.00 | $323.00 | $464.31 | $366.35 | $365.45 | $366.44 |
| | Non-Litigation | Partner | 429 | $457.07 | $625.41 | $794.00 | $636.51 | $634.35 | $634.57 |
| | | Associate | 337 | $300.00 | $400.00 | $530.00 | $429.57 | $417.84 | $413.06 |

29.    The rates for Real Estate legal work in San Francisco are collected and shown at page 161. Here is a compilation "snip" of that data:

## Section III: Practice Area Analysis

**Real Estate**
By City

| 2015—Real Rates for Partners and Associates | | | | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|
| City | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
| San Francisco, CA | Partner | 64 | $297.50 | $422.50 | $619.90 | $458.03 | $437.15 | $430.90 |
| | Associate | 43 | $226.20 | $295.00 | $460.50 | $335.44 | $347.25 | $332.28 |

30.    The Lewis litigation is "landlord/tenant" litigation over homeowners' association "fair housing" regulations to apply to residents in a condominium property. The actual rates for this kind of litigation are collected in the "Real Estate" category by the Real Rate Report as it explains on page 237 of Exhibit 2.  These are NOT insurance rates as explained at page 234.

31.    The actual rate data is collected and put into "buckets" by Wolters Kluwer based on the categories listed on pages 235 to 237 of the 2016 Real Rate Report. There is no category

for violations of "civil rights" *per se*.  I believe that the best category is Real Estate since the Lewis theories are "fair housing" claims and that is included in what the Real Rate Report lists as included in the Real Estate "bucket" on page 237 as "Landlord/Tenant Issues" or "Fair Housing" or "Leasing."

32.    An alternative that is a bit more generous is to consider the rates that are paid for Real Estate litigation in San Francisco <u>assembled by firm size</u> and then apply the First Quartile rates shown at page 188 of Exhibit 2 for all kinds of litigation to a large firm like Winston & Strawn (top is $572) and $290 for the smaller Law Foundation as mentioned in paragraph 34. This gives them some benefit but it is of course far short of what is shown for Intellectual Property litigation at page 187.  Lewis is not that kind of matter, and applying those much higher rates is not reasonable.

33.    Here is a composite snip from page 188 of Exhibit 2 that shows the rates actually paid for San Francisco Real Estate litigation and displayed by firm size:

## Section IV: In-Depth Analysis for Select US Cities

### San Francisco, CA
By Practice Area and Firm Size

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| Real Estate | 50 Lawyers or Fewer | Partner | 14 | $290.00 | $325.00 | $430.00 | $356.07 | $345.57 | $363.01 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $283.57 | $266.25 |
| | 51-200 Lawyers | Partner | 20 | $275.00 | $312.50 | $425.00 | $361.09 | $384.32 | $367.06 |
| | | Associate | 10 | $220.00 | $230.26 | $275.00 | $244.05 | $264.21 | $258.63 |
| | 501-1,000 Lawyers | Partner | 10 | $572.17 | $711.25 | $790.00 | $679.42 | $639.01 | $626.29 |
| | | Associate | 14 | $432.00 | $466.46 | $500.00 | $474.57 | $454.82 | $465.22 |

2015—Real Rates for Partners and Associates / Trend Analysis (Mean)

**DECLARATION OF GERALD KNAPTON ISO OPPOSITION BY DEFENDANTS**

34.    This litigation is a standard landlord/tenant "fair housing" dispute over the regulations for a play area and the First Quartile rates of $290 for  Law Foundation (under 50 Lawyers) counsel and $572 for partners and $432 for associates at  Winston & Strawn (500 to 1000 Lawyers) would be the correct rates to use once the reasonable & necessary time is determined.

## IX.    OUR REPORTS:

35.    Under my supervision and control we have input all the requested time and descriptions into a MS Excel spreadsheet, adding only the columns H, I, J, K & L with comments that are useful for making calculations.

36.    Some of Mr. Zito's work descriptions were abridged in the submission (ECF 95-2) and I have put "[sic]" to show that this truncated entry is because of the supplied information. For example from his 9/21/2015 entry for .40 hours:  "phone call to client discuss effect of temporary rule and possible den[sic]."

37.    The entire spreadsheet with fees using and showing the requested rates is attached as Exhibit 3.

38.    We have also applied the non-contingent rates that are actually paid for litigation in San Francisco in a similar spreadsheet attached as Exhibit 4.

39.    As shown by Exhibit 4, after filtering and summarizing, even if one applied these rates to ALL time this would be the result:

| Name / Firm | Hours | Rate | Fee |
|---|---|---|---|
| Thomas Zito / Law Foundation | 303.00 | $290 | $87,870.00 |
| Corey Attaway / Winston | 253.43 | $432 | $108,481.76 |
| Constance Ramos / Winston | 117.90 | $572 | $67,438.80 |
| Matthew Warren / Law Foundation | 87.10 | $290 | $25,259.00 |

| | | | |
|---|---|---|---|
| Annette Kirkham / Law Foundation | 70.40 | $290 | $20,416.00 |
| Scotia Hicks / Winston | 35.30 | $432 | $15,249.60 |
| Nadia Aziz / Law Foundation | 27.20 | $290 | $7,888.00 |
| Yeletza Dunham / Winston | 3.00 | $572 | $1,716.00 |
| Totals | 897.33 | | $355,319.16 |

40.     However, given that the requested time is 257% of the time by the other side and the other concerns it is necessary to make some adjustments to reach the reasonable time for this matter.

41.     If one allowed <u>all time requested</u> this rate adjustment reduces the fees sought in the Fee Motion as follows:

| Original Request | Rate Adjustment | Adjusted Balance |
|---|---|---|
| $468,888.00 | -$113,568.84 | $355,319.16 |

## X.    <u>REASONS FOR SOME ADJUSTMENTS</u>

42.     There are three procedural aspects about this fee application that need to be raised by the advocates and decided by the Court, but I mention them because they are concerns about the total of the reasonable fees for this matter:

1. The Lewis plaintiffs and purported class did not engage in pre-suit alternative dispute resolution as required by the Davis-Sterling Act and that fact is something that may be considered by the Court when considering fees (California Civil Code §5960);

2. Plaintiffs did not engage in good faith settlement talks; and

3. Plaintiffs did not "meet & confer" prior to filing this motion for fees.

## XI.    <u>ANALYSIS OF THE FORM AND TIME BY TASKS</u>

43.     I respectfully submit for the Court's consideration the following analysis regarding the time billing entries in the lists filed in support of the Fee Motion.

44.     At the outset I was struck by the lack of any quantification of time by tasks by Plaintiffs in the fee motion.  It is the usual practice to compile this information and then to explain

1    why the hours for each task were reasonable. As I will show, the major tasks were the factual

2    investigation (92 hours), the complaint (186 hours) class certification (162 hours) and settlement

3    (124 hours). All of these times seem very high to me and it would have been helpful if plaintiffs

4    had first quantified the times and then explained why the times were so high.

5         45.    Under a federal or a state claim for fees the evidence submitted in a fee application

6    should also be full and complete enough to allow the Court to consider whether the case was

7    overstaffed, how much time the attorneys spent on particular claims, and whether the hours were

8    reasonably expended. (*Curtis Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320.)

9    "We do not quarrel with the district court's authority to reduce hours that are billed in block

10   format. The fee applicant bears the burden of documenting the appropriate hours expended in the

11   litigation and must submit evidence in support of those hours worked. See Gates v. Deukmejian,

12   987 F.2d 1392, 1397 (9th Cir. 1992). It was reasonable for the district court to conclude that

13   Welch failed to carry her burden, because block billing makes it more difficult to determine how

14   much time was spent on particular activities. See, e.g., Role Models Am., Inc. v. Brownlee, 359

15   U.S. App. D.C. 237, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because

16   counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to

17   evaluate their reasonableness"); see also Hensley, 461 U.S. at 437 (holding that applicant should

18   "maintain billing time records in a manner that will enable a reviewing court to identify distinct

19   claims"); Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000) (holding that a district

20   court may reduce hours to offset "poorly documented" [**14] billing). *Welch v. Metro. Life Ins.*

21   *Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

22   **XII.    QUANTIFICATION OF CONCERNS AND TASKS**

23
24        46.    In order to analyze the requested 897.33 hours of time we have entered each time

25   billing entry into a Microsoft Excel spreadsheet database that was prepared under my supervision

26   and control. A true and correct copy of this complete database is attached as Exhibit 3. We have

27   arranged the billing entries of all the timekeepers in chronological order, and have added only the

28   comments to the right of the column labeled "Description."

47.    We have also applied the various non-contingent hourly rates to all time in an otherwise identical spreadsheet, in Exhibit 4.

48.    The work descriptions submitted are **all** included in Exhibit 3 and Exhibit 4 (using the adjusted rates) and many of the line entries have been coded using the five columns on the right side of the spreadsheet page headed "H" to "K" with these hours, rate and fees (rounded to nearest dollar) using the adjusted rates for each:

| Column | Code | Concern | Hours | Fees | Fees at adjusted rates |
|--------|------|---------|-------|------|------------------------|
| H | Admin. | Administrative / Overhead | 40.93 | $19,567 | $15,556 |
| I | BB | Block Billing | 279.10 | $171,644 | $128,604 |
| J | Vag | Vague descriptions | 40.17 | $17,318 | $12,057 |
| K | Dup | Duplicative | 124.19 | $70,816 | $49,951 |

49.    We have also attempted to assign the correct task label to every one of the 877 lines in the spreadsheets. Some of the entries are very brief and we have done the best we could to assign each of them to one of the 15 tasks.

50.    Here (in descending order by hours) is a list of the 15 tasks that we developed, together with the hours for each, and the fees (rounded to nearest dollar) at both the requested rates and the adjusted rates:

| Task | Hours | Fees | Fees at adjusted rates |
|------|-------|------|------------------------|
| Complaint | 185.71 | $111,768 | $78,077 |
| Class Certification | 161.86 | $77,825 | $54,047 |
| Settlement related | 124.29 | $66,769 | $43,609 |
| Investigation | 91.98 | $45,226 | $32,339 |
| Discovery | 67.85 | $36,928 | $28,059 |

| | | | |
|---|---|---|---|
| Depositions | 64.40 | $36,090 | $25,309 |
| Fees motion | 39.81 | $22,059 | $15,493 |
| Documents | 34.25 | $15,087 | $10,285 |
| Initial Discovery | 27.58 | $13,158 | $11,608 |
| Notice | 27.05 | $13,621 | $9,460 |
| "Process" | 26.23 | $12,433 | $10,647 |
| Class (Interim) | 18.09 | $9,066 | $6,397 |
| CMC | 11.80 | $5,157 | $4,231 |
| Approval | 10.03 | $3,983 | $3,339 |
| Rule 26 | 6.40 | $3,565 | $2,420 |
| Totals | 897.33 | $472,733 | $335,319 |

## XIII.   POSSIBLE ADJUSTMENTS AND REASONS

51.    The times for four kinds of work identified in paragraph 48 are objectionable in whole or in part. The time for arranging the firms' retainer agreements, preparing civil cover sheets, *pro hac vice* admissions, filing, asking about payments, filing substitution of attorney's notices and sending emails to agree on times for meetings are the kind of things that are usually done by staff and subsumed in the firms' hourly rates.  None of the 40.93 hours of time is properly billed to a fee paying client and it should not be in a fee application. It is $19,567.35 at the requested rates and $15,556.36 at the adjusted rates.

52.    Block billing is also called "lumping" and it is a disfavored manner of submitting time in a fee-shifting case. Here the times that are block billed comprise 31% of the total (279.1/897.33) and this explains in part why the time by the two sides is so far out of alignment.  I suggest that 30% of this time and fees be reduced, which is $51,493.20 at requested rates or $38,581.20 at adjusted rates.

53.    Submitting vague time entries is just not appropriate in a fee-shifting matter as the Chief Justice observed many years ago. Writing "phone call to client" "email to D. Lewis" "post

1    call check in with AK" is just not enough to explain what was done. These comprise $17,318.40

2    at requested rates or $12,056.84 at adjusted rates and none of this time should be allowed.

3        54.    The times that are identified as duplicative are those 55 entries where lawyers are

4    repeating work done by others or where they attend fact witness depositions, revise the work on

5    complaint again and again and attend team meeting calls. One could probably identify all the

6    Winston & Strawn time as "duplicative" in some manner but that is not what is identified, just the

7    124.19 hours of truly duplicative and hence wasteful time that should be reduced by 50%. That

8    50% adjustment comprises fees of $35,408.00 at requested rates or $24,975.50 at adjusted rates.

9        <u>Tasks' Time and Fees</u>

10       55.    Of the 15 tasks that I have identified and quantified as best I can, there are 4 that

11   are clearly excessive in my opinion: Complaint for 185.71 hours; Investigation for 91.98 hours;

12   Settlement related for 124.29 hours and class certification for 161.86 hours. These totals and the

13   fees are shown in paragraph 50 and collect time shown as the several "Tasks" in column L of

14   Exhibits 3 and 4.

15       56.    The complaint is a 31-page pleading (plus 23 pages of exhibits) that relies on the

16   un-quantified investigative work done by Project Sentinel a well-known housing rights non-profit

17   and listed work by the Law Foundation of Silicon Valley - which has 47 lawyers on staff and

18   considerable expertise in residential housing matters by some of the lawyers. The time for

19   investigation is 91.98 hours so, together with the complaint, this is 277.69 hours of time and that

20   is much more than is reasonable as it involves many lawyers who do not appear to have much

21   experience with this kind of California legal issue. At the very most 100 hours is what an

22   experienced team would have recorded and the excess of 177.69 hours should not be awarded.

23   That is a downward adjustment of $100,458.82 at the requested rates or $70,653.10 at the

24   adjusted rates for these two tasks.

25       57.    The 124.29 hours of time for settlement is a different kind of concern. Here there

26   was NO settlement meeting or ADR process with the Lewis plaintiffs before the suit was filed.

27   There was no "meet & confer" before the fee motion was filed. Settlement is to be encouraged in

28   most matters, particularly those where the parties have an ongoing relationship that needs to be

re-aligned.  I recommend allowing 75 hours of time for this process and deducting the excess of 49.29 hours – that would be either $26,478.59 at requested rates or $17,293.89 at adjusted rates.

58.     The time for the motion for class certification of 161.86 hours is high for a matter where settlement was agreed upon.  At most the time of 100 hours (including the time for the hearing that is to come) is reasonable and the excess of 61.86 hours should be deducted – which is $29,742.53 at requested rates or $20,655.67 at adjusted rates.

## XIV.   SUMMARY OF ANALYSIS OF FEES BILLING ENTRIES

59.     I summarize the above analysis as follows:

|  | Fees Recapitulation |  |
|---|---|---|
| Requested fees | $468,888.00 | $468,888.00 |
|  | At requested rates | At adjusted rates |
| Adjustments | - | - |
| Rates | N/A | -$113,568.84 |
| Administrative | -$19,567.35 | -$15,556.36 |
| Block billing | -$51,493.20 | -$38,581.20 |
| Vague descriptions | -$17,318.40 | -$12,056.84 |
| Duplicative | -$35,408.00 | -$24,975.50 |
| Complaint/Invest. | -$100,458.82 | -$70,653.10 |
| Settlement | -$26,478.59 | -$17,293.89 |
| Certification motion | -$29,742.53 | -$20,655.67 |
| Balance | $188,421.11 | $155,546.60 |

60.     This is a total of about 360 hours of time which compares very closely to the time by the other side.

61.     This is also more in keeping with the standard benchmark of 25% of the award.

## XV. <u>CONCLUSION</u>

62.    It is therefore my expert opinion based upon my years of experience that, if the Court first finds that the conditions necessary for an award are satisfied, which I do not concede, Plaintiffs' reasonable fee award for the litigation may be $188,412.11 at requested rates or $155,546.60 at the non-contingent rates actually paid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 24, 2017.

_____

Gerald G. Knapton

- 20 -

DECLARATION OF GERALD KNAPTON ISO OPPOSITION BY DEFENDANTS

EXHIBIT 1

Qualifications and Experience of Gerald G. Knapton

1.      My current *curriculum vitae* is attached at the end of this summary.

2.      I was educated at Brown University; U.C., Berkeley; and the School of Law at U.C.L.A.  I am an attorney at law licensed  to practice before all Courts of the State of California, all federal District Courts in California and before the 9th Circuit and the 3rd Circuit Court of Appeals and am a Registered Foreign Lawyer in Hong Kong.  I am a senior partner (shareholder) of the law firm Ropers, Majeski, Kohn & Bentley, a professional corporation, which has offices in San Francisco, Redwood City, San Jose, Los Angeles, Boston , New York City, Seattle, Las Vegas, West L.A. and Paris, France.

3.      I was admitted to practice law in California in December of 1977 and have been practicing law continuously since that time.  Our law firm is a multi-service law firm offering litigation and transactional legal services domestically and internationally and handles a wide range of civil litigation in state and federal courts.

4.      The undersigned has, over the years, developed a sub-specialty in litigation management, mediation of fee issues, legal ethics, retainer agreements, professional billing practices and opining on the reasonableness & necessity of legal fees, costs and experts' charges.  By the term "litigation management" I mean the entire process of setting guidelines for billing practices for attorneys and budgets so that litigation matters are handled efficiently as well as retrospective reviews of the legal billings of law firms (as well as the work product) to determine their reasonableness and necessity for trial and appellate services.  In addition, the undersigned is often called upon to consult, mediate or testify as an expert witness in legal ethics, Brandt Fees, fee matters or fee dispute matters, including a great many motions for fees under fee-shifting language such as "civil rights" and "private attorney general" statutes.  I have prepared MCLE articles for "California Lawyer" on fee-shifting fee applications and have lectured at the California State Bar Annual Meetings on how to determine reasonable attorney's fees in a number of contexts.

pg. 1

5.    ***I personally have reviewed far in excess of $4.5 billion dollars in fees and the related work product.***  I review legal and expert bills for professional services for a great variety of clients who have some questions about the charges.  Sometimes it is just a question of reasonableness & necessity or how to allocate among the charges for a variety of legal work and at other times I review bills from opponents and their lawyers that are being submitted as part of a settlement or as part of a motion to shift fees.  Many times I am asked to apportion charges among insurance companies or several clients who have agreements to share some, but not all, of the "reasonable & necessary" charges.

6.    I review legal bills almost every day for law firms, corporations, partnerships, insurance companies, cities, counties, trustees, and individuals.  I have written and lectured on the issue of ethics in billing and on the reasonableness and allocation of legal fees and I have qualified and testified as an expert witness on the reasonableness & necessity of fees on more than 50 occasions before juries and judges both in federal and state court trials and in arbitrations.

7.    From 2001 to 2006 I was a member of the California State Bar's Committee on Mandatory Fee Arbitration ("CMFA"). I was the vice-chair of CMFA from 2003 to 2005 and was Chair of CMFA from 2005 to 2006.  CMFA trains state arbitrators and 43 local bar programs and their arbitrators in how to determine reasonable legal fees in about 5,000 "mandatory fee" arbitrations per year.

8.    The undersigned has reviewed and rendered opinions on the legal and experts' billings and legal work of hundreds of law firms throughout the United States, including many in California.  I have reviewed thousands of bills for defending and prosecuting litigated matters of many kinds and also for many transactional matters.  I have looked at about a thousand fee applications in individual matters and in class actions or complex litigation where one party is claiming fees under the terms of a written agreement, an indemnity agreement or an insurance policy, or fees under settlement agreements, by the "catalyst theory," and also under fee-shifting statutes such as the Anti-

SLAPP, Labor Code, state and federal "Civil Rights," "Private Attorney General Statute" or other fee-shifting statutes or common fund fee spreading doctrines to form my opinions on allocations and reasonableness – as well as on the prevailing market rates for many locations.

9.    While I review actual invoices from law firms and see the rates actually charged I have also done fee surveys and as part of my practice I have read and subscribe to almost all of the fee surveys or database compilations available such as the Thomson-Reuters/Westlaw CourtExpress Legal Billing Reports (which are compiled two or three times each year from Bankruptcy Court filings); (Wolters Kluwer company's ) CEB/Datacert/TyMetrix Legal Analytics "Real Rate Report" of 2012, 2013, 2014, 2015 and 2016 (which are extracted from TyMetrix 360 and LegalView actual payments); ALM Legal Intelligence Survey of Law Firm Economics; the AIPLA Report of the Economic Survey (which is compiled in odd numbered years and available in August or September); National Law Journal Survey; the *Laffey Matrix,* now named the *USAO Attorney's Fees Matrix* (published each year by the District of Columbia Office of the United States Attorney in June or July of each year); United States Bureau of Labor Statistics (BLS) and Oregon's Economic Survey Report as well as the Florida and Texas Bars' Surveys/Fact Sheets of rates as part of my work. I am familiar with the legal billing practices of almost all of the major law firms in the United States and have been called upon since 1992 to render opinions regarding the reasonableness of these billing practices, rates and fees. I have written articles on attorneys' fees for the *Los Angeles Daily Journal*, the Recorder, American Bar Association Magazine and several MCLE and "expert advice" articles for *California Lawyer*.

10.    In addition to the MCLE articles I have also conducted MCLE programs on legal fees and mediation practices for the Council on Litigation Management and I have spoken on what is required for a fee application for several years past in MCLE seminars by several sponsors to lawyers as the fee portion part of seminars on insurance litigation.

I have lectured on the subject of attorneys' fees at many events including the 2003, 2004, 2005, 2006 and 2008 Annual Meeting of the State Bar of California. I prepared MCLE materials and lecture on fees and ethics at the 2003, 2004, 2005 and 2006 State Bar Meetings. The *League of California Cities* asked me to author an article on fee shifting for the "Directory of Municipal Practitioners" regarding the evaluation of attorneys' fees. I was a contributing editor to Mealey's "Attorney Fees" and have written "expert commentary" at their request.

11.    Because I have done work as an expert for proponents and (in other cases) opponents of lawyers' charges, I was jointly retained by both a prominent small city and a large insurance company which were adverse to each other but which agreed to accept my report as binding on them both.

12.    I was one of the 3 members of the CMFA sub-committee that drafted the California State Bar of California Sample Written Fee Agreement forms. I frequently consult with lawyers or law firms or clients about various aspects of retainer agreements or fee-sharing arrangements, including budgets and alternatives to hourly billing.

13.    Since 1992 I have reviewed many, many thousands of legal invoices and often the work product that was done to generate the legal bills. My practice involves looking at work product and legal bills almost every day from a very wide variety of circumstances:

>  Lawyers' bills to corporate (or individual) clients
>
>  Fee applications to shift fees to opponents
>
>  Bankruptcy court fee applications
>
>  Class action legal fee applications (fee-shifting or fee-spreading)
>
>  Expert's charges for litigated cases
>
>  Invoices to educational institutions
>
>  Legal invoices to insurance companies
>
>  Reinsurer LAE submissions to Retrocessionaires

Legal Bills in "Duty to Defend" situations

Legal bills in "burning limits" insurance policy contexts

Bills being shifted by contract

Bills to insureds being paid by insurance companies

Bills to cities or other governments

*Cumis* fee submissions

*Brandt* fee issues

Bills to individuals

Bills to partnerships

Bills to Non-Profits

Bills to religious organizations

Charges to be divided/allocated among many payors

14. In many instances I am trying to determine what a reasonable fee is by either the *quantum meruit* approach or by applying the terms of the written retainer agreement or by determining a "lodestar" amount under the terms of a fee-shifting law or court opinions. Many times I am provided with legal bills (and sometime the bills by all sides of a dispute to allow a comparison to be made). The invoices I see may be "shadow billing" (submitted, although payment made on a flat-sum basis), show discounts for many reasons but they also show the face rates—or the rates can easily be calculated. My experience has been that the undiscounted rates charged by counsel selected by clients run from about one hundred fifty to over one thousand dollars per hour. I now see face rates in the range of $125 up to $1,850 per hour on a regular basis. Some of the information I have been provided is pursuant to restrictions of one kind or another although there is no restriction on my considering the data. In many of these retentions there are discounts for a number of reasons, including the volume of work, the prominence of the client, the prominence of the particular matter, statutory limits, marketing pressures, *pro-bono* considerations, statutory schemes, government discounts,

affiliation discounts, prompt-payment discounts, etc.  There are also ramifications of blended rates, bonus payments, monthly caps, deferred payments, part-contingency deals, etc.

15.    I also review the legal work and many times discuss what was done (or not done) with the lawyers.  By reason of this I have come to know the typical and reasonable hourly rates, the normal staffing deployed, the typical and reasonable amounts of time that are charged for legal work as well as the manner in which such work is described.

16.    By reason of all of this work, I have developed an expertise and understanding of the ethics, retainer terms, law firm hourly rates, expert's charges, budgets, charges for litigation, arbitrations, appeals and transactional work in major metropolitan areas in many parts of the United States area over the last few years.

17.    When challenged, all courts have agreed that I am well-qualified to offer my opinions (although some have not agreed with any or all my recommendations).  My methods and testimony as an expert on the reasonableness & necessity of legal fees and rates has been upheld by the appellate court in *Cates v. Chiang*, 213 Cal.App.4[th] 791 (filed February 7, 2013, *Review Denied*).

18.    The following pages have my current curriculum vitae.

*Curriculum Vitae*
**GERALD G. KNAPTON, ESQ.**







(2017)

**Firm Name:**

Ropers, Majeski, Kohn & Bentley apc
445 South Figueroa Street, 30th Floor
Los Angeles, CA 90071
(also Redwood City, San Francisco, San Jose, NYC, Boston, Las Vegas, Seattle, Paris & Hong Kong* offices)

*In Association with Liau, Ho & Chan

pg. 7

Main tel. (213) 312-2000 or **direct line: (213) 312-2016**
Main fax  (213) 312-2001 – web site www.rmkb.com
**E-mail:** gerald.knapton@rmkb.com

**Status**:     Senior Partner (Shareholder)
(Prior experience as general counsel and as partner and associate at L.A. law firms)

**Ratings**: AV Preeminent in 2017 by Martindale-Hubbell and Preeminent "AV" in 2017 Judicial Edition Martindale-Hubbell/Reed Elsevier/Lexis-Nexis  rating:



(2017)

**Admissions to Practice Law**:

| | | | |
|---|---|---|---|
| California   (SBN 077038) | : 1977 | Hong Kong (registered foreign lawyer*) | : 2007 |
| Central District of California | : 1978 | Ninth Circuit Court of Appeals | : 1978 |
| Southern District of California | : 1979 | Northern District of California | : 1979 |
| Eastern District of California | : 1981 | Third Circuit Court of Appeals | : 1998 |

**Member**:
**California State Bar Committee on Mandatory Fee Arbitration**
(2001- 2006; Vice-Chair 2004 – 2005; Chair 2005-2006).

Los Angeles County Bar Association member 2003 to 2012

Los Angeles County Bar Association Professional Responsibility & Ethics Committee

(2005 – 2008).

Pasadena Humane Society & SPCA – Board of Directors 2008 – 2017.

Council on Litigation Management (member 2009 – 2012).

American Bar Association (member  1978 – 1983; 2009 to 2011).

**Education**:
Brown University (Providence, Rhode Island) and
University of California, Berkeley, B.A., 1973 (With Highest Honors & Phi Beta Kappa).
University of California, Los Angeles, School of Law, J.D., 1976
Pepperdine University School of Law – Straus Institute for Dispute Resolution, 2003

**Litigation/Trial Experience**:
More than 48 cases to court, jury and arbitration panel(s).
More than 8 Court of Appeals and Supreme Court matters.

pg. 8

**Testifying expert**:
**Qualified and testified more than 50 times to jury, court or arbitrator as an expert on the reasonableness and necessity of litigation fees and costs.**

**Fee Dispute Matters**:
Far over $4.5 billion dollars in nationwide legal fees, experts' fees and costs and work product reviewed. Litigation management and fee matters concerning attorney's fees and related costs ranging from $20,000 to in excess of $800,000,000.00 in charges. Lawyer to lawyer approach backed by computer technology. Lectures and seminars, written and oral opinions, declarations and expert testimony on reasonableness of fees in hundreds of matters throughout the United States, Canada and other common law jurisdictions. Analysis of _Cumis_, fee-shifting, lodestar, agreement-based, common-fund, panel and retained counsel's fees. "CAFA" projections. _Buss_ and _Brandt_ and other allocations. Cost-control training, including budgets, alternative fee programs, guidelines and retainer agreements. California State Bar Sub-Committee member on drafting the 2005 State Bar Sample Fee Agreements. Chief outside auditor of legal fees for the several governmental entities. Retained by insurance companies, law firms, governmental entities, corporations and private individuals as fee expert, _in support of and opposing_ requests for fees. Designated "binding" neutral by existing clients, an adverse prominent city and large insurer. Retained as mediator in fee disputes.

**Author**:
"Budgets, Performance Metrics and You" (ADTA Program Handout -76[th] Meeting, Nashville April 2017). "What Every Lawyer Should Know About the Latest Interpretation of California's Cost-Shifting Settlement Statute" (MCLE article, January 5, 2017) _California Lawyer_; "How to Prove an Attorney's Reasonable Hourly Fee" Expert Advice/Practical Tips _California Lawyer_ November 2015; "Can You Prove Your Hourly Rate to the Court?" _Daily Journal_ October 19, 2015; 2 Routes to Hourly Rates for Lawyers" April 15, 2015 _Law 360_; "Recovering Fees In Family Law Practice" 2015 - Volume 37 No. 1 _Family Law Newsletter_, California State Bar; "Wrangling with whether and when actual trial begins" _Los Angeles Daily Journal_, February 4, 2015; "Recovering Fees from Clients" _California Lawyer_, July 2014; "Catalyst theory still a viable route to attorney fees" _Los Angeles Daily Journal_, June 19, 2013. "One-way fee shifting proves risky" _Los Angeles Daily Journal_, March 21, 2013. "Welcome to the cafeteria of _Jankey v. Lee_" [federal preemption law] _Los Angeles Daily Journal_, December 27, 2012. "For the Love of a Family Pet," The Recorder, October 19 & 22, 2012. "State high court to review fee award in disability access suit," _Los Angeles Daily Journal_, October 17, 2012. "Warning: Some Cost Shifting May Occur" _California Lawyer_ (MCLE article September 2012). "Legislative History Says No Fee-Shifting in Meal and Rest Break Litigation," _Los Angeles Daily Journal_, May 16, 2012. "Labor Code Fee Shifting Provisions," _Los Angeles Daily Journal,_ February 17, 2012. "Fee Shifting Statutes and Self Representation" _The Recorder_ November 2011. "Recoverable Attorney Fees for Public Entities" Public CEO (July 22, 2011). "The fine art of actually collecting legal fees" _National Law Journal,_ June 15, 2009. "Arbitration & Mediation", _The Recorder_ April 15, 2009. "Attorney's Guide to Arbitrating and Litigating a Fee Dispute," September 2008 program materials at California State Bar Annual Meeting in Monterey, CA. "Controlling the Costs of E-Discovery," _Los Angeles Daily Journal_, August 6, 2008. October 2006 California State Bar Meeting materials and speaker at MCLE program on California State Bar retainer agreements. September, 2005 California Sate Bar meeting materials for and speaker at 2 MCLE programs: "New State Bar Sample Written Fee Agreements" and "Overview of the Mandatory Fee Arbitration Process." "Billing Guidelines Offer Base Against Which to Measure Results." _San Francisco and Los Angeles Daily Journal_ November 24, 2004. October 2004 California State Bar meeting materials for, and speaker at, 2 MCLE programs: "Getting It Right From the Beginning" and "Do's and Don'ts For Collecting Attorneys Fees". "Vroom, Vroom. Three Categories

For Fee Shifting Means Finding The Right Gear", *The Recorder & Cal Law* (Practice Center, August 18, 2004). "Ethics of Attorneys Fees", *California Lawyer* (MCLE article July, 2004).  "Attorney Liens Must Comply With 'Fletcher' Requirements", *San Francisco and Los Angeles Daily Journal*, June 29, 2004.  "'Catch-All' Arbitration Clauses Don't Give Parties Firm Footing", *San Francisco and  Los Angeles Daily Journal*, June 4, 2004. "Attorney-Client Fee Conflicts"  San Francisco and Los Angeles Daily Journals (January 26, 2004).  "Attorneys Fees Applications" MCLE, *California Lawyer* (January, 2004 revision). "Paper Cutter" (Electronic Invoicing) Daily Journal *Extra* (December 29, 2003). "Appealing Arbitration Awards", *Los Angeles Daily Journal* (October 6, 2003). "Fees in Flux" MCLE Program materials for, and speaker at, 2003 California State Bar Meeting.  "Shaping Arbitration", *Los Angeles Daily Journal Verdicts & Settlements* (March 8, 2002). "The *Catalyst Theory* May Still Live", *Expert Advice, California Lawyer* (November, 2001).  "Policy Language Is Winning Against Recoupment But A New Battle Looms" *Mealey's Attorney Fees*, Vol. 3, #11 (June, 2001). "Why Don't Clients Pay? What You Need to Know to Avoid Collections Headaches" *Law Practice Management Magazine* (American Bar Association) Vol. 27, # 3 (April,  2001)." The Choice Of The Yardstick Is The Most Crucial Decision", *Mealey's Attorney Fees*, Vol. 3, #2 (September, 2000). "A Lawyers Bill May Be Reduced or Forfeited by Ethical Violations", *Expert Advice, California Lawyer* (February, 2000). "How Do You Prove the "Lodestar" for In-house Counsel Fees?", *Mealey's Attorney Fees*, Vol. 2, #1 (August, 1999)." Attorneys Fees Applications", MCLE, *California Lawyer* (May, 1999). "Paying the Other Side's Legal Fees: Attorneys' Fees Calculations Under Fee-Shifting Statutes.", *The Directory of Municipal Practitioners*, § II, G. (League of California Cities, 1997).

Recent Speaking engagements:
> USC/Gould School of Law, Second Annual Advanced Arbitration Institute  July 28, 2017
> Association of Southern California Defense Counsel MCLE program on recovering fees by motion and the ethics of legal billing on November 3, 2016.
> Law firm pricing program to large law firm on June 17, 2015.
> Plaintiffs Securities Law Firm: In-house MCLE program "Optimal Timekeeping Procedures; Avoiding Objectionable Case-Related Expenses." August 9, 2012
> Smart Business Los Angeles – July 2012 edition. "How to ensure your money is well spent with the right law firm during litigation."
> ACI's 6th Annual Forum "Reducing Legal Costs" October 20-21, 2011
> Provisors, LLP "Effective Motions for Attorney's Fees" July 8, 2011
> Mercury Insurance Group on Mediation for CLM February 2011
> Sonoma Risk Insurance MCLE on Contract Litigation Insurance 2010
> How to Review Legal Bills, CLM program in Columbia, SC June 2010
> Strafford's Ethical Pitfalls in Client Billing & Fee Collection, July 29, 2009.
> State Bar Annual Meeting, September, 2008 (Monterey) on arbitrating or litigating fee disputes.
> Bermuda offshore carriers program May, 2008.
> State Bar Annual Meeting, 2006 (Monterey) on retainer agreements.
> CELA Annual Conference speaker on retainer agreement, September 15, 2006
> Bridgeport MCLE program on Insurance Bad Faith August 25, 2006
> Class Action/UCL MCLE Program section on Attorney's Fees, April, 2006
> Quisenberry Insurance Bad Faith Litigation Seminar, January, 2006
> State Bar Annual Meeting, 2005 (San Diego) on retainer agreements and arbitration.
> Quisenberry Seminar in January, 2005 on fees and ethics.
> State Bar Annual Meeting, 2004 (Monterey) on fees and ethics.
> State Bar Annual Meeting, 2003 (Anaheim) on fees and ethics.

Employment History of Gerald G. Knapton, Esq. (CA SBN 077038):

| | |
|---|---|
| 2002 to present. | Ropers, Majeski, Kohn & Bentley apc – Sr. Partner/Shareholder |
| 1992 to 2002 | Cooper Kardaras & Kelleher LLP (formerly known as Cooper, Brown, Kardaras & Scharf) - Partner (& Manager of Lauditors, Inc.) |
| 1992 to 1992 | First National Group, Inc. - General Counsel |
| 1989 to 1991 | Northland Financial Company - Vice President |
| 1983 to 1989 | First National Group, Inc. - General Counsel |
| 1982 to 1983 | Schroeder, Forde & Knapton - Business/Bank Litigation Partner |
| 1978 to 1982 | Hahn Cazier & Leff - Business Litigation Associate |
| 1977 to 1978 | Kirtland & Packard - Tort Defense Litigation Associate |
| 1973 to 1977 | California Attorney General and Law Offices of Kenneth L. Knapp; law clerk while attending and after law school. |

*Business Experience* prior to law school:

Rogers Corporation (Manufacturing Company)

Branch Motor Express (Trucking Company)

Adley Express (Trucking Company).

Others to be provided upon request.        End of list.

pg. 11

EXHIBIT 2



# 2016 Real Rate Report®: Lawyer Rates, Trends, and Analysis









## Report Editors

Bradley Tingquist
**Quantitative Leader, CEB**

David Moran
**Sr. Director of Product Management, Legal
Analytics, Wolters Kluwer's ELM Solutions**

## Lead Data Analysts

Ashish Shakya
**Quantitative Consultant, CEB**

Steve Vumback
**Data Analyst, Wolters Kluwer's ELM Solutions**

Beth Seefelt
**Data Architect, Wolters Kluwer's ELM Solutions**

## Contributing Analysts and Authors

Aaron Kotok
**Practice Leader, CEB**

Bill Sowinski
**Director, Decision Support Services,
Wolters Kluwer's ELM Solutions**

Joel Surdykowski
**LegalVIEW Product Manager,
Wolters Kluwer's ELM Solutions**

Leslie Gillette
**Senior Product Marketing Manager,
Wolters Kluwer's ELM Solutions**

## Content Publishing Solutions

Kathryn Minock
**Graphic Designer, CEB**

Aasthaa Dhiman
Christie J.E. Parrish
Priyanka Sinha
**Contributing Designers, CEB**

A. Kate MacDougall
**Editor, CEB**

## Executive Sponsors

Christina Hertzler
**Practice Leader, CEB**

Glenn Paredes
**EVP and General Manager,
Wolters Kluwer's ELM Solutions**

© 2017 CEB and Wolters Kluwer's ELM Solutions. All rights reserved. This material may not be reproduced, displayed, modified, or distributed in any form without the express prior written permission of the copyright holders. To request permission, please contact:

|  |  |  |  |
|---|---|---|---|
| ELM Solutions, a Wolters Kluwer business | Or | CEB | |
| 20 Church Street | | 1919 North Lynn Street | |
| Hartford, CT 06103 | | Arlington, VA 22209 | |
| United States | | United States | |
| ATTN: Marketing | | ATTN: Marketing | |
| +1-860-549-8795 | | +1-571-303-3000 | |

**LEGAL CAVEAT**
CEB and Wolters Kluwer's ELM Solutions have worked to ensure the accuracy of the information in this report; however, CEB and Wolters Kluwer's ELM Solutions cannot guarantee the accuracy of the information or analyses in all cases. CEB and Wolters Kluwer's ELM Solutions are not engaged in rendering legal, accounting, or other professional services. This report should not be construed as professional advice on any particular set of facts or circumstances. Neither CEB nor Wolters Kluwer's ELM Solutions is responsible for any claims or losses that may arise from any errors or omissions in this report or from reliance upon any recommendation made in this report.

©2017 CEB. All rights reserved. GCR166424PR

# Table of Contents

A Letter to Our Readers                                                                    **4**

How to Use This Report                                                                   **5**

Executive Summary                                                                        **6**

A Note on Comparability of Data                                                      **8**

Chapter 1: Rate Trends                                                                    **11**
- Rebounding Growth                                                                   12
- Operating in a Changing Legal Market                                            13
- Partner and Associate Rate Increases Widen at Larger Firms              14
- Associate Rate Increases Outpace Partners in Most US Cities             15
- Identifying Value in Secondary Markets                                           16
- Growing Separation in Associate Rates                                            17

Chapter 2: Drivers of Lawyer Rates                                                  **18**
- Unpacking the Drivers of Lawyer Rates                                          19
- The Model for Lawyer Rates                                                         20
- The Model at Work                                                                     21

Chapter 3: Managing Billing Behaviors                                             **22**
- Introducing Law Firm Billing Behaviors                                          23
- Fractional Billing                                                                        25
- Block Billing                                                                              27
- Duplicate Billing                                                                         31
- Low-Value Billing                                                                        34
- Late Billing                                                                                36
- Upbilling                                                                                    39
- Heavy Billing                                                                             41

Appendix A: Summary Data Tables                                                   **43**
- High-Level Data Cuts                                                                   45
- Industry Analysis                                                                        80
- Practice Area Analysis                                                                 98
- In-Depth Analysis for Select US Cities                                            164
- Summary Reference Cards for Select US Cities                                 194
- International Analysis                                                                    201
- Matter Staffing Analysis                                                               221

Appendix B: Methodology Notes                                                      **225**

Appendix C: Data Methodology                                                        **229**
- Invoice Information                                                                      230
- Non-Invoice Information                                                               230
- A Note on US Cities                                                                     231
- Data Methodology                                                                        234

©2017 CEB. All rights reserved. GCR166424PR                                                                    cebglobal.com

# A Letter to Our Readers

Welcome to the sixth edition of the *Real Rate Report®*, the industry's leading data-driven report for lawyer rates and matter costs.

We continue to see many changes in the way Legal departments work with their law firms. As the market for legal services evolves, we see greater reliance on internal analytics and the usage of data resources such as Wolters Kluwer's ELM Solutions LegalVIEW® data warehouse. Legal departments are doing more with our data than benchmarking the cost of their law firms and negotiating preferred rates. They are getting more granular, monitoring lawyer staffing and billing patterns to manage their matters actively. Law firms are also benefiting more, using our data not only to create accurate budgeting projections but also to monitor the level of service provided to their clients.

This year's report analyzes more than $19.6 billion in legal spending data from corporations' and law firms' e-billing and time management solutions as well as other industry sources. As in past *Real Rate Reports*, users get a unique look into matter costs because we use actual invoice data at a depth and granularity not available anywhere else. In addition, we have provided a first-time analysis of lawyer billing behaviors which highlight potentially inappropriate lawyer invoicing and demonstrate how these exceptions can add significant cost. Using this information, Legal departments and law firms can set joint expectations for reasonable billing practices and discuss potential invoicing issues early enough to prevent longer-term harm in their relationship.

As always, our hope is that this information and analysis will not only inform Legal departments about hourly rates and total costs but also empower them to make better and more confident decisions that create substantial cost savings and greater satisfaction with the law firms they use.

We strive to make the *Real Rate Report* a valuable and actionable reference tool for Legal departments and law firms. As with previous *Real Rate Reports*, we welcome your comments and suggestions on what information would make this publication more valuable to you. We thank you and look forward to continuing the conversation on how Legal departments and law firms can collaborate with better clarity and trust.

Warm regards,

**Christina Hertzler**

Practice Leader

**Glenn Paredes**

EVP and General Manager

Wolters Kluwer's ELM Solutions

©2017 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# How to Use This Report

The *Real Rate Report* examines law firm rates over time; identifies rates by location, experience, firm size, areas of expertise, industry, and timekeeper role (i.e., partner, associate, and paralegal); and enumerates variables that drive rates up or down. All the analyses included in the study are derived from the actual rates charged by law firm professionals as recorded on invoices submitted and approved for payment.

Examining real, approved rate information along with the ranges of those rates and their changes over time highlights the role these variables play in driving aggregate legal cost and income. The analyses can energize questions for both corporate clients and law firm principals. Clients might ask whether they are paying the right amount for different types of legal services, while law firm principals might ask whether they are charging the right amount for legal services and whether they could generate additional income if they modified their approach.

Affirmatively or intuitively, company purchasers of law firm services usually evaluate law firm rates based on five classic value propositions[1]:

1. **Quality—**Whether good, poor, or acceptable results are routinely achieved
2. **Cost—**The price, or rate, paid to achieve results
3. **Service—**The level of responsiveness and compliance with required processes
4. **Speed—**How quickly matters or tasks are resolved
5. **Innovation—**The application of novel solutions to issues or matters

These value propositions are more or less important across varying practice areas, and their relative values are clearly demonstrated in this study. Delivering fast and excellent results in complicated financial matters is appropriately valued by clients more highly (with resulting higher rates) than is delivering excellent results in routine workers' compensation or real estate matters. The information in this report can assist law firms in considering whether they are properly pricing their services and can further inform the profitability of alternative business models. The *Real Rate Report* can help companies align their past and future paid rates with the value propositions that return the greatest value by practice area.

## New to the *2016 Real Rate Report*

This edition of the *Real Rate Report* contains many new analyses that provide added insight on lawyer rates and ultimately matter costs.

**Lawyer Billing Behaviors**

The most notable enhancement to this report is the detailed analysis of lawyer billing behaviors. Over the years, ELM Solutions developed metrics for corporate Legal departments to track billing behaviors of lawyers and paralegals. ELM Solutions collects these metrics in its Actionable Insight Billing Tendencies Reports, which are run against a corporate Legal department's invoice data. Those metrics are calculated for a corporate Legal department by identifying the timekeepers who generated unusual billing entries, either from a single law firm or across a panel of many firms. In the *2016 Real Rate Report*, these billing tendencies were aggregated across the total dataset to measure their likelihood and potential impact.

**More Robust Data Appendix with Real Rate Cards for Large US Markets**

The *2016 Real Rate Report* builds on the demand for more granularity. In addition to displaying rate benchmarks for detailed practice areas, US and Canadian cities, and non-US geographic regions, a new appendix section provides pocket-sized summary tables for the 25 US cities with the most billing data available in LegalVIEW. Each of these Real Rate Cards provides summary statistics on rates, annual rate changes, and volume of work performed filtered by firm size and that city's most frequently billed practice areas.

[1] Dave Ulrich, Jack Zenger, and Norm Smallwood, *Results-Based Leadership*, Boston: Harvard Business Press, 1999.

©2017 CEB. All rights reserved.  GCR166424PR

# Executive Summary

Over the past decade, the legal services market has undergone a series of substantial changes disrupting the traditional client–law firm model. The introduction of new Legal department technologies and alternative Legal service providers has created a more competitive environment for law firms and has provided cheaper alternatives for Legal departments. In addition, the Great Recession forced companies to adopt more aggressive cost control efforts that impacted all parts of the business, including corporate Legal department budgets. A CEB survey conducted in the midst of the recession revealed that more than half of corporate Legal departments cut their budgets in 2009. Not surprisingly, most Legal departments focused first on reducing the fees paid to their outside counsel to accomplish this, as outside counsel spending accounted for more than half of a typical Legal department's budget.

With this as the backdrop, Legal departments have spent an increasing amount of time sifting through data on legal fees to better clarify how they are spending their money and with whom. However, law firm selection and rate negotiation are only part of cost control.

In CEB's 2015 Outside Counsel Performance Assessment survey, 37% of Legal departments reported that the total amount they paid to law firms was more than they expected to pay for the work performed. In that same survey, 21% of departments reported that they required their law firms to format their invoices to defined standards for less than half of their matters and 24% educated their outside counsel on their preferences for less than half of their matters. These results suggest that ongoing law firm management through the life of a matter is frequently overlooked. Setting expectations clearly and increasing ongoing communications with law firms can improve the quality of legal work and in turn prevent costly invoicing and production mistakes. Legal departments are increasingly aware that closer law firm management is also necessary to manage costs and are spending more time strengthening the oversight of their outside counsel.

To aid in both of these efforts, we reviewed the data from Wolters Kluwer's ELM Solutions' LegalView warehouse, which holds more than $19.6 billion in actual law firm invoices. We found a number of interesting themes emerge.

**Lawyer Rates Are Increasing Again**
After a notable slowdown in 2013 that suggested rate increases might be stabilizing, year-on-year rate increases again rose over consecutive years to 5.4% in 2015. The percentage growth in rates occurred for both partners and associates, with associates enjoying a higher rate increase relative to partners.

**First-Year Associates Rates Have Flattened**
After a small increase in 2011, the average rate that a first-year associate billed in a given year has not changed. Meanwhile, average rates for associates at different levels of experience have seen more significant growth. In 2010, the average fifth-year associate billed a rate 8% higher than the average second-year. In 2015, that difference had increased to 21%.

**Law Firm Size Has the Largest Impact on Hourly Rates**
Of the more than 350 factors we tested, our analysis confirmed that law firm size was the largest driver of law firm rates. Regardless of the market location or type of work performed, larger firms consistently charged higher rates. These data suggest that larger law firms have been more successful not only in promoting an integrated "one-stop-shop" value proposition but also in obtaining a greater share of large matters. Location (especially in New York or Washington, DC), years of experience, and the designation as a partner also heavily impacted a lawyer's hourly rate.

©2017 CEB. All rights reserved.  GCR166424PR

**Oversight of Law Firm Billing Discipline Varies Widely**

Although inappropriate billing is the exception for an individual lawyer when compared with all of their otherwise valid invoice entries, some lawyers did invoice clients for questionable entries more frequently than others. Similarly, it is also true that some clients were more likely to pay for questionable invoice entries than other clients. For just the three most common billing practices— fractional billing, block billing, and duplicate billing—the difference in fees paid on each behavior in 2015 varied by approximately $0.2 million, $2.9 million, and $1 million, respectively, for top- and bottom-quartile Legal departments.

Factors not tested here certainly played a role in these clients' likelihood of receiving more or fewer questionable invoice entries in a year (e.g., a large number of general liability litigation matters where instances are more common). However, the large difference in spending between top- and bottom-quartile clients suggests that some in-house counsel are simply doing more with their law firms to manage these behaviors.

Overall, this report suggests that despite the disruptions in the legal market, it is still very healthy, particularly for the largest firms. We see a valuable opportunity for Legal departments to examine not only hourly rates but also how law firms work with them to manage invoicing and matters.

©2017 CEB. All rights reserved. GCR166424PR

# A Note on Comparability of Data

The data used for the *2016 Real Rate Report* include more than $19.6 billion in fees billed for legal services in the United States during the six-year period from 2010 to 2015. The data comprise fees paid by 97 companies to more than 5,900 law firms and more than 213,000 timekeepers. Table 1 provides a summary description of the US dataset.

In addition, a smaller subset of data is used to provide rate analyses for timekeepers outside of the United States. These data from the three-year period of 2013 to 2015 included more than $800 million in legal fees and more than 22,000 lawyers across 97 countries.

The information is not based on surveys, sampling, or reviews of other published information but on anonymized data showing the actual hours and fees law firm personnel billed. Companies participating in this *Real Rate Report* analysis provided written consent for the use of their data. The data used to create this report exclude identifying information of participant companies and of the matters, timekeepers, and law firms billing on those companies' invoices. (For more information on the data methodology, see the Appendix.)

This dataset is large enough to provide valuable guidance and represents a statistically useful portion of the $321.7 billion annual US legal services business.[2] Am Law 100 firms alone had 2015 revenues of roughly $83.1 billion.[3] This dataset covers approximately 146,600 partners and associates—spread across more than 350 US metropolitan areas.

Again, this sample is large enough to have useful analytical power, but it certainly does not come close to covering all the lawyers in the United States who work for corporate clients. The United States Bureau of Labor Statistics estimates there are more than 609,930 lawyers practicing in the United States—58,650 lawyers in the New York area alone and another 40,870 in the Washington, DC, area.[4]

[2] Bureau of Economic Analysis, "Gross Output by Industry," 3 November 2016, http://www.bea.gov/iTable/iTable. cfm?ReqID=51&step=1#reqid=51&step=51&isuri=1&5114=a&5102=15.

[3] "The 2016 Am Law 100: Growth Slows for Big Law," *The American Lawyer*, 25 April 2016, http://www.americanlawyer.com/id=1202489912232/The-2016-Am-Law-100-Growth-Slows-for-Big-Law.

[4] Bureau of Labor Statistics, "Occupational Employment and Wages," May 2015, http://www.bls.gov/oes/current/oes231011.htm.

**Table 1:** Overview of the US Legal Fees Data Analyzed

| | |
|---|---|
| Fees Billed ▸ | $19.6 Billion (2010–2015) |
| US Law Firms ▸ | 5,900+ |
| Law Firm Associates ▸ | 85,900+ |
| Law Firm Partners ▸ | 60,700+ |
| Total Individual Billers ▸ | 213,000+ |
| Number of Invoice Line Items ▸ | 57.7 Million |
| Total Hours Billed ▸ | 56.6 Million |
| North American Metropolitan Areas ▸ | 300+ |
| Number of Companies ▸ | 97 |
| Industries Represented ▸ | Basic Materials and Utilities, Consumer Goods, Consumer Services (Including Retail) Financial Services (Including Banking and Insurance), Health Care, Industrials, Technology and Telecommunications |

Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

©2017 CEB. All rights reserved. GCR166424PR



**ELM Solutions**

*Leverage data analytics to boost your competitive edge*

Savvy legal professionals know that high-performance data and analytics can take their businesses to the next level. Wolters Kluwer's ELM Solutions helps you price, plan, and budget legal services as well as manage panel and outside counsel spend with extraordinary confidence and predictability. The opportunities revealed keep our clients far ahead of the rapid changes in today's legal environment.

For ideas based on insight, trust **LegalVIEW – the most comprehensive database of legal performance data in the world**.

**Learn more at wkelmsolutions.com/legalview-analytics**

# Become More Effective Legal Leaders and Business Partners

CEB helps you manage a cost-effective and high-quality Legal function.

## Top 10 Challenges CEB Supports Legal Executives With

- Legal Risk Management and Decision Support
- Legal Department Strategy and Structure
- Outside Counsel Management
- Legal Talent Development
- Records Management
- Board Support and Corporate Secretarial Function
- Legal Business Partnership
- Process, Technology, and Analytics
- Contracts Management
- Litigation Management

**Learn more.**
cebglobal.com/legal



## Chapter 1
# Rate Trends



**2016 Real Rate Report**

Chapter 1: Rate Trends
# Rebounding Growth

Lawyer rate increases are once again on the rise after a brief slowdown in 2013. Figure 1 shows the year-over-year (YOY) percent change in partner and associate rates from 2010 to 2015. The average YOY increase in overall lawyer rates was 5.4% in 2015, driven by a 7.3% increase for associates rates and a 3.6% increase for partners.

The difference in partner and associate rate increases is also displayed in Figure 1. The average YOY rate increase for associates has consistently been at least double the average for partners, even at times of slower growth.

**Figure 1:** Average YOY Lawyer Rate Changes, 2010 to 2015



Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

©2017 CEB. All rights reserved. GCR166424PR

Chapter 1: Rate Trends

# Operating in a Changing Legal Market

Figure 2 provides some context on changes in the legal services marketplace during the same time period. It presents data on law firm revenues, demand for legal services, and new lawyer supply. We saw in Figure 1 that lawyer rate increases temporarily slowed only to ultimately reach a five-year high in 2015. During that time, revenue growth slowed at the largest law firms, demand for law firm services weakened, and the supply of high-quality and low-cost legal talent contracted.

Corporate Legal departments face ongoing pressure to reduce legal costs. In CEB's 2016 State of the Legal Function survey, 53% of Legal departments reported that legal spending held flat or decreased in 2016. Legal departments also have more options to choose from when sending their legal work outside. Law firms are driving profits in this environment in part through these recent YOY rate increases from their more tenured lawyers.

**Figure 2:** Trends in the Legal Services Marketplace, 2010 to 2015

| | Shrinking Revenue Growth | Reduced Demand for Law Firm Services | Fewer Junior Lawyers |
|---|---|---|---|
| **2010 to 2013** | - AmLaw100 gross revenues grew from 5% to 10% annually between 2010 and 2013.[a] | - Total hours billed per law firm in the LegalVIEW dataset fell 3% from 2011 to 2013.<br>- Total hours billed in established client–firm relationships in the LegalVIEW dataset slowed from 22% growth in 2011 to 15% growth in 2013. | - Number of law school grads[b] grew by 6.4%; the number of grads employed by law firms grew by 10.8%.<br>- Bar exam scores[c] remained relatively flat.<br>- The percentage of law firm timekeepers billing time that were first- and second-year associates fell from 5.3% to 3.9%.[d] |
| **2013 to 2015** | - AmLaw100 gross revenues grew at a slowing pace, falling to 4.6% growth in 2014 and 2.7% growth in 2015.[a] | - Total hours billed per law firm in the LegalVIEW dataset fell 8% from 2013 to 2015.<br>- Total hours billed in established client–firm relationships in the LegalVIEW dataset reversed from 6% growth in 2014 to an 8% decrease in 2015.[d] | - Number of law school grads[b] declined by 14.5%; the number of grads employed by law firms fell by 12.2%.<br>- Bar exam scores[c] declined by 2.7%.<br>- The percentage of law firm timekeepers billing time that were first- and second-year associates dropped from 3.9% to 3.1%. |

[a] The American Lawyer, "The 2016 Am Law 200: Our Exclusive Report," 23 May 2016, http://www.americanlawyer.com/id=1202494427064/The-2016-Am-Law-200-Our-Exclusive-Report.

[b] American Bar Association, "Statistics," 2017, http://www.americanbar.org/groups/legal_education/resources/statistics.html.

[c] National Association for Law Placement, "Perspectives on 2015 Law Student Recruiting," 2015, http://www.ncbex.org/publications/statistics/mbe-statistics/.

[d] LegalVIEW Dataset.

©2017 CEB. All rights reserved. GCR166424PR

**Chapter 1: Rate Trends**

# Partner and Associate Rate Increases Widen at Larger Firms

Figure 3 takes a closer look at how average year-to-year rate increases have changed since 2012 at different-sized law firms.

Annual rate increases were higher for lawyers at larger firms. Rate increases were relatively minor at smaller firms with 50 or fewer lawyers, where the average lawyer's rate increase was 2.3% in 2015. At the largest law firms with 500 or more lawyers, the average lawyer's rate increase was more than three times that percentage, reaching 7.5% or higher. Figure 3 displays this steady growth in lawyer rate increases across firm sizes,

Annual rate increases were higher at larger law firms for both partners and associates, but especially for associates. Figure 3 also displays how the gap between partner and associate rate varied across different firm sizes. Annual partner rate increases were nearly 2.5 times larger at the largest law firms than the smallest, 4.9% compared with 2.0%. Annual rate increases for associates were 3.6 times larger in 2015, reaching 10% or higher at large law firms with more than 500 lawyers.

**Figure 3:** Average Year-to-Year Lawyer Rate Changes by Firm Size, 2012 to 2015



*n* = 30,501 (2012-13); 29,527 (2013-14); 26,792 (2014-15); lawyers across all firms sizes.
Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

©2017 CEB. All rights reserved. GCR166424PR

Chapter 1: Rate Trends

# Associate Rate Increases Outpace Partners in Most US Cities

Figure 4 displays average rate increases for the 25 US markets with the highest volume of legal work sent to law firms. With a few exceptions, associate rate increases outpaced partners, and they did so by greater margins in larger US cities characterized by a higher density of the largest law firms.

The tables below Figure 4 provide brief deep dives on rates and rate changes for the New York and San Francisco markets. They display how law firm usage, legal work performed, and lawyer rate changes differ across individual cities.

**Figure 4:** Average Year-to-Year Lawyer Rate Changes by US City, 2014 to 2015



*n* = 98 partners for New Orleans to 2,397 partners for New York; 76 associates for New Orleans to 2,761 associates for New York.
Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

## New York

| | | 2015 | | % Rate Change | | |
|---|---|---|---|---|---|---|
| | | % of Hrs | Mean Real Rate | '13 | '14 | '15 |
| **Role** | Partners | 31% | $779 | 2% | 4% | 5% |
| | Associates | 57% | $517 | 10% | 11% | 11% |
| | Paralegals | 12% | $219 | 4% | 6% | 7% |
| **Firm Size (# of Lawyers)** | 50 or Fewer | 11% | $352 | 3% | 2% | 4% |
| | 51 to 200 | 8% | $396 | 3% | 6% | 5% |
| | 201 to 500 | 13% | $576 | 4% | 5% | 5% |
| | 501 to 1,000 | 38% | $699 | 7% | 10% | 10% |
| | More Than 1,000 | 29% | $719 | 6% | 7% | 9% |
| **Most Billed Practice Areas** | M&A, Non-Litigation | 11% | $759 | 4% | 12% | 12% |
| | Corporate, Non-Litigation | 9% | $720 | 4% | 7% | 6% |
| | Corporate, Litigation | 8% | $554 | 4% | 3% | 4% |
| | Investments and Other Fin. Instruments, Non-Litigation | 7% | $750 | 8% | 11% | 13% |
| | Patents, Litigation | 5% | $577 | 7% | 7% | 5% |

## San Francisco

| | | 2015 | | % Rate Change | | |
|---|---|---|---|---|---|---|
| | | % of Hrs | Mean Real Rate | '13 | '14 | '15 |
| **Role** | Partners | 46% | $595 | 2% | 3% | 4% |
| | Associates | 41% | $400 | 6% | 7% | 7% |
| | Paralegals | 12% | $172 | 0% | 3% | 6% |
| **Firm Size (# of Lawyers)** | 50 or Fewer | 23% | $328 | 1% | 1% | 2% |
| | 51 to 200 | 17% | $438 | 1% | 4% | 3% |
| | 201 to 500 | 8% | $385 | 3% | 4% | 3% |
| | 501 to 1,000 | 34% | $553 | 4% | 5% | 9% |
| | More Than 1,000 | 19% | $650 | 5% | 6% | 6% |
| **Most Billed Practice Areas** | Patents, Litigation | 15% | $643 | 5% | 4% | 8% |
| | Product and Product Liability, Litigation | 11% | $369 | 6% | 1% | 0% |
| | Asbestos Mesothelioma, Litigation | 9% | $273 | 1% | 3% | 1% |
| | Patents, Non-Litigation | 6% | $477 | 3% | 6% | 3% |
| | General Liability, Litigation | 6% | $324 | 1% | 3% | 2% |

©2017 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com
cebglobal.com

Chapter 1: Rate Trends
# Identifying Value in Secondary Markets

Figure 5 displays a comparison of 50 US markets across two factors: 2015 lawyer rates and percentage growth in lawyer rates from 2013 to 2015. The predominantly larger cities in the top right quadrant of this table are growing primary markets. These cities have above median rates and rate increases. The bottom-left quadrant highlights some smaller cities where lawyer rate growth has remained at or below 6% across the past two years. These markets are emerging as possible bargains, with comparatively cheaper rates.

Although none of the cities analyzed fell purely in a zone of above-typical rates and below-typical rate growth—a handful of cities were close. This cluster of cities closest to the intersecting dotted lines (where median rates intersect median rate changes) represent potentially core secondary markets where rates are more stable. Those cities include Charlotte, Philadelphia, Trenton, San Diego, Baltimore, Cleveland, Miami, Minneapolis, Milwaukee, and Columbus.

**Figure 5:** 2015 Lawyer Rates by Average Lawyer Rate Increases from 2013 to 2015[a]



*n* = 18,936 total lawyers.

Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

[a] Includes cities with at least 50 lawyers billing in both 2013 and 2015.

©2017 CEB. All rights reserved. GCR166424PR

**Chapter 1: Rate Trends**
# Growing Separation in Associate Rates

Figure 6 displays average rates over time for associates with varying years of experience. Although rates have increased on average for all associates, they have grown the least for first- and second-year associates. Annual growth in associate rates from 2010 to 2015 was[5]:

- First-year associates—0.8%
- Second-year associates—1.5%
- Third-year associates—2.1%
- Mid-level associates, 4 to 7 years—3.4%

Due to these trends, an 8% difference in rates between second-year and fifth-year associates in 2010 is now a 21% difference in 2015.

**Figure 6:** Average Associate Rates by Years of Experience, 2010 to 2015



*n* = first year: 3,005; 3,114; 2,548; 2,071; 1,883; 982; second year: 2,043; 2,,474; 2,262; 1,744; 1,395; 1,044; third year: 1,815; 2,297; 2,462; 2,036; 1,490; 1,091; 4th to 7th: 5,391; 6,979; 7,691; 7,508; 6,645; 4,856; 8th to 12th: 2,299; 2,882; 3,215; 3,260; 3,216; 2,685.

Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

[5]  Annual growth rates referenced are calculated using the compound annual growth rate (CAGR) from 2010 to 2015.

©2017 CEB. All rights reserved. GCR166424PR

# Chapter 2
# Drivers of
# Lawyer Rates



**2016 Real Rate Report**

Chapter 2: Drivers of Lawyer Rates

# Unpacking the Drivers of Lawyer Rates

Lawyer rates are influenced by many factors, some more controllable than others. Many are obvious, such as the years of experience a lawyer has in a practice area or the added complexity that accompanies a highly regulated or technical matter. Other factors, such as the number of lawyers employed at a firm, are less transparent but still influence the hourly rate paid for legal work.

We learned in past *Real Rate Reports* that law firms have a stronger correlation with lawyer rates than any other factor, followed by several large city locations and the experience and role of the lawyer. Legal work in different practice areas, such as regulatory and compliance or M&A, have smaller relationships with higher lawyer rates. Operating in the insurance or automobile industry, or legal work on a real estate matter, correlates with a lower lawyer rate on average. The following figures display the results of our 2016 lawyer rate regression model, which examines how all of these factors impact a lawyer's rate when they occur simultaneously.

The model identifies the relative importance of each of the identified factors displayed in Figure 7 on an individual lawyer's hourly rate. This model has an $R^2$ of 65%, indicating that approximately two-thirds of the variation in a lawyer's rate can be accounted for by this identified set of drivers.

**Figure 7:** Ranking of Statistical Impact of Model Predictors

| | |
|---|---|
| **1. Firm Size** | The most important determinant of a lawyer's hourly rate is the size of the firm producing the work. |
| **2. Law Firm Office Location** | The location of a lawyer's office is the next most important driver of hourly rates. Just how important each lawyer's billing location is to driving hourly rate varies greatly, even among the most costly legal markets. Billing in New York and Washington, DC, has the most predictive power on lawyer rates compared with other cities. Other large legal markets—including Los Angeles, Chicago, San Francisco, San Jose, and Boston—are slightly less important drivers of lawyer rates when compared with New York and DC but have as much explanatory value as a lawyer's partner status. Most other US markets, while still meaningful, are less important drivers of lawyer hourly rates and are more comparable to the impact of client industry. |
| **3. Lawyer Experience** | Although years of experience is a statistically significant predictor of rates for all lawyers, it is an even more important predictor of partner rates. |
| **4. Timekeeper Role** | Even after accounting for the years of experience a lawyer has accrued, whether the lawyer is a partner or associate is the fourth most important predictor of hourly rates. |
| **5. Practice Area** | The statistical importance of individual practice areas varies, but finance, corporate, patents, and mergers and acquisitions work are among the most meaningful. |
| **6. Client Industry** | The industry in which a client company operates follows in importance. |

Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

©2017 CEB. All rights reserved. GCR166424PR

# The Model for Lawyer Rates

Figure 8 displays the model's coefficients, expressed in terms of the dollar impact each factor has on an individual lawyer's hourly rate.

**Figure 8:** Lawyer Rate Model Equation and Coefficients

Firm Size (Number of Lawyers) + Law Firm Office Location + Lawyer Experience + Timekeeper Role + Practice Area + Client Industry − Other Factors = Expected Lawyer Hourly Rate

**Firm Size (Number of Lawyers)**

| | |
|---|---|
| 50 | $201.86 |
| 100 | $237.62 |
| 200 | $273.39 |
| 300 | $294.31 |
| 400 | $309.15 |
| 500 | $320.67 |
| 600 | $330.08 |
| 700 | $338.03 |
| 800 | $344.92 |
| 900 | $351.00 |
| 1,000 | $356.43 |
| 1,250 | $367.95 |
| 1,500 | $377.36 |
| 1,750 | $385.31 |
| 2,000 | $392.20 |

**Law Firm Office Location**

| | |
|---|---|
| New York, NY | $223.12 |
| San Jose, CA | $192.78 |
| Los Angeles, CA | $172.40 |
| Washington, DC | $167.90 |
| San Francisco, CA | $141.10 |
| Boston, MA | $138.72 |
| Houston, TX | $124.15 |
| Chicago, IL | $116.69 |
| San Diego, CA | $94.45 |
| Dallas, TX | $91.97 |
| Austin, TX | $79.18 |
| Philadelphia, PA | $69.54 |
| Sacramento, CA | $69.01 |
| Atlanta, GA | $66.37 |
| Denver, CO | $64.95 |
| Baltimore, MD | $64.35 |
| Minneapolis, MN | $43.92 |
| Trenton, NJ | $39.25 |
| Miami, FL | $35.41 |
| Las Vegas, NV | $28.28 |
| Richmond, VA | $26.34 |
| Cleveland, OH | $19.02 |
| Detroit, MI | $16.68 |
| Pittsburgh, PA | ($18.24) |
| Kansas City, MO | ($22.51) |
| Phoenix, AZ | ($32.04) |
| Oklahoma City, OK | ($39.06) |
| Buffalo, NY | ($40.41) |
| Memphis, TN | ($41.76) |
| Syracuse, NY | ($77.52) |
| Omaha, NE | ($79.30) |

**Lawyer Experience:** $42.48 per 10 Years' Experience

**Timekeeper Role:** $110.72 If Partner

**Client Industry**

| | |
|---|---|
| Personal Household Goods | $42.12 |
| Professional Services | $15.00 |
| Internet and E-Commerce | $10.09 |
| Industrial Goods and Services | ($8.33) |
| Construction and Materials | ($24.71) |
| Automobiles and Parts | ($30.76) |
| Retail | ($38.09) |
| Real Estate | ($41.24) |
| Insurance | ($49.38) |
| Banks | ($61.22) |

**Other Factors:** Adjustment for Other Factors: ($52.22)

**Practice Area**

| | Practice Area Adjustment | Litigation Adjustment |
|---|---|---|
| Antitrust/Competition | $64.89 | ($36.65) |
| Bankruptcy and Collections | ($23.23) | ($14.09) |
| Corporate | $49.54 | ($45.31) |
| Corporate Governance | $117.20 | ($44.39) |
| Environmental | $0.00 | ($38.34) |
| ERISA | $20.27 | $55.69 |
| Finance and Securities | $120.82 | ($80.91) |
| General Liability | $0.00 | ($64.23) |
| Intellectual Property (exc. Patents and Trademarks) | $30.37 | ($30.37) |
| Labor and Employment | ($31.79) | ($12.47) |
| Mergers and Acquisitions | $78.42 | ($78.42) |
| Marketing and Advertising | $46.11 | $20.73 |
| Partnerships and Joint Ventures | $37.65 | $146.83 |
| Patents | $9.06 | $57.22 |
| Real Estate | ($19.66) | ($1.42) |
| Regulatory and Compliance | $14.33 | $16.61 |
| Tax | $27.67 | ($27.67) |
| Trademarks | ($23.38) | $23.38 |

Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

©2017 CEB. All rights reserved. GCR166424PR

**Chapter 2: Drivers of Lawyer Rates**
# The Model at Work

As shown in Figure 9, the model from Figure 8 can be used to estimate a lawyer's hourly rate based on six factors: 1) law firm size, 2) location, 3) partner status, 4) years of experience, 5) practice area, and 6) client industry.

Figure 9 provides hypothetical examples of different attorney rates based on the statistical model. Lawyer C, a partner in a large legal market, bills at a higher rate than Lawyers A and B. Lawyer B's law firm's size (with more than 1,000 lawyers) and location in Atlanta has a relatively high billing rate despite having only two years of experience.

**Figure 9:** Sample Calculations Based on the Lawyer Rate Model for Hypothetical Lawyers

| Lawyer A | | Lawyer B | | Lawyer C | |
|---|---|---|---|---|---|
| Fifth-Year Associate | | Second-Year Associate | | Partner | |
| **Firm Size** | | **Firm Size** | | **Firm Size** | |
| 325 | $298 | 1,150 | $364 | 830 | $347 |
| **Region** | | **Region** | | **Region** | |
| Los Angeles, CA | $172 | Atlanta, GA | $66 | Chicago, IL | $117 |
| **Experience** | | **Experience** | | **Experience** | |
| 5 Years | $21 | 2 Years | $8 | 23 Years | $98 |
| **Role** | | **Role** | | **Role** | |
| Associate | $— | Associate | $— | Partner | $111 |
| **Practice Area** | | **Practice Area** | | **Practice Area** | |
| Regulatory and Compliance | $14 | Tax | $28 | Patents | $9 |
| Non-Litigation | $— | Non-Litigation | $— | Litigation | $57 |
| **Industry** | | **Industry** | | **Industry** | |
| Internet and E-Commerce | $10 | Retail | $(38) | Industrial Goods and Services | $(8) |
| **Other Factor** | $(52) | **Other Factor** | $(52) | **Other Factor** | $(52) |
| **Estimated Rate** | **$463** | **Estimated Rate** | **$376** | **Estimated Rate** | **$679** |

Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

©2017 CEB. All rights reserved. GCR166424PR

Chapter 3

# Managing Billing Behaviors



**2016 Real Rate Report**

**Chapter 3: Managing Billing Behaviors**

# Introducing Law Firm Billing Behaviors

The LegalVIEW data that generates the *Real Rate Report* contains invoice entry information provided by each law firm biller. Each *Real Rate Report* publication since 2010 includes segmented information from this dataset. However, those same data can also provide insights into billing practices of individual and groups of timekeepers. This chapter will address some of those billing practices.

Over the years, ELM Solutions developed metrics for corporate Legal departments to track billing behaviors of lawyers and paralegals. ELM Solutions collects these metrics in its Actionable Insight Billing Tendencies Reports, which are run against a corporate Legal department's invoice data. Those metrics help managers better understand and manage costs by identifying particular timekeepers who generate unusual billing entries that, on the surface, appear inappropriate. The analyses also help corporate Legal departments identify law firms with the largest numbers of timekeepers engaging in questionable practices and, in turn, use that information to address and correct potentially harmful law firm relationships.

As a continuation of this work, for the *2016 Real Rate Report*, we were interested in measuring billing tendencies across the total dataset. The aggregated metrics provide surprising insights into how law firm demographics impact billing practices.

We examined the following billing practices:

- **Fractional Billing—**Billing large numbers of 0.1-hour (or six-minute) entries
- **Block Billing—**Grouping together multiple activities onto a single billing entry
- **Duplicate Billing—**Using the same work description across multiple invoice entries
- **Low-Value Billing—**Billing small blocks of time (e.g., one hour or less) on many different matters
- **Late Billing—**Submitting invoices for payment after the agreed-on number of days (e.g., 60, 90) from when the work was performed
- **Upbilling—**Rounding up hours billed to the nearest hour or half hour
- **Heavy Billing—**Billing heavily (e.g., 10 hours or more in one day) either on the same or across different matters

**Figure 10:** Percentage of Lawyers Exhibiting Each Billing Behavior, 2015[a]



*n* = 26,844 lawyers.

Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

[a]  All analyses exclude lawyers with 10 hours or less billed in 2015.

[b]  For the purposes of this analysis, late billing is defined as invoices submitted for payment at least 60 days after the underlying work was performed.

©2017 CEB. All rights reserved. GCR166424PR                                              cebglobal.com

**Chapter 3: Managing Billing Behaviors**

# Introducing Law Firm Billing Behaviors (Continued)

It is important to note that an occasional, unusual invoice entry is never conclusive evidence of inefficient, costly, or inaccurate billing. For example, Figure 10 illustrates how likely a lawyer in the dataset was to exhibit these billing behaviors at least once. However, it does not indicate how often a lawyer exhibits one or more of these behaviors.

In its Actionable Insight Reports run for corporate Legal department clients, ELM Solutions runs these metrics in tandem both across and within law firms. In these reviews, it is common to see a timekeeper demonstrate multiple questionable billing practices. For example, a timekeeper who is a high upbiller may also be a high block biller, or one who is a high fractional biller may also have many duplicate entry descriptions. Sometimes entire firms can exhibit these tendencies. When finding many examples of these billing behaviors, managing lawyers should determine whether the practices are appropriate. When there are instances of these behaviors from a single law firm (or collection of its timekeepers), there may be a culture of undisciplined billing that can literally cost hundreds of thousands of dollars in avoidable fees.

The rest of this chapter will detail each of these billing behaviors individually in the order presented in Figure 10, from the most- to least-commonly exhibited by lawyers in 2015. The analyses will help corporate Legal departments and law firms benchmark the frequency with which these behaviors occur and size their potential impact. A better understanding of how and when these billing behaviors occur supports better conversations and relationships between corporate Legal departments and their law firms.

©2017 CEB. All rights reserved. GCR166424PR

Case 3:16-cv-03581-WHA    Document 102-3    Filed 10/26/17    Page 58 of 100

Chapter 3: Managing Billing Behaviors

# Fractional Billing

Fractional billing is the practice of billing for work at the minimum fraction of an hour, which in most cases is 0.1 hours (or six minutes). It is of course reasonable to expect some of these entries, but there are always some individuals who bill an extraordinary number of them. Typically, these are for e-mails or phone calls that take a minute or two but are still billed for six. Although any single fractional bill will have minimal impact, when done in large numbers by expensive lawyers, this practice can be costly.

**Highlights and Implications**

Fifty-one percent of lawyers billed at least one six-minute invoice entry in 2015. This means 49% of lawyers did not bill any. This lack of any fractional invoicing suggests tasks are being lumped together in billing, limiting an in-house lawyer's ability to accurately track legal work.

Approximately 7% of all lawyer invoice entries were six-minute entries. With 49% of lawyers billing no fractional entries, this means that some lawyers were billing many.

Addressing excessive fractional billing allows corporate Legal departments opportunities to:

- **Reduce fees—**One out of four corporate Legal departments paid for $270,000 in fees on fractional invoice entries.
- **Increase billing discipline—**Tracking and communicating six-minute invoice entries signals that these small details are important and require more firm attention

Figure 11 shows the prevalence of fractional billing in 2015. Roughly 54% of partners and 48% of associates had at least one 0.1-hour billing entry. Also, 8.4% of all partner invoice entries and 6.1% of all associate invoice entries were for 0.1 hours.

When combining partners and associates, 51% of all lawyers billed at least one six-minute invoice entry. That means that nearly 49% of lawyers did not bill any. That seems exceptionally high, raising the probability that lawyers are lumping 0.1-hour work tasks into longer time submissions and clouding work activity tracking.

**Figure 11:** Proportion of Fractional Billing by Timekeeper Role and Experience[a]



Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.
[a] Excludes timekeepers that billed less than 10 hours in 2015.

©2017 CEB. All rights reserved. GCR166424PR

Chapter 3: Managing Billing Behaviors

# Fractional Billing (Continued)

Figure 12 displays the proportion of lawyers who billed any (and many) fractional invoice entries, as well as the proportion of total invoice entries that were fractional bills, broken out by law firm size. It is notable how each of the three percentage metrics displayed differ in smaller and larger firms. This trend suggests variation in the nature of work that larger versus smaller firms do, as well as a probable tendency for larger firms to lump tasks together and round time entries.

**Figure 12:** Median Proportion of Fractional Billing per Law Firm, by Firm Size[a]



Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

[a] Excludes lawyers that billed less than 10 hours in 2015 and excludes law firms with fewer than three lawyers billing in 2015.

[b] In this analysis, "significant" means a greater number of fractional entries were billed by a timekeeper than the top-quartile number that occurred at similar sized law firms.

The amount of fractional billing that clients ultimately need to manage is variable. Figure 13 displays how the proportion of fractional invoice entries and the typical fees associated with those charges differs at 25th, 50th, and 75th percentile clients. A 75th percentile Legal department had more than 50% of their outside counsel billing at least one fractional entry, which amounted to nearly $270,000 in fees in 2015.

**Figure 13:** Fractional Billing Statistics per Client[a], for 25th, 50th, and 75th Percentile Clients[a]



*n* = 78 corporate Legal departments.

Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

[a] Excludes lawyers with less than 10 hours billed in 2015, law firms with bills from fewer than three lawyers, and Legal departments that used fewer than 10 law firms in 2015.

©2017 CEB. All rights reserved.  GCR166424PR

Chapter 3: Managing Billing Behaviors

# Block Billing

Block billing is the practice of grouping together multiple tasks into a single invoice line entry. It can lead to a number of questions—all of which create uncertainty in the minds of in-house lawyers about whether their matters are being invoiced appropriately. For example, "If this one invoice entry contains multiple tasks, how do I know how much time was spent on each individual task? How do I know if the same rate should have been applied to each task? How do I budget for these tasks going forward?" Cleaner invoice entries that address individual tasks provide corporate clients with more visibility into counsel's work and added confidence in ongoing budgeting.

In short, block billing compromises data integrity and can hide inappropriate charges. It negates many of the benefits corporate Legal departments can receive from well segmented and described activity by:

- Making it difficult to determine if an inappropriate amount of time was spent on any of the combined tasks;
- Preventing a determination of whether a less expensive resource could have performed some of the grouped tasks;
- Informing the ability to discretely measure the time required per grouped task, reducing the ability to leverage the information for future budgeting and making it difficult to use or develop alternative fee arrangements;
- Compromising the accuracy of the Uniform Task-Based Management System (UTBMS) information, by assigning a single task and single activity code to work that should be tagged with multiple different codes; and
- Compromising the ability to generate inter- and intra-office comparative metrics for similar tasks as defined by discrete UTBMS codes.

**Highlights and Implications**
Block billing is pervasive. Its use reduces the ability to evaluate the reasonableness and necessity of the fees reflected in the invoice entry.

- Approximately 5% of all lawyer invoice entries were block billed.
- Block billing was common at most law firms, but its frequency varied across firms of different sizes.
- Sixteen percent of large law firms block billed heavily in 2015 compared with 12% of smaller law firms.
- The typical client received block billed invoice entries from 38% of the lawyers they worked with in 2015.
- The median corporate Legal department was billed for more than $1.4 million of block entries with the top-quartile department being billed for at least $3.3 million.

©2017 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

**Chapter 3: Managing Billing Behaviors**

# Block Billing (Continued)

Forty percent of lawyers (both partners and associates) had at least one block billed invoice entry. Fifteen percent could be considered heavy block billers—billing 10% or more of their total invoice entries in blocks. Nearly 5% of all lawyer billing entries were block billed. Figure 14 displays the prevalence of block billing for different timekeeper roles.

**Figure 14:** Average Frequency of Block Billing by Role[a]



Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.
[a]  Excludes lawyers that billed less than 10 hours in 2015.
[b]  Timekeepers billing 10% or more of invoice entries in blocks are considered "heavy block billers."

©2017 CEB. All rights reserved.   GCR166424PR

wkelmsolutions.com

cebglobal.com

**Chapter 3: Managing Billing Behaviors**
# Block Billing (Continued)

Block billing is common at most law firms, but its frequency varies across firms of different sizes. Ninety-four percent of law firms with more than 500 lawyers had at least one lawyer block billing in 2015, compared with only 68% of smaller firms. Larger law firms were also more likely to block bill heavily (where "heavily" is defined as 10% or more of all invoice entries billed in blocks). Sixteen percent of larger law firms block billed "heavily" in 2015 compared with 12% of smaller law firms.

Figure 15 highlights how block billing occurs differently at different law firms. Among heavy block billing firms, partners do the most block billing at smaller law firms while associates do the most at larger firms.

**Figure 15:** Percentage of Block Billed Invoice Entries by Role, per Heavy Block Billing Law Firm[a]



n = 232 firms.
Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.
[a] Excludes lawyers that billed less than 10 hours in 2015.

n = 15 firms.

©2017 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com
cebglobal.com

**Chapter 3: Managing Billing Behaviors**

# Block Billing (Continued)

As Figure 16 shows, the typical corporate Legal department received block billed invoice entries from 38.0% of the lawyers they worked with in 2015, amounting to roughly 4% of their total invoice entries.

Of course, the practice of block billing itself does not conclusively indicate unnecessary legal fees. The law firms did, after all, perform the work described in the block billed entries. However, Figure 16 also shows the legal fees that the typical corporate Legal department paid for in block billed invoice entries in 2015. The median block billed amount per department was more than $1.4 million, suggesting that a sizeable amount of legal budgets was spent on legal work that wasn't described as clearly as it should have been.

**Figure 16:** Block Billing Statistics per Client, for 25th, 50th, and 75th Percentile Clients[a]



*n* = 78 corporate Legal departments.

Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

[a] Excludes lawyers with less than 10 hours billed in 2015, law firms with bills from fewer than three lawyers, and Legal departments that used fewer than 10 law firms in 2015.

©2017 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

Chapter 3: Managing Billing Behaviors

# Duplicate Billing

Duplicate billing is the practice of using the same invoice entry narrative multiple times for different billing entries. High levels of duplicate billing make it difficult for corporate clients to differentiate the work performed across the multiple identical invoice entries. And when different amounts of time are billed for identically described invoice entries, it is nearly impossible to determine the reasonableness of the time spent on described tasks.

> **Highlights and Implications**
> - High levels of duplicate invoice entries compromise invoice review by corporate matter management for significant billed fees.
> - For those corporate clients with the most duplicate invoices, median related billed fees were over $1,000,000, representing more than 25% of their invoice entries.
> - The percentage of total entries billed as duplicates decreased as timekeeper roles increased in seniority.

Figures 17 and 18 display how frequently duplicate billing occurred in 2015. Slightly more than 16% of partner invoice entries had duplicate descriptions. Duplicate billing was more likely to come from associates and paralegals, billing 20.4% and 31.4% of invoice entries as duplicates, respectively.

Figure 18 shows that most duplicate invoice entries occur five or fewer times. Although rare, when large numbers of invoice entries—of 10, 50, or more—do happen, they are most likely to come from paralegals and more junior associates.

**Figure 17:** Percentage of Invoice Entries Billed as Duplicates by Role, 2015[a]



n = 4,645,678 invoice entries from 12,434 partners, 14,412 associates, and 4,871 paralegals.
Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.
[a] Excludes lawyers that billed less than 10 hours in 2015.

**Figure 18:** Percentage of Invoice Entries Billed as Duplicates by Frequency and Role, 2015[a]



n = 4,645,678 invoice entries from 12,434 partners, 14,412 associates, and 4,871 paralegals.
Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.
[a] Excludes lawyers that billed less than 10 hours in 2015.

©2017 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com
cebglobal.com

Chapter 3: Managing Billing Behaviors

# Duplicate Billing (Continued)

Figure 19 displays the percentage of lawyers and paralegals with any duplicate entries, as well as those with many. Sixty percent of lawyers and nearly 70% of paralegals invoiced at least one duplicate description in 2015.

**Figure 19:** Percentage of Timekeepers Duplicate Billing, 2015[a]



Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

[a] Excludes timekeepers with less than 10 total hours billed in 2015.

©2017 CEB. All rights reserved.   GCR166424PR

wkelmsolutions.com

cebglobal.com

Chapter 3: Managing Billing Behaviors
# Duplicate Billing (Continued)

The typical corporate Legal department received invoices with 15% of their entries billed being duplicate, averaging nearly $500,000 in fees paid in 2015. Figure 20 shows how the ratio of duplicate invoice entries varies across companies. Top-quartile duplicate billing companies—those companies with the largest proportion of duplicate invoice entries—were more likely to receive invoice entries with 10 or more duplicate descriptions and commonly received 25% of their total entries as duplicates. That accounted for more than $3 million or more in fees paid for duplicate entries. When contrasted with bottom-quartile duplicate companies with less than 10% of total entries billed as duplicates, it is clear that some corporate Legal departments are managing this behavior more actively.

**Figure 20:** Variation in Duplicate Invoice Entries Across Corporate Clients[a]



|  | Bottom-Quartile Clients (n = 21.) | Middle 50th Percentile Clients (n = 40.) | Top-Quartile Clients (n = 20.) |
|---|---|---|---|
| Median Fees Paid on Frequent Duplicate Invoice Entries[b] | $79,111 | $549,226 | $1,061,068 |
| Median Fees Paid on Any Duplicate Invoice Entries | $1,116,970 | $2,681,137 | $3,781,945 |

Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

[a] Excludes corporate Legal departments billed by fewer than three lawyers or billed less than 30 hours in 2015.

[b] Frequent duplicate invoice entries refer to invoice entries that were billed more than 10 times by the same timekeeper.

©2017 CEB. All rights reserved.  GCR166424PR

wkelmsolutions.com

cebglobal.com

Chapter 3: Managing Billing Behaviors
# Low-Value Billing

Low-value billing is the practice of billing small amounts of time on many different matters. It can indicate timekeepers who are adding hours while not being sufficiently involved with the billed matters to add commensurate value for the time billed. For the purposes of this analysis, we set an hour or less per matter as the threshold to indicate low-value billing.

**Highlights and Implications**
- Thirty-six percent of partners and 27% of associates billed at least 25% of their matters for one hour or less.
- Partners were consistently more likely to bill for less than one hour on a matter than associates.
- A smaller percentage of partners and associates are low-value billing at larger firms with more than 500 lawyers.
- Despite steadily decreasing with firm size from 33% to 20%, the percentage of paralegals low billing on matters stays above lawyers for all firm sizes.

As with all of the previous billing behaviors, it is not uncommon for corporate Legal departments to occasionally receive invoices where low-value billing occasionally occurs. Figure 21 shows that 76% of partners and 68% of associates billed on matters for an hour of work or less. The more important measures are the second and third bars, showing that 36% of partners and 27% of associates billed an hour or less on at least one-quarter of the matters they worked on in 2015.

**Figure 21:** Percentage of Timekeepers Low-Value Billing, 2015[a]



Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.
[a] Excludes timekeepers that billed less than 10 hours in 2015 and timekeepers that billed on fewer than five matters.

©2017 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com
cebglobal.com

Chapter 3: Managing Billing Behaviors

# Low-Value Billing (Continued)

The likelihood that different timekeepers are low-value billers varies with law firm size. Figure 22 displays how the percentage of matters with low-value bills changes across firm sizes and timekeeper roles. The percentage of matters on which paralegals low-value billed is 32.9% at small law firms. That proportion gradually decreases as law firms get larger, with paralegals at the largest law firms having 19.6% low-value matters. Partners at the smallest firms low-value billed on 18.2% of matters compared with 11.6% of matters for partners at the largest law firms. There is less variation in low-value billing for associates among different firm sizes.

**Figure 22:** Percentage of Matters with Low-Value Billing by Role, 2015[a]



Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

[a] Excludes timekeepers that billed less than 10 hours and matters that had fewer than 10 total hours billed in 2015.

©2017 CEB. All rights reserved.   GCR166424PR

wkelmsolutions.com

cebglobal.com

Fractional Billing · Blockbilling · Duplicate Billing · Law Under Billing · Late Billing · Upgrade Billing · Heavy Billing

Case 3:16-cv-03581-WHA    Document 102-3    Filed 10/26/17    Page 69 of 100

Chapter 3: Managing Billing Behaviors

# Late Billing

Late billing is the practice of submitting invoice entries or entire invoices for payment later than the agreed-on number of days (e.g., 60, 90) from which invoices and invoice entries were to have been submitted. The number of days after legal work is performed that corporate clients prefer to receive their invoices can vary, with standard billing guidelines requiring submission within 30, 60, or 90 days.

It is well known that some timekeepers and law firms have lax discipline surrounding the capture of time and submission of billing entries. That lack of discipline can lead to invoice entries based on estimations of time spent on tasks rather than actual time spent. Lax discipline in time entry also leads to block billing, excess billing, and generalized descriptions of the work performed.

---

**Highlights and Implications**

Timely billing supports accurate budget management, meaningful invoice review, and accurate cost projection.

- Almost 3% of invoices are not received by the corporate Legal departments within 60 days of the law firms' invoice dates (i.e., the date entered by the law firm on the invoice).
- Invoices containing "Non-Litigation Finance and Securities" or "Mergers and Acquisitions" work are most likely to be submitted later than 60 days from the invoice date.
- Late billing can be analyzed for an invoice or across individual invoice entries, depending on whether you are examining law firm practices or timekeeper practices.
- Many corporate Legal departments penalize late invoice submissions by discounting the billed amount by 10% to 50% or by disallowing the fees for such entries entirely.

---

Figure 23 displays how likely it is for partners, associates, and paralegals to show up on invoices that were submitted late. For example, assuming a 60-day window, 28.4% of partners, 21.5% of associates, and 24.1% of paralegals billed time within at least one invoice submitted late (on 2015 matters).

**Figure 23:** Percentage of Timekeepers Who Billed on Invoices Submitted Late, 2015[a]



Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

[a] Excludes timekeepers with less than 10 hours billed in 2015.

©2017 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com
cebglobal.com

Chapter 3: Managing Billing Behaviors

# Late Billing (Continued)

Despite the somewhat high proportion of lawyers who have entries billed on a late invoice, the frequency that invoices themselves are submitted late is actually quite small. Figure 24 details the distribution of invoices submitted for payment across different time periods from the law firms' invoice dates. The majority of invoices (70.5%) are received for payment within one week, while only 2.4% of invoices were still outstanding 60 days after the law firms' invoice dates.

**Figure 24:** Percentage of Invoices Submitted for Payment by Time from Invoice Date, 2015[a]



| | Median Invoice | | | | |
|---|---|---|---|---|---|
| Hours | 1.7 | 1.4 | 1.8 | 3.8 | 4.1 |
| Invoice Entries | 4 | 3 | 3 | 5 | 6 |

*n* = 418,457 invoices.

Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

[a] Excludes timekeepers with less than 10 hours billed in 2015.

©2017 CEB. All rights reserved. GCR166424PR

**Chapter 3: Managing Billing Behaviors**

# Late Billing (Continued)

Law firm invoices containing complex legal work most commonly performed at larger law firms were more likely to be submitted late. Figure 25 displays the top three, middle two, and bottom three practice areas ranked by likelihood of late invoices. Invoices containing either "Non-Litigation Marketing and Advertising" or "Non-Litigation Finance and Securities" work are most likely to be submitted later than 60 days, at 9% and 7% of invoices, respectively.

The fact that these invoices are dated well before the dates actually submitted suggests that law firms attempt to comply with corporate Legal departments' billing requirements but fail to do so. The more complex the matter, the more likely the firms will fail to timely submit invoices. These invoices should be carefully examined, as the most likely explanation for the delay in sending out timely invoices is that the timekeepers are assembling aging work notes or are reconstructing time.

**Figure 25:** Percentage of Invoices Submitted for Payment for Different Practice Areas, 2015[a]



*n* = 1,151 to 112,427 invoices.

Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

[a] Excludes timekeepers with less than 10 hours billed in 2015.

©2017 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

Fractional Billing    Block Billing    Duplicative Billing    Law Inflation Billing    Intern Billing    Upbilling    Heavy Billing

Chapter 3: Managing Billing Behaviors

# Upbilling

Upbilling is the practice of rounding up the time spent on a task to the nearest hour or half hour, resulting in excess cost to the client.

**Highlights and Implications**

- Conservatively, upbilling cost the typical corporate client between $24,000 and $189,000 in 2015.
- Regardless of whether a law firm is a light, moderate, or heavy upbilling law firm, timekeepers with more seniority tend to upbill more.
- Law firms that upbilled heavily had a percentage of upbilled invoice entries from partners nearly twice as high as that from law firms with less frequent upbilling. This has the potential to make upbilling even more costly after accounting for both the higher volume of invoices and the higher partner rates.

Figure 26 shows how the ratio of upbilled invoice entries differs by role at different law firms. When upbilled invoice entries were less common at law firms, the ratio of those upbilled entries were fairly evenly split across partners, associates, and paralegals. As the percentage of total invoice entries that were upbilled increased at law firms, the proportion of those upbilled entries from partners rose and the proportion from paralegals declined. This trend potentially makes frequent upbilling more costly, not just because a higher number of invoice entries were rounded up, but also because the hourly rate for those upbilled hours was larger as well.

**Figure 26:** Ratio of Upbilled Invoice Entries by Role, per Law Firm[a]



Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

[a] This analysis excludes lawyers that billed less than 10 hours in 2015 and excludes law firms that had 2015 bills from fewer than three lawyers.

[b] Light upbilling firms include the bottom 50% of upbilling firms (between 0.1% and 1.8% of invoice entries were upbilled); moderate upbilling firms include the third quartile of firms (between 1.8% and 5.6% of invoice entries were upbilled); heavy upbilling firms include the top quartile of firms (more than 5.6% of invoice entries were upbilled).

©2017 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

Chapter 3: Managing Billing Behaviors

# Upbilling (Continued)

Assuming that the typical lawyer bills 2,000 hours per year, the median amount of fees from upbilling alone for partners is $29,330 per year. The median amount for upbilling associates is $11,289. Figure 27 displays the distribution of total fees billed per timekeeper from upbilling activity alone in 2015.

Figure 28 estimates what the typical corporate Legal department might have paid for upbilled billing entries in 2015.

**Figure 27:** Estimated Total Fees Invoiced on Upbilled Invoice Entries, per Lawyer[a]

**Figure 28:** Estimated Total Fees Paid in Upbilled Invoice Entries, per Client



Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

[a] Assumes timekeepers billed 2,000 hours in a calendar year.

Note: Both figures exclude lawyers with less than 10 hours billed in 2015. Figure 28 also excludes clients with bills from fewer than 10 law firms.

©2017 CEB. All rights reserved. GCR166424PR

Chapter 3: Managing Billing Behaviors

# Heavy Billing

Heavy billing is the practice of billing 10 or more hours in a one-day period, whether on the same or across different matters. The concern with heavy billing is that lawyers who frequently bill 10 hours or more in a day—especially if they bill successive 10-plus hour days—will eventually tax the quality of their work.

**Highlights and Implications**

- Seventy-seven percent of partners and 71% of associates did not bill any 10-hour days in 2015.
- Roughly, 3.6% partners and 7.9% of associates billed a 10-hour (or longer) day on at least 10% of days they worked in 2015.
- For these significant heavy-billing partners, about 22.4% of days billed and 44.5% of total hours were billed on these 10-hour days.
- Heavy billing is most common in insurance defense and general liability litigation matters and least common on patents work.

Figure 29 displays how likely partners and associates are to be heavy billers and how frequently. Nearly 23% of partners and 29% of associates billed more than 10 hours in a day on at least one of their matters in 2015. However, only 3.6% of partners and 7.9% of associates billed 10 or more hours on 10% or more of their total days billed.

**Figure 29:** Percentage of Lawyers Heavy Billing, 2015[a]



| | % of Partners with Any Heavy Billing | % of Partners Heavy Billing More Than 10% of Days | % of Associates with Any Heavy Billing | % of Associates Heavy Billing More Than 10% of Days |
|---|---|---|---|---|
| % of Total Days on Heavy Bills: | 5.9% | 22.4% | 9.6% | 24.9% |
| % of Total Hours on Heavy Bills: | 17.2% | 44.5% | 21.2% | 44.1% |

*n* = 12,434 partners; 2,910 heavy partners; 443 significantly heavy partners; 14,410 associates; 4,156 heavy associates; 1,143 significantly heavy associates.

Source: Wolters Kluwer's ELM Solutions, Inc.; CEB analysis.

[a] Excludes timekeepers with less than 10 hours billed in 2015.

©2017 CEB. All rights reserved. GCR166424PR



# 2016 Real Rate Report®

## Lawyer Rate Tables





# Appendix A
# Summary Data Tables



**2016 Real Rate Report**

# Appendix A Table of Contents

**Section I: High-Level Data Cuts**
- Partners, Associates, and Paralegals
- Partners, Associates, and Paralegals by Practice Area and Matter Type
- Partners and Associates by City
- Partners and Associates by City and Matter Type
- Partners by City and Years of Experience
- Associates by City and Years of Experience
- Partners and Associates by Firm Size and Matter Type

**Section II: Industry Analysis**
- Partners, Associates, and Paralegals by Industry Group
- Partners and Associates by Industry Group and Matter Type
- Partners and Associates by Industry Group, Division, and Matter Type
- Basic Materials and Utilities
- Consumer Goods
- Consumer Services
- Financials
- Health Care
- Industrials
- Professional Services
- Technology and Telecommunications

**Section III: Practice Area Analysis**
- Bankruptcy and Collections
- Commercial
- Corporate: Mergers, Acquisitions, and Divestitures
- Corporate: Regulatory and Compliance
- Corporate: Other
- Environmental
- Finance and Securities
- General Liability (Litigation Only)
- Insurance Defense (Litigation Only)
- Intellectual Property: Patents
- Intellectual Property: Trademarks
- Intellectual Property: Other
- Labor and Employment
- Real Estate

**Section IV: In-Depth Analysis for Select US Cities**
- Baltimore, MD
- Boston, MA
- Chicago, IL
- Houston, TX
- Los Angeles, CA
- New York, NY
- Philadelphia, PA
- San Francisco, CA
- San Jose, CA
- Washington, DC

**Section V: Summary Reference Cards for Select US Cities**

**Section VI: International Analysis**

**Section VII: Matter Staffing Analysis**

©2016 CEB. All rights reserved. GCR166424PR

# Section I: High-Level Data Cuts

## Partners, Associates, and Paralegals

| 2015—Real Rates | | | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|
| Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
| Partner | 20,298 | $330.00 | $500.00 | $730.00 | $551.15 | $521.00 | $506.75 |
| Associate | 21,308 | $243.00 | $344.00 | $495.32 | $386.26 | $365.08 | $354.78 |
| Paralegal | 9,846 | $113.99 | $165.45 | $230.00 | $178.42 | $169.91 | $166.75 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# Section I: **High-Level Data Cuts**

## Detailed Practice Areas
By Matter Type

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
|---|---|---|---|---|---|---|---|---|---|
| **2015—Real Rates for Partners, Associates, and Paralegals** | | | | | | | **Trend Analysis (Mean)** | | |
| **Bankruptcy and Collections** | Litigation | Partner | 509 | $275.00 | $349.60 | $458.60 | $387.86 | $398.86 | $401.64 |
| | | Associate | 426 | $200.00 | $250.00 | $310.00 | $278.21 | $274.30 | $278.84 |
| | | Paralegal | 234 | $112.50 | $150.00 | $188.00 | $156.14 | $161.37 | $152.20 |
| | Non-Litigation | Partner | 365 | $294.45 | $385.00 | $500.00 | $431.36 | $420.93 | $426.29 |
| | | Associate | 258 | $200.00 | $250.00 | $350.00 | $318.39 | $323.65 | $296.52 |
| | | Paralegal | 187 | $110.00 | $152.00 | $195.00 | $161.54 | $159.78 | $164.91 |
| **Commercial** | Litigation | Partner | 1,490 | $350.00 | $495.00 | $675.00 | $524.59 | $500.87 | $480.44 |
| | | Associate | 1,196 | $243.51 | $320.00 | $440.89 | $351.57 | $338.18 | $323.88 |
| | | Paralegal | 643 | $125.00 | $177.00 | $225.00 | $181.79 | $176.78 | $166.91 |
| | Non-Litigation | Partner | 1,312 | $390.00 | $524.53 | $685.00 | $554.36 | $551.41 | $551.00 |
| | | Associate | 1,112 | $260.00 | $325.00 | $455.02 | $373.86 | $367.15 | $365.35 |
| | | Paralegal | 328 | $114.00 | $165.00 | $225.00 | $178.80 | $181.55 | $190.82 |
| **Corporate: Antitrust and Competition** | Litigation | Partner | 163 | $494.10 | $650.00 | $835.00 | $670.41 | $673.53 | $659.48 |
| | | Associate | 201 | $340.00 | $429.25 | $525.00 | $442.99 | $415.25 | $389.95 |
| | | Paralegal | 132 | $195.00 | $216.00 | $247.00 | $219.38 | $216.26 | $206.35 |
| | Non-Litigation | Partner | 125 | $620.44 | $755.00 | $921.33 | $789.08 | $797.36 | $751.04 |
| | | Associate | 163 | $371.00 | $472.00 | $627.41 | $502.81 | $468.97 | $424.14 |
| | | Paralegal | 50 | $188.20 | $235.00 | $290.00 | $238.84 | $215.89 | $218.45 |
| **Corporate: Governance** | Litigation | Partner | 31 | $693.00 | $850.00 | $1,036.00 | $859.91 | $795.18 | $745.69 |
| | | Associate | 29 | $375.00 | $540.00 | $704.00 | $543.03 | $529.52 | $512.23 |
| | | Paralegal | 23 | $235.00 | $250.00 | $300.00 | $262.78 | $235.50 | $210.57 |
| | Non-Litigation | Partner | 208 | $660.50 | $900.00 | $1,153.85 | $892.71 | $788.36 | $764.82 |
| | | Associate | 179 | $375.00 | $502.43 | $660.00 | $513.06 | $462.37 | $453.35 |
| | | Paralegal | 68 | $190.00 | $250.00 | $295.00 | $245.19 | $233.66 | $231.87 |
| **Corporate: Mergers, Acquisitions, and Divestitures** | Litigation | Partner | 30 | $385.00 | $482.50 | $625.00 | $534.96 | $613.67 | $617.64 |
| | | Associate | 12 | $287.50 | $350.00 | $542.50 | $400.83 | $404.32 | $361.60 |
| | | Paralegal | n/a | n/a | n/a | n/a | n/a | $191.88 | $214.59 |
| | Non-Litigation | Partner | 1,354 | $580.00 | $795.00 | $1,025.00 | $796.96 | $734.99 | $738.23 |
| | | Associate | 1,912 | $365.00 | $491.75 | $675.00 | $515.51 | $469.81 | $444.37 |
| | | Paralegal | 584 | $175.00 | $235.00 | $292.00 | $234.83 | $230.95 | $231.37 |
| **Corporate: Partnerships and Joint Ventures** | Litigation | Partner | 10 | $300.00 | $635.50 | $1,235.00 | $707.50 | $629.81 | $549.46 |
| | | Associate | 9 | $512.50 | $657.90 | $833.45 | $604.54 | $469.94 | $360.88 |
| | | Paralegal | 36 | $155.00 | $270.00 | $350.00 | $252.70 | $245.82 | $234.25 |
| | Non-Litigation | Partner | 68 | $702.50 | $888.04 | $1,036.00 | $859.48 | $727.16 | $755.98 |
| | | Associate | 98 | $424.00 | $508.00 | $704.00 | $541.24 | $518.78 | $485.02 |
| | | Paralegal | 34 | $180.00 | $248.00 | $308.00 | $245.89 | $241.81 | $223.43 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# Section I: High-Level Data Cuts

## Detailed Practice Areas
By Matter Type

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | **2015—Real Rates for Partners, Associates, and Paralegals** | **Trend Analysis (Mean)** | |
| Corporate: Regulatory and Compliance | Litigation | Partner | 718 | $465.00 | $644.84 | $839.66 | $662.43 | $636.13 | $641.26 |
| | | Associate | 671 | $315.00 | $405.00 | $549.88 | $428.68 | $432.40 | $416.83 |
| | | Paralegal | 402 | $165.00 | $215.00 | $280.00 | $223.93 | $218.89 | $206.94 |
| | Non-Litigation | Partner | 1,628 | $430.00 | $595.00 | $765.00 | $622.52 | $590.80 | $579.00 |
| | | Associate | 1,377 | $300.00 | $395.00 | $521.32 | $423.68 | $391.40 | $381.82 |
| | | Paralegal | 485 | $150.00 | $195.00 | $255.00 | $206.86 | $190.13 | $190.99 |
| Corporate: Tax | Litigation | Partner | 117 | $400.00 | $555.00 | $772.00 | $621.66 | $572.26 | $587.38 |
| | | Associate | 116 | $252.00 | $340.00 | $495.00 | $393.54 | $421.75 | $375.39 |
| | | Paralegal | 123 | $150.00 | $205.00 | $330.00 | $234.55 | $210.49 | $188.62 |
| | Non-Litigation | Partner | 395 | $527.68 | $701.30 | $925.00 | $746.07 | $728.91 | $702.04 |
| | | Associate | 311 | $360.00 | $490.00 | $595.00 | $492.42 | $468.98 | $438.56 |
| | | Paralegal | 63 | $146.39 | $200.00 | $280.00 | $205.95 | $208.98 | $217.80 |
| Corporate: Other | Litigation | Partner | 2,062 | $365.00 | $544.72 | $725.00 | $562.23 | $529.89 | $527.18 |
| | | Associate | 1,942 | $250.00 | $350.00 | $467.00 | $371.38 | $340.45 | $343.36 |
| | | Paralegal | 951 | $135.00 | $185.00 | $239.00 | $189.62 | $173.23 | $174.23 |
| | Non-Litigation | Partner | 2,740 | $500.00 | $675.87 | $875.00 | $698.40 | $658.32 | $641.39 |
| | | Associate | 2,706 | $300.00 | $421.19 | $572.00 | $445.03 | $422.17 | $418.89 |
| | | Paralegal | 911 | $158.00 | $210.00 | $265.67 | $215.54 | $204.66 | $198.37 |
| Environmental | Litigation | Partner | 181 | $320.67 | $450.00 | $585.00 | $462.52 | $446.51 | $444.32 |
| | | Associate | 143 | $175.00 | $245.00 | $335.00 | $262.80 | $244.87 | $303.60 |
| | | Paralegal | 72 | $85.00 | $117.50 | $192.00 | $145.93 | $153.64 | $151.77 |
| | Non-Litigation | Partner | 281 | $422.12 | $530.00 | $695.00 | $558.27 | $536.24 | $506.15 |
| | | Associate | 152 | $286.69 | $349.50 | $447.50 | $374.14 | $335.23 | $329.14 |
| | | Paralegal | 51 | $150.00 | $185.00 | $225.00 | $194.42 | $178.23 | $169.16 |
| Finance and Securities: Commercial Loans and Financing | Litigation | Partner | 72 | $448.50 | $762.50 | $977.50 | $731.54 | $751.21 | $733.99 |
| | | Associate | 54 | $360.00 | $545.00 | $680.00 | $524.94 | $535.32 | $569.74 |
| | | Paralegal | 31 | $190.00 | $270.00 | $305.00 | $243.43 | $237.80 | $243.72 |
| | Non-Litigation | Partner | 1,181 | $520.00 | $785.00 | $1,000.00 | $770.37 | $708.43 | $677.78 |
| | | Associate | 1,159 | $370.00 | $517.22 | $695.00 | $537.66 | $493.17 | $459.89 |
| | | Paralegal | 536 | $195.00 | $249.38 | $305.00 | $245.15 | $220.67 | $210.89 |
| Finance and Securities: Investments and Other Financial Instruments | Litigation | Partner | 18 | $695.63 | $833.46 | $970.00 | $820.98 | $770.09 | $609.15 |
| | | Associate | 23 | $411.60 | $568.65 | $610.00 | $524.85 | $479.59 | $438.74 |
| | | Paralegal | 8 | $162.50 | $210.00 | $270.00 | $218.13 | $183.61 | $194.24 |
| | Non-Litigation | Partner | 1,449 | $650.00 | $810.40 | $1,000.00 | $824.47 | $785.82 | $767.43 |
| | | Associate | 1,582 | $400.00 | $529.41 | $675.00 | $548.48 | $523.60 | $515.08 |
| | | Paralegal | 500 | $180.00 | $225.26 | $278.50 | $233.18 | $224.91 | $220.85 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# Section I: High-Level Data Cuts

## Detailed Practice Areas
By Matter Type

### 2015—Real Rates for Partners, Associates, and Paralegals | Trend Analysis (Mean)

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
|---|---|---|---|---|---|---|---|---|---|
| Finance and Securities: SEC Filings and Financial Reporting | Litigation | Partner | 68 | $618.01 | $807.50 | $895.00 | $760.33 | $679.89 | $665.32 |
| | | Associate | 89 | $365.00 | $424.00 | $560.00 | $441.73 | $432.57 | $417.23 |
| | | Paralegal | 56 | $220.50 | $240.00 | $292.00 | $237.88 | $209.29 | $210.24 |
| | Non-Litigation | Partner | 180 | $646.92 | $913.26 | $1,093.30 | $883.98 | $867.31 | $809.63 |
| | | Associate | 185 | $440.00 | $565.00 | $704.00 | $581.40 | $542.75 | $508.96 |
| | | Paralegal | 72 | $200.00 | $292.00 | $292.00 | $256.34 | $270.08 | $262.45 |
| Finance and Securities: Securities and Banking Regulations | Litigation | Partner | 68 | $622.41 | $700.94 | $791.05 | $693.04 | $523.86 | $510.92 |
| | | Associate | 63 | $356.19 | $459.15 | $511.86 | $445.68 | $340.51 | $323.72 |
| | | Paralegal | 43 | $169.21 | $218.43 | $281.50 | $218.76 | $162.29 | $155.51 |
| | Non-Litigation | Partner | 110 | $540.00 | $797.50 | $1,075.00 | $813.04 | $834.78 | $840.61 |
| | | Associate | 84 | $365.00 | $500.00 | $680.00 | $535.63 | $519.88 | $457.11 |
| | | Paralegal | 26 | $200.00 | $297.50 | $355.00 | $279.81 | $223.01 | $222.55 |
| Finance and Securities: Other | Litigation | Partner | 133 | $543.87 | $750.00 | $911.00 | $737.16 | $654.45 | $617.46 |
| | | Associate | 122 | $335.00 | $490.00 | $610.00 | $488.63 | $435.80 | $400.65 |
| | | Paralegal | 66 | $190.00 | $225.13 | $295.00 | $240.48 | $222.23 | $220.73 |
| | Non-Litigation | Partner | 1219 | $520.00 | $732.19 | $920.00 | $734.30 | $688.51 | $661.11 |
| | | Associate | 1192 | $349.90 | $469.66 | $637.15 | $501.61 | $459.83 | $445.62 |
| | | Paralegal | 502 | $170.00 | $229.75 | $300.63 | $234.40 | $222.08 | $211.63 |
| General Liability: Asbestos/Mesothelioma | Litigation | Partner | 447 | $215.00 | $250.00 | $300.00 | $284.19 | $281.83 | $281.38 |
| | | Associate | 548 | $175.00 | $200.00 | $235.00 | $217.70 | $217.82 | $213.83 |
| | | Paralegal | 496 | $75.00 | $95.00 | $116.75 | $96.86 | $97.66 | $97.59 |
| General Liability: Personal Injury/Wrongful Death | Litigation | Partner | 484 | $161.84 | $200.00 | $250.00 | $235.93 | $232.60 | $220.93 |
| | | Associate | 446 | $150.00 | $166.64 | $200.00 | $184.39 | $184.39 | $175.62 |
| | | Paralegal | 410 | $80.00 | $90.47 | $105.00 | $97.60 | $94.08 | $95.34 |
| General Liability: Product and Product Liability | Litigation | Partner | 903 | $250.00 | $327.00 | $500.00 | $405.16 | $392.51 | $381.06 |
| | | Associate | 899 | $177.19 | $225.75 | $325.00 | $274.59 | $272.65 | $270.27 |
| | | Paralegal | 696 | $100.00 | $125.00 | $187.25 | $147.24 | $139.34 | $138.37 |
| General Liability: Other | Litigation | Partner | 1013 | $225.00 | $350.00 | $550.00 | $403.48 | $384.62 | $386.24 |
| | | Associate | 943 | $185.00 | $235.00 | $338.20 | $275.92 | $274.29 | $277.18 |
| | | Paralegal | 673 | $90.00 | $120.00 | $182.00 | $143.31 | $137.30 | $136.34 |
| Government Relations | Non-Litigation | Partner | 97 | $490.24 | $657.00 | $775.00 | $661.17 | $617.96 | $615.21 |
| | | Associate | 123 | $309.46 | $388.02 | $514.00 | $420.63 | $379.25 | $361.52 |
| | | Paralegal | 23 | $180.00 | $229.50 | $265.00 | $236.94 | $220.75 | $212.48 |

©2016 CEB. All rights reserved. GCR166424PR
wkelmsolutions.com
cebglobal.com

# Section I: High-Level Data Cuts

## Detailed Practice Areas
By Matter Type

| | | | | 2015—Real Rates for Partners, Associates, and Paralegals | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|---|
| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
| Insurance Defense: Auto and Transportation | Litigation | Partner | 992 | $149.06 | $164.17 | $180.00 | $175.19 | $175.43 | $176.45 |
| | | Associate | 952 | $135.00 | $150.00 | $165.00 | $154.66 | $153.89 | $153.00 |
| | | Paralegal | 721 | $75.00 | $80.00 | $90.00 | $84.54 | $85.57 | $84.41 |
| Insurance Defense: Personal Injury/ Wrongful Death | Litigation | Partner | 1,215 | $150.00 | $175.00 | $200.00 | $187.15 | $182.27 | $179.42 |
| | | Associate | 1,137 | $135.00 | $150.55 | $175.00 | $161.82 | $160.01 | $156.92 |
| | | Paralegal | 801 | $75.00 | $85.00 | $95.00 | $89.01 | $86.79 | $84.58 |
| Insurance Defense: Property Damage | Litigation | Partner | 845 | $150.00 | $170.00 | $190.00 | $184.24 | $185.53 | $183.59 |
| | | Associate | 740 | $135.00 | $150.00 | $170.00 | $158.75 | $157.29 | $156.80 |
| | | Paralegal | 455 | $75.00 | $85.00 | $90.00 | $85.26 | $85.87 | $85.65 |
| Insurance Defense: Other | Litigation | Partner | 3,820 | $160.00 | $190.00 | $250.00 | $230.16 | $230.24 | $220.80 |
| | | Associate | 3,303 | $145.00 | $170.00 | $215.00 | $196.52 | $188.12 | $182.41 |
| | | Paralegal | 2,362 | $80.00 | $90.00 | $110.00 | $103.44 | $101.42 | $101.25 |
| Intellectual Property: Patents | Litigation | Partner | 760 | $490.56 | $641.50 | $789.60 | $650.86 | $643.97 | $624.33 |
| | | Associate | 750 | $320.00 | $417.80 | $533.96 | $437.12 | $422.48 | $403.94 |
| | | Paralegal | 520 | $159.11 | $212.25 | $250.00 | $215.87 | $206.20 | $202.69 |
| | Non-Litigation | Partner | 781 | $365.00 | $470.00 | $630.00 | $509.75 | $504.87 | $496.59 |
| | | Associate | 1,021 | $252.64 | $313.10 | $400.00 | $350.11 | $336.29 | $329.35 |
| | | Paralegal | 507 | $141.46 | $182.38 | $225.00 | $189.06 | $184.71 | $178.76 |
| Intellectual Property: Trademarks | Litigation | Partner | 49 | $420.00 | $500.00 | $624.37 | $518.21 | $491.16 | $560.93 |
| | | Associate | 31 | $261.25 | $300.00 | $361.25 | $319.91 | $290.76 | $346.48 |
| | | Paralegal | 22 | $170.00 | $210.00 | $240.03 | $214.83 | $195.36 | $186.66 |
| | Non-Litigation | Partner | 174 | $450.99 | $551.61 | $660.00 | $564.59 | $530.26 | $538.54 |
| | | Associate | 168 | $263.00 | $326.56 | $424.50 | $351.79 | $352.35 | $341.10 |
| | | Paralegal | 171 | $163.80 | $195.00 | $240.00 | $197.91 | $197.33 | $202.39 |
| Intellectual Property: Other | Litigation | Partner | 223 | $385.00 | $545.00 | $675.26 | $543.55 | $538.77 | $524.01 |
| | | Associate | 199 | $266.00 | $344.25 | $442.00 | $364.39 | $357.25 | $349.49 |
| | | Paralegal | 108 | $146.50 | $190.43 | $233.00 | $198.21 | $194.59 | $188.40 |
| | Non-Litigation | Partner | 503 | $397.69 | $515.00 | $719.37 | $569.58 | $523.85 | $540.34 |
| | | Associate | 505 | $236.75 | $300.00 | $415.00 | $350.16 | $353.59 | $370.08 |
| | | Paralegal | 211 | $136.00 | $193.50 | $241.57 | $193.71 | $187.52 | $186.99 |
| Labor and Employment: Compensation and Benefits | Litigation | Partner | 91 | $400.00 | $565.00 | $740.00 | $571.59 | $546.26 | $538.01 |
| | | Associate | 82 | $274.00 | $360.00 | $550.00 | $414.00 | $406.02 | $364.49 |
| | | Paralegal | 40 | $125.00 | $202.50 | $225.00 | $188.93 | $185.60 | $189.32 |
| | Non-Litigation | Partner | 311 | $485.00 | $600.00 | $735.00 | $614.66 | $577.08 | $594.58 |
| | | Associate | 171 | $300.00 | $385.00 | $495.00 | $408.42 | $398.27 | $406.65 |
| | | Paralegal | 47 | $165.00 | $195.00 | $275.00 | $217.66 | $198.90 | $223.67 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

## Section I: **High-Level Data Cuts**

### Detailed Practice Areas
By Matter Type

| | | | | 2015—Real Rates for Partners, Associates, and Paralegals | | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 | |
| Labor and Employment: Discrimination, Retaliation and Harassment/ EEO | Litigation | Partner | 531 | $300.00 | $373.50 | $454.75 | $391.32 | $345.12 | $339.71 |
| | | Associate | 492 | $230.00 | $270.00 | $340.00 | $285.50 | $260.01 | $252.90 |
| | | Paralegal | 311 | $105.00 | $135.00 | $184.73 | $150.08 | $135.30 | $131.72 |
| | Non-Litigation | Partner | 239 | $347.80 | $410.00 | $515.00 | $438.20 | $434.04 | $412.14 |
| | | Associate | 218 | $255.00 | $295.00 | $355.77 | $309.45 | $311.91 | $293.49 |
| | | Paralegal | 83 | $125.00 | $155.70 | $178.63 | $157.17 | $161.26 | $150.65 |
| Labor and Employment: ERISA | Litigation | Partner | 57 | $410.00 | $684.75 | $807.44 | $626.89 | $518.06 | $490.86 |
| | | Associate | 44 | $300.00 | $379.00 | $454.00 | $381.89 | $353.40 | $305.66 |
| | | Paralegal | 21 | $150.00 | $185.00 | $200.00 | $179.06 | $186.96 | $171.08 |
| | Non-Litigation | Partner | 139 | $430.00 | $620.00 | $710.00 | $600.73 | $605.18 | $564.53 |
| | | Associate | 91 | $285.00 | $390.00 | $510.00 | $403.00 | $387.19 | $383.47 |
| | | Paralegal | 21 | $148.50 | $190.00 | $250.00 | $201.80 | $202.38 | $229.57 |
| Labor and Employment: Union Relations and Negotiations/ NLRB | Litigation | Partner | 190 | $380.00 | $468.33 | $615.00 | $501.68 | $486.58 | $490.76 |
| | | Associate | 144 | $271.44 | $328.50 | $410.00 | $352.95 | $355.12 | $351.74 |
| | | Paralegal | 63 | $120.00 | $175.50 | $226.33 | $183.62 | $191.21 | $196.38 |
| | Non-Litigation | Partner | 266 | $342.00 | $429.09 | $568.70 | $467.37 | $461.71 | $445.37 |
| | | Associate | 170 | $255.00 | $290.00 | $361.90 | $309.60 | $308.64 | $304.05 |
| | | Paralegal | 42 | $100.00 | $149.50 | $195.00 | $150.54 | $144.59 | $140.25 |
| Labor and Employment: Wages, Tips, and Overtime | Litigation | Partner | 159 | $325.00 | $415.00 | $535.00 | $459.74 | $458.66 | $467.79 |
| | | Associate | 189 | $240.00 | $315.00 | $432.00 | $337.62 | $344.66 | $363.12 |
| | | Paralegal | 89 | $120.00 | $150.00 | $211.50 | $168.70 | $163.16 | $168.22 |
| | Non-Litigation | Partner | 54 | $384.76 | $433.50 | $590.00 | $486.40 | $477.26 | $479.32 |
| | | Associate | 64 | $267.50 | $297.50 | $348.52 | $316.39 | $314.73 | $286.46 |
| | | Paralegal | 21 | $104.00 | $150.00 | $150.00 | $142.14 | $138.11 | $148.34 |
| Labor and Employment: Other | Litigation | Partner | 988 | $340.00 | $450.00 | $625.00 | $506.54 | $432.25 | $427.53 |
| | | Associate | 1,021 | $250.00 | $330.00 | $445.00 | $364.60 | $321.05 | $312.90 |
| | | Paralegal | 516 | $130.00 | $180.00 | $233.00 | $189.91 | $159.14 | $160.32 |
| | Non-Litigation | Partner | 1,131 | $351.19 | $450.00 | $623.22 | $511.10 | $500.25 | $489.59 |
| | | Associate | 883 | $255.00 | $310.00 | $415.00 | $357.31 | $350.11 | $345.60 |
| | | Paralegal | 345 | $120.00 | $162.00 | $210.00 | $174.01 | $177.18 | $167.59 |
| Marketing and Advertising | Litigation | Partner | 38 | $610.05 | $815.00 | $945.00 | $786.13 | $757.66 | $731.13 |
| | | Associate | 44 | $365.00 | $487.63 | $616.28 | $503.65 | $499.79 | $481.55 |
| | | Paralegal | 24 | $212.50 | $237.50 | $310.00 | $258.85 | $230.78 | $235.33 |
| | Non-Litigation | Partner | 170 | $500.00 | $652.50 | $845.68 | $698.54 | $688.53 | $667.14 |
| | | Associate | 150 | $335.00 | $473.38 | $654.50 | $522.97 | $491.05 | $469.20 |
| | | Paralegal | 54 | $172.69 | $218.00 | $295.00 | $232.68 | $231.52 | $212.79 |

©2016 CEB. All rights reserved. GCR166424PR
wkelmsolutions.com
cebglobal.com

# Section I: High-Level Data Cuts

## Detailed Practice Areas
By Matter Type

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | **2015—Real Rates for Partners, Associates, and Paralegals** | | | **Trend Analysis (Mean)** | | |
| Real Estate: Leasing | Litigation | Partner | 27 | $200.00 | $365.00 | $500.00 | $367.76 | $410.15 | $397.91 |
| | | Associate | 30 | $170.00 | $227.50 | $295.00 | $246.31 | $223.94 | $246.68 |
| | | Paralegal | 8 | $80.00 | $86.22 | $157.50 | $117.18 | $159.34 | $130.94 |
| | Non-Litigation | Partner | 161 | $330.00 | $417.59 | $520.00 | $441.69 | $445.12 | $424.03 |
| | | Associate | 135 | $225.00 | $260.00 | $315.00 | $279.03 | $280.05 | $273.98 |
| | | Paralegal | 39 | $125.00 | $177.33 | $200.00 | $172.45 | $169.75 | $154.68 |
| Real Estate: Property/Land Acquisition or Disposition | Litigation | Partner | 54 | $175.00 | $195.00 | $250.00 | $231.59 | $233.94 | $214.75 |
| | | Associate | 63 | $150.00 | $180.00 | $195.00 | $184.61 | $179.55 | $184.40 |
| | | Paralegal | 52 | $82.50 | $97.11 | $115.00 | $107.22 | $100.81 | $102.27 |
| | Non-Litigation | Partner | 179 | $390.00 | $475.00 | $663.20 | $544.72 | $541.77 | $475.50 |
| | | Associate | 152 | $250.00 | $315.00 | $395.00 | $350.49 | $371.42 | $317.53 |
| | | Paralegal | 52 | $156.00 | $194.38 | $225.00 | $194.59 | $196.07 | $178.23 |
| Real Estate: Titles | Litigation | Partner | 811 | $225.00 | $275.00 | $310.00 | $282.33 | $276.27 | $274.13 |
| | | Associate | 694 | $180.00 | $215.00 | $250.00 | $222.10 | $218.98 | $216.25 |
| | | Paralegal | 504 | $100.00 | $125.00 | $147.26 | $126.70 | $125.12 | $125.19 |
| | Non-Litigation | Partner | 1,053 | $225.00 | $275.00 | $325.00 | $292.50 | $291.34 | $283.57 |
| | | Associate | 874 | $176.83 | $215.62 | $250.00 | $225.50 | $227.19 | $217.74 |
| | | Paralegal | 536 | $100.00 | $125.00 | $150.00 | $130.98 | $129.05 | $124.89 |
| Real Estate: Other | Litigation | Partner | 225 | $266.54 | $390.00 | $530.00 | $435.09 | $395.28 | $381.84 |
| | | Associate | 171 | $195.00 | $250.00 | $330.00 | $283.26 | $260.02 | $259.45 |
| | | Paralegal | 101 | $105.00 | $130.00 | $179.00 | $149.19 | $159.28 | $149.29 |
| | Non-Litigation | Partner | 639 | $357.00 | $450.00 | $585.00 | $489.69 | $479.19 | $462.62 |
| | | Associate | 498 | $250.00 | $324.50 | $420.00 | $350.75 | $333.96 | $316.80 |
| | | Paralegal | 235 | $142.50 | $180.00 | $220.00 | $184.49 | $178.08 | $182.15 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# Section I: **High-Level Data Cuts**

## Cities

| 2015—Real Rates for Partners and Associates | | | | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|
| City | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
| Akron, OH | Partner | 33 | $262.10 | $325.00 | $360.00 | $309.20 | $305.65 | $286.40 |
| | Associate | 19 | $185.00 | $216.34 | $248.31 | $216.07 | $218.17 | $229.38 |
| Albany, NY | Partner | 60 | $244.91 | $277.50 | $357.25 | $323.72 | $292.76 | $295.20 |
| | Associate | 50 | $180.00 | $213.41 | $255.00 | $222.45 | $219.76 | $211.80 |
| Albuquerque, NM | Partner | 43 | $170.00 | $210.00 | $295.00 | $235.98 | $230.53 | $237.63 |
| | Associate | 26 | $145.00 | $150.00 | $210.00 | $169.92 | $169.91 | $174.30 |
| Anchorage, AK | Partner | 13 | $355.00 | $380.39 | $442.93 | $371.27 | $340.64 | $324.38 |
| | Associate | 7 | $232.18 | $255.00 | $310.07 | $257.89 | $242.66 | n/a |
| Atlanta, GA | Partner | 658 | $329.99 | $500.00 | $650.58 | $510.79 | $477.73 | $466.72 |
| | Associate | 693 | $227.69 | $320.00 | $430.50 | $340.47 | $323.81 | $305.20 |
| Austin, TX | Partner | 153 | $325.00 | $425.00 | $535.00 | $456.55 | $453.28 | $417.47 |
| | Associate | 120 | $235.00 | $263.00 | $339.31 | $301.95 | $302.37 | $288.13 |
| Baltimore, MD | Partner | 251 | $348.00 | $440.96 | $592.72 | $473.67 | $460.25 | $430.58 |
| | Associate | 274 | $265.00 | $325.63 | $445.72 | $353.20 | $329.51 | $314.68 |
| Baton Rouge, LA | Partner | 48 | $245.98 | $295.00 | $350.00 | $299.48 | $290.05 | $292.33 |
| | Associate | 19 | $150.00 | $190.00 | $220.98 | $194.79 | $205.59 | $200.27 |
| Birmingham, AL | Partner | 146 | $270.00 | $320.00 | $375.00 | $324.67 | $311.78 | $287.45 |
| | Associate | 111 | $200.00 | $216.00 | $265.00 | $229.63 | $217.80 | $205.87 |
| Boise, ID | Partner | 27 | $225.00 | $250.00 | $342.00 | $285.52 | $256.38 | $241.09 |
| | Associate | 15 | $145.00 | $165.00 | $209.11 | $177.77 | $188.67 | $178.40 |
| Boston, MA | Partner | 520 | $372.81 | $571.52 | $776.28 | $586.71 | $577.02 | $551.30 |
| | Associate | 596 | $260.00 | $380.00 | $489.50 | $388.66 | $366.89 | $353.64 |
| Boulder, CO | Partner | 12 | $313.16 | $412.50 | $539.91 | $421.53 | $406.91 | $339.29 |
| | Associate | n/a | n/a | n/a | n/a | n/a | n/a | $241.11 |
| Bridgeport, CT | Partner | 46 | $280.00 | $408.41 | $515.04 | $414.30 | $398.00 | $386.54 |
| | Associate | 40 | $240.00 | $296.25 | $340.00 | $287.35 | $285.31 | $265.32 |
| Buffalo, NY | Partner | 99 | $235.00 | $300.00 | $320.00 | $287.44 | $279.23 | $282.10 |
| | Associate | 71 | $160.00 | $205.00 | $225.00 | $197.00 | $202.49 | $195.24 |
| Burlington, VT | Partner | 15 | $210.00 | $225.00 | $293.93 | $251.61 | $273.65 | $277.31 |
| | Associate | 9 | $150.00 | $150.00 | $175.00 | $168.11 | $192.99 | $197.56 |
| Charleston, SC | Partner | 43 | $285.00 | $303.42 | $375.00 | $321.87 | $297.55 | $291.05 |
| | Associate | 33 | $175.00 | $215.00 | $250.00 | $216.33 | $211.95 | $211.16 |
| Charleston, WV | Partner | 60 | $225.00 | $249.90 | $302.50 | $256.86 | $242.97 | $240.26 |
| | Associate | 44 | $161.14 | $186.00 | $213.03 | $188.43 | $185.26 | $179.66 |
| Charlotte, NC | Partner | 151 | $340.00 | $465.00 | $616.00 | $499.74 | $473.21 | $464.66 |
| | Associate | 143 | $223.85 | $285.00 | $385.00 | $313.28 | $318.09 | $319.80 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# Section I: **High-Level Data Cuts**

## Cities

| | | | 2015—Real Rates for Partners and Associates | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|
| City | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
| Chattanooga, TN | Partner | 15 | $161.43 | $250.00 | $310.00 | $269.93 | $251.33 | $236.28 |
| | Associate | n/a | n/a | n/a | n/a | n/a | n/a | $193.09 |
| Chicago, IL | Partner | 1,743 | $439.29 | $626.00 | $780.00 | $619.86 | $591.17 | $577.12 |
| | Associate | 1,903 | $280.00 | $375.38 | $487.31 | $397.27 | $382.46 | $369.21 |
| Cincinnati, OH | Partner | 99 | $320.00 | $414.04 | $460.00 | $400.46 | $384.13 | $372.86 |
| | Associate | 66 | $210.00 | $230.00 | $263.39 | $238.43 | $231.31 | $221.46 |
| Cleveland, OH | Partner | 329 | $313.50 | $400.00 | $522.03 | $428.85 | $429.45 | $411.52 |
| | Associate | 335 | $208.83 | $250.00 | $295.00 | $268.93 | $263.27 | $248.93 |
| Columbia, SC | Partner | 91 | $274.95 | $330.00 | $405.00 | $331.43 | $321.89 | $302.95 |
| | Associate | 72 | $183.27 | $225.00 | $262.78 | $228.08 | $215.31 | $214.09 |
| Columbus, OH | Partner | 97 | $332.50 | $375.12 | $450.00 | $398.88 | $388.88 | $356.16 |
| | Associate | 71 | $220.00 | $250.00 | $295.00 | $265.22 | $252.30 | $241.56 |
| Dallas, TX | Partner | 420 | $352.50 | $573.25 | $725.00 | $563.61 | $527.71 | $505.30 |
| | Associate | 494 | $276.00 | $372.00 | $485.60 | $390.80 | $352.51 | $341.39 |
| Denver, CO | Partner | 245 | $330.00 | $413.31 | $500.00 | $430.49 | $402.48 | $396.32 |
| | Associate | 234 | $240.00 | $279.72 | $325.00 | $294.82 | $283.71 | $275.99 |
| Des Moines, IA | Partner | 26 | $205.00 | $253.24 | $330.00 | $294.22 | $272.72 | $262.64 |
| | Associate | 14 | $155.00 | $210.02 | $250.00 | $209.98 | $226.16 | $209.47 |
| Detroit, MI | Partner | 223 | $225.00 | $324.83 | $398.98 | $326.41 | $324.57 | $311.15 |
| | Associate | 176 | $185.00 | $223.00 | $282.50 | $239.02 | $225.55 | $213.25 |
| El Paso, TX | Partner | 9 | $180.00 | $190.00 | $200.00 | $209.63 | n/a | n/a |
| | Associate | 14 | $150.00 | $150.00 | $170.00 | $163.86 | $157.22 | $151.75 |
| Fresno, CA | Partner | 14 | $270.00 | $287.50 | $295.00 | $270.97 | $257.24 | $273.27 |
| | Associate | 8 | $165.00 | $180.55 | $235.00 | $197.06 | $196.88 | $188.93 |
| Grand Rapids, MI | Partner | 18 | $235.00 | $350.00 | $420.00 | $342.97 | $312.89 | $291.31 |
| | Associate | 12 | $149.45 | $222.50 | $264.08 | $203.08 | $216.30 | $200.70 |
| Greensboro, NC | Partner | 33 | $255.00 | $345.00 | $401.68 | $344.31 | $316.86 | $300.72 |
| | Associate | 8 | $219.26 | $250.00 | $270.00 | $244.19 | $206.91 | $214.06 |
| Greenville, SC | Partner | 67 | $285.00 | $358.13 | $403.12 | $349.94 | $333.86 | $329.80 |
| | Associate | 40 | $203.68 | $232.50 | $259.50 | $228.75 | $216.70 | $222.17 |
| Harrisburg, PA | Partner | 32 | $257.50 | $307.50 | $387.50 | $332.77 | $304.05 | $344.60 |
| | Associate | 24 | $145.00 | $190.00 | $282.50 | $207.88 | $196.47 | $220.84 |
| Hartford, CT | Partner | 111 | $300.00 | $395.00 | $485.00 | $395.08 | $390.15 | $374.53 |
| | Associate | 60 | $206.85 | $260.00 | $299.02 | $260.60 | $259.47 | $253.53 |
| Honolulu, HI | Partner | 61 | $248.34 | $299.66 | $385.00 | $318.01 | $301.83 | $284.77 |
| | Associate | 29 | $165.00 | $180.67 | $205.00 | $200.84 | $194.58 | $189.95 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# Section I: High-Level Data Cuts

## Cities

| | | | 2015—Real Rates for Partners and Associates | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|
| City | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
| Houston, TX | Partner | 302 | $325.00 | $525.00 | $725.00 | $547.71 | $535.59 | $524.10 |
| | Associate | 308 | $242.58 | $310.00 | $430.79 | $353.95 | $337.24 | $337.10 |
| Indianapolis, IN | Partner | 189 | $294.34 | $385.00 | $460.00 | $383.07 | $363.40 | $351.94 |
| | Associate | 130 | $190.00 | $239.84 | $286.70 | $245.76 | $240.79 | $227.91 |
| Jackson, MS | Partner | 98 | $250.00 | $297.50 | $377.82 | $316.02 | $305.99 | $285.16 |
| | Associate | 68 | $175.00 | $186.00 | $214.50 | $194.27 | $197.52 | $196.34 |
| Jacksonville, FL | Partner | 62 | $275.00 | $331.83 | $435.00 | $346.81 | $333.06 | $312.04 |
| | Associate | 43 | $175.00 | $230.00 | $290.00 | $234.18 | $238.52 | $222.99 |
| Kansas City, MO | Partner | 216 | $334.50 | $400.00 | $475.00 | $410.78 | $380.74 | $373.19 |
| | Associate | 191 | $235.00 | $258.00 | $300.00 | $271.31 | $259.51 | $246.62 |
| Knoxville, TN | Partner | 23 | $201.62 | $250.00 | $299.98 | $260.45 | $249.59 | $239.04 |
| | Associate | 17 | $175.00 | $195.00 | $200.00 | $191.96 | $186.20 | $183.80 |
| Lansing, MI | Partner | 14 | $307.50 | $325.13 | $461.00 | $362.13 | $398.64 | $353.76 |
| | Associate | n/a | n/a | n/a | n/a | n/a | $220.61 | $200.83 |
| Las Vegas, NV | Partner | 94 | $230.00 | $334.29 | $425.00 | $343.05 | $357.46 | $350.75 |
| | Associate | 82 | $195.00 | $227.87 | $279.39 | $240.64 | $236.69 | $232.01 |
| Lexington, KY | Partner | 33 | $295.00 | $325.00 | $380.00 | $337.58 | $316.31 | $309.86 |
| | Associate | 17 | $190.00 | $215.00 | $242.00 | $213.94 | $203.77 | $180.52 |
| Little Rock, AR | Partner | 46 | $215.00 | $261.45 | $300.00 | $265.88 | $264.31 | $241.04 |
| | Associate | 16 | $167.50 | $184.50 | $195.00 | $179.46 | $184.15 | $169.67 |
| Los Angeles, CA | Partner | 1,192 | $400.00 | $616.65 | $847.68 | $640.05 | $596.83 | $587.11 |
| | Associate | 1,864 | $300.00 | $450.00 | $595.00 | $456.86 | $435.52 | $412.71 |
| Louisville, KY | Partner | 64 | $275.00 | $341.57 | $405.00 | $336.57 | $310.60 | $315.77 |
| | Associate | 54 | $175.00 | $183.70 | $210.00 | $192.61 | $189.02 | $187.23 |
| Madison, WI | Partner | 25 | $332.39 | $408.34 | $495.00 | $418.83 | $319.04 | $288.21 |
| | Associate | 17 | $200.00 | $265.00 | $360.00 | $280.62 | $243.44 | $234.09 |
| Memphis, TN | Partner | 59 | $259.69 | $301.75 | $375.00 | $306.94 | $311.49 | $297.86 |
| | Associate | 28 | $185.00 | $208.07 | $230.00 | $201.51 | $206.83 | $200.38 |
| Miami, FL | Partner | 381 | $290.47 | $400.00 | $536.00 | $426.52 | $407.50 | $397.50 |
| | Associate | 316 | $200.00 | $265.00 | $347.00 | $290.75 | $267.69 | $271.06 |
| Milwaukee, WI | Partner | 147 | $285.00 | $358.17 | $450.00 | $386.49 | $364.25 | $366.95 |
| | Associate | 113 | $215.00 | $251.18 | $278.00 | $257.27 | $243.94 | $236.23 |
| Minneapolis, MN | Partner | 329 | $305.00 | $415.00 | $520.00 | $419.95 | $398.69 | $385.88 |
| | Associate | 343 | $220.00 | $270.00 | $325.00 | $282.12 | $262.42 | $268.14 |
| Mobile, AL | Partner | 16 | $202.50 | $262.50 | $287.00 | $260.88 | $264.85 | $261.43 |
| | Associate | 7 | $140.75 | $147.11 | $200.00 | $165.48 | $166.43 | $178.83 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# Section I: **High-Level Data Cuts**

## Cities

| 2015—Real Rates for Partners and Associates | | | | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|
| City | Role | *n* | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
| Montgomery, AL | Partner | 14 | $200.00 | $296.88 | $355.00 | $295.37 | $295.78 | $291.51 |
| | Associate | 7 | $150.00 | $150.00 | $200.00 | $172.14 | $180.71 | $166.84 |
| Nashville, TN | Partner | 145 | $285.00 | $375.00 | $445.00 | $366.95 | $354.85 | $347.60 |
| | Associate | 131 | $184.36 | $212.00 | $250.00 | $221.64 | $203.32 | $208.42 |
| New Haven, CT | Partner | 22 | $300.00 | $384.63 | $440.00 | $373.53 | $368.70 | $333.38 |
| | Associate | 19 | $235.00 | $255.00 | $298.58 | $263.69 | $295.09 | $290.56 |
| New Orleans, LA | Partner | 127 | $220.00 | $288.75 | $350.00 | $289.96 | $277.46 | $280.67 |
| | Associate | 110 | $160.00 | $200.00 | $225.75 | $201.32 | $211.73 | $201.95 |
| New York, NY | Partner | 3,248 | $535.00 | $795.00 | $1,025.00 | $778.69 | $737.38 | $714.49 |
| | Associate | 4,695 | $356.40 | $508.00 | $675.00 | $516.93 | $482.64 | $469.90 |
| Oklahoma City, OK | Partner | 57 | $200.00 | $280.53 | $335.00 | $277.55 | $264.38 | $271.90 |
| | Associate | 46 | $167.00 | $185.00 | $205.00 | $184.09 | $177.51 | $184.73 |
| Omaha, NE | Partner | 63 | $249.10 | $300.00 | $361.87 | $299.26 | $262.99 | $264.27 |
| | Associate | 35 | $165.00 | $189.00 | $214.23 | $191.53 | $190.82 | $180.19 |
| Orlando, FL | Partner | 97 | $290.00 | $370.00 | $495.24 | $407.19 | $367.95 | $342.25 |
| | Associate | 104 | $220.00 | $250.00 | $299.82 | $269.96 | $246.88 | $240.85 |
| Philadelphia, PA | Partner | 991 | $375.05 | $530.88 | $682.69 | $537.03 | $510.00 | $495.19 |
| | Associate | 1,224 | $250.00 | $315.18 | $405.00 | $332.63 | $312.58 | $313.21 |
| Phoenix, AZ | Partner | 214 | $279.00 | $360.32 | $450.00 | $374.93 | $358.53 | $361.59 |
| | Associate | 141 | $202.00 | $242.47 | $286.25 | $247.19 | $247.78 | $247.42 |
| Pittsburgh, PA | Partner | 254 | $350.00 | $495.00 | $580.28 | $478.90 | $469.58 | $442.88 |
| | Associate | 368 | $241.13 | $304.76 | $356.14 | $307.04 | $291.95 | $286.82 |
| Portland, ME | Partner | 56 | $204.04 | $310.00 | $355.00 | $307.48 | $288.22 | $283.88 |
| | Associate | 24 | $180.00 | $192.50 | $227.17 | $207.27 | $204.04 | $206.50 |
| Portland, OR | Partner | 171 | $307.00 | $374.93 | $434.25 | $376.55 | $374.28 | $363.08 |
| | Associate | 188 | $219.50 | $250.00 | $301.12 | $258.87 | $253.55 | $246.88 |
| Providence, RI | Partner | 29 | $185.00 | $285.00 | $340.00 | $305.35 | $313.92 | $324.23 |
| | Associate | 30 | $145.00 | $195.00 | $235.00 | $197.26 | $190.91 | $190.41 |
| Raleigh, NC | Partner | 72 | $267.50 | $350.37 | $435.75 | $361.57 | $343.27 | $342.61 |
| | Associate | 39 | $195.00 | $250.00 | $290.00 | $249.79 | $231.14 | $228.97 |
| Reno, NV | Partner | 13 | $300.00 | $350.00 | $388.26 | $348.88 | $350.32 | $343.49 |
| | Associate | 10 | $185.00 | $257.50 | $350.00 | $270.00 | $261.78 | $251.25 |
| Richmond, VA | Partner | 153 | $300.00 | $450.00 | $615.00 | $466.19 | $441.54 | $422.53 |
| | Associate | 189 | $250.00 | $309.93 | $355.00 | $315.62 | $300.17 | $288.12 |
| Riverside, CA | Partner | 22 | $290.00 | $298.98 | $300.00 | $305.35 | $275.86 | $261.11 |
| | Associate | 7 | $220.00 | $280.00 | $300.00 | $266.81 | $236.98 | $220.16 |

©2016 CEB. All rights reserved. GCR166424PR
wkelmsolutions.com
cebglobal.com

# Section I: **High-Level Data Cuts**

## Cities

| City | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
|------|------|---|---------------|--------|---------------|------|------|------|
| Rochester, NY | Partner | 30 | $250.00 | $353.86 | $375.00 | $333.12 | $332.10 | $312.80 |
| | Associate | 26 | $175.00 | $238.63 | $280.00 | $226.96 | $231.97 | $218.36 |
| Sacramento, CA | Partner | 44 | $287.03 | $392.50 | $539.98 | $433.68 | $383.43 | $395.00 |
| | Associate | 62 | $239.18 | $250.00 | $325.00 | $299.77 | $270.07 | $276.19 |
| Salt Lake City, UT | Partner | 100 | $257.34 | $326.50 | $400.00 | $334.59 | $318.13 | $318.69 |
| | Associate | 51 | $176.83 | $200.00 | $283.00 | $234.34 | $311.02 | $279.54 |
| San Antonio, TX | Partner | 18 | $240.00 | $306.98 | $325.00 | $289.54 | $351.42 | $370.41 |
| | Associate | 12 | $197.50 | $225.00 | $245.00 | $236.79 | $255.67 | $246.52 |
| San Diego, CA | Partner | 195 | $315.00 | $445.00 | $660.88 | $488.61 | $486.48 | $473.53 |
| | Associate | 166 | $185.00 | $260.00 | $383.00 | $305.62 | $313.54 | $316.17 |
| San Francisco, CA | Partner | 676 | $383.76 | $588.58 | $772.95 | $594.59 | $594.80 | $594.07 |
| | Associate | 600 | $273.09 | $368.59 | $500.00 | $400.02 | $391.65 | $393.70 |
| San Jose, CA | Partner | 229 | $550.00 | $750.00 | $897.33 | $742.23 | $667.40 | $673.63 |
| | Associate | 179 | $280.42 | $377.86 | $575.00 | $438.36 | $419.40 | $428.89 |
| San Juan, PR | Partner | 61 | $165.00 | $210.00 | $250.00 | $211.04 | $217.59 | $219.19 |
| | Associate | 45 | $125.00 | $145.50 | $152.27 | $142.69 | $147.36 | $150.95 |
| Santa Fe, NM | Partner | 14 | $200.00 | $223.51 | $225.04 | $215.59 | $203.54 | $212.12 |
| | Associate | 7 | $175.00 | $185.00 | $214.03 | $195.58 | $197.87 | $179.84 |
| Savannah, GA | Partner | 15 | $175.00 | $250.00 | $325.00 | $250.67 | $255.00 | $243.44 |
| | Associate | 10 | $180.59 | $192.50 | $200.00 | $193.06 | $176.25 | $176.51 |
| Seattle, WA | Partner | 364 | $355.11 | $440.10 | $504.50 | $443.04 | $423.86 | $406.17 |
| | Associate | 256 | $240.00 | $289.52 | $360.00 | $311.92 | $291.42 | $274.23 |
| St. Louis, MO | Partner | 230 | $284.42 | $367.25 | $447.69 | $367.03 | $362.93 | $346.36 |
| | Associate | 202 | $175.00 | $205.00 | $270.00 | $224.66 | $222.79 | $218.57 |
| Syracuse, NY | Partner | 48 | $211.50 | $257.50 | $326.00 | $267.02 | $264.84 | $259.71 |
| | Associate | 29 | $150.00 | $175.00 | $185.00 | $168.22 | $185.60 | $186.84 |
| Tallahassee, FL | Partner | 37 | $335.00 | $425.00 | $514.87 | $450.23 | $385.06 | $410.51 |
| | Associate | 13 | $230.00 | $280.00 | $295.00 | $277.17 | $276.36 | $274.02 |
| Tampa, FL | Partner | 123 | $275.00 | $385.00 | $450.00 | $385.94 | $359.84 | $358.25 |
| | Associate | 75 | $195.00 | $245.00 | $300.00 | $256.75 | $237.74 | $233.20 |
| Toledo, OH | Partner | 13 | $255.00 | $295.00 | $390.00 | $310.55 | $300.83 | $306.95 |
| | Associate | 8 | $205.00 | $233.64 | $248.26 | $229.22 | $202.24 | $192.28 |
| Trenton, NJ | Partner | 51 | $400.00 | $475.00 | $540.00 | $479.30 | $440.98 | $424.81 |
| | Associate | 38 | $255.00 | $324.50 | $400.00 | $333.40 | $310.05 | $294.56 |
| Tulsa, OK | Partner | 25 | $240.00 | $285.00 | $330.00 | $288.85 | $283.43 | $281.65 |
| | Associate | 8 | $173.76 | $200.00 | $208.50 | $198.61 | $181.70 | $170.89 |

*2015—Real Rates for Partners and Associates* | *Trend Analysis (Mean)*

©2016 CEB. All rights reserved. GCR166424PR

# Section I: High-Level Data Cuts

## Cities

| | | | 2015—Real Rates for Partners and Associates | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|
| City | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
| Virginia Beach, VA | Partner | 19 | $250.00 | $340.00 | $411.00 | $348.50 | $347.57 | $341.01 |
| | Associate | 17 | $175.00 | $205.00 | $226.64 | $227.23 | $218.02 | $203.18 |
| Washington, DC | Partner | 2,277 | $584.53 | $705.00 | $830.49 | $713.87 | $679.77 | $661.84 |
| | Associate | 2,151 | $336.10 | $425.00 | $535.00 | $448.34 | $427.05 | $413.21 |
| Winston-Salem, NC | Partner | 17 | $300.00 | $395.00 | $480.00 | $380.59 | $334.66 | $327.45 |
| | Associate | 12 | $185.87 | $232.50 | $282.50 | $255.98 | $272.17 | $267.15 |
| Worcester, MA | Partner | 18 | $248.00 | $248.00 | $335.75 | $287.41 | $297.81 | $280.26 |
| | Associate | 7 | $133.24 | $145.00 | $195.00 | $162.40 | $145.29 | n/a |

©2016 CEB. All rights reserved. GCR166424PR
wkelmsolutions.com
cebglobal.com

# Section I: High-Level Data Cuts

## Cities
By Matter Type

| | | | | 2015—Real Rates for Partners and Associates | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|---|
| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
| Akron, OH | Litigation | Partner | 23 | $250.00 | $325.00 | $360.00 | $310.11 | $295.10 | $282.24 |
| | | Associate | 15 | $180.00 | $200.00 | $249.07 | $212.08 | $209.18 | $211.81 |
| | Non-Litigation | Partner | 16 | $257.15 | $300.00 | $355.00 | $307.45 | $308.24 | $294.29 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $233.21 | $256.47 |
| Albany, NY | Litigation | Partner | 19 | $250.00 | $305.00 | $400.17 | $368.17 | $284.43 | $297.42 |
| | | Associate | 18 | $179.96 | $235.00 | $275.00 | $228.29 | $253.96 | $231.49 |
| | Non-Litigation | Partner | 51 | $244.03 | $280.00 | $350.00 | $313.18 | $305.99 | $298.30 |
| | | Associate | 38 | $178.04 | $209.98 | $240.00 | $217.18 | $214.52 | $200.33 |
| Albuquerque, NM | Litigation | Partner | 34 | $160.00 | $203.00 | $250.00 | $218.56 | $230.75 | $232.01 |
| | | Associate | 22 | $136.37 | $150.00 | $180.00 | $160.36 | $167.18 | $165.39 |
| | Non-Litigation | Partner | 17 | $210.00 | $275.00 | $310.00 | $267.38 | $247.86 | $255.45 |
| | | Associate | 7 | $150.00 | $210.00 | $220.00 | $196.76 | $183.85 | $219.91 |
| Anchorage, AK | Litigation | Partner | 8 | $225.00 | $373.14 | $421.00 | $344.78 | $331.60 | n/a |
| | | Associate | 7 | $225.00 | $255.00 | $317.63 | $257.95 | n/a | n/a |
| | Non-Litigation | Partner | 8 | $358.07 | $377.70 | $450.00 | $380.19 | $361.04 | $348.00 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| Atlanta, GA | Litigation | Partner | 320 | $280.00 | $400.00 | $614.79 | $453.19 | $437.06 | $424.73 |
| | | Associate | 332 | $200.00 | $281.35 | $393.35 | $303.55 | $309.53 | $287.29 |
| | Non-Litigation | Partner | 463 | $380.00 | $536.00 | $685.00 | $548.83 | $518.28 | $500.36 |
| | | Associate | 459 | $256.00 | $348.50 | $465.00 | $363.99 | $339.31 | $324.66 |
| Austin, TX | Litigation | Partner | 69 | $325.00 | $425.95 | $535.00 | $453.17 | $459.17 | $404.76 |
| | | Associate | 43 | $247.50 | $280.00 | $355.50 | $319.13 | $335.08 | $317.99 |
| | Non-Litigation | Partner | 112 | $317.00 | $400.00 | $509.93 | $446.13 | $445.15 | $419.12 |
| | | Associate | 103 | $235.00 | $261.00 | $329.33 | $294.43 | $289.82 | $278.27 |
| Baltimore, MD | Litigation | Partner | 134 | $316.00 | $410.00 | $572.02 | $438.75 | $431.24 | $402.31 |
| | | Associate | 186 | $248.00 | $295.00 | $400.00 | $330.20 | $306.56 | $287.66 |
| | Non-Litigation | Partner | 156 | $365.00 | $465.90 | $611.50 | $493.10 | $475.36 | $458.92 |
| | | Associate | 124 | $265.00 | $350.50 | $478.02 | $376.70 | $345.04 | $341.34 |
| Baton Rouge, LA | Litigation | Partner | 29 | $230.00 | $270.00 | $305.00 | $276.15 | $257.18 | $275.75 |
| | | Associate | 14 | $150.00 | $190.00 | $220.00 | $191.36 | $188.41 | $197.05 |
| | Non-Litigation | Partner | 24 | $277.50 | $322.50 | $350.00 | $317.32 | $302.85 | $296.78 |
| | | Associate | 11 | $150.00 | $180.00 | $220.00 | $184.73 | $208.76 | $188.62 |
| Birmingham, AL | Litigation | Partner | 116 | $247.50 | $299.74 | $350.49 | $302.50 | $301.43 | $276.76 |
| | | Associate | 89 | $195.00 | $214.00 | $250.00 | $220.29 | $216.12 | $203.58 |
| | Non-Litigation | Partner | 53 | $300.00 | $360.00 | $430.50 | $367.67 | $341.89 | $310.65 |
| | | Associate | 42 | $205.00 | $218.00 | $285.00 | $239.01 | $218.22 | $208.20 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# Section I: High-Level Data Cuts

## Cities
By Matter Type

| | | | | 2015—Real Rates for Partners and Associates | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|---|
| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
| Boise, ID | Litigation | Partner | 15 | $225.00 | $335.00 | $395.00 | $311.47 | $258.63 | $274.85 |
| | | Associate | 8 | $135.00 | $198.17 | $215.00 | $180.79 | $207.86 | $203.03 |
| | Non-Litigation | Partner | 19 | $225.00 | $245.00 | $250.00 | $260.53 | $253.78 | $227.21 |
| | | Associate | 9 | $145.00 | $160.00 | $195.00 | $177.78 | $159.76 | $157.24 |
| Boston, MA | Litigation | Partner | 271 | $260.43 | $500.00 | $695.00 | $512.23 | $500.21 | $479.80 |
| | | Associate | 282 | $190.00 | $330.00 | $470.00 | $349.44 | $311.29 | $320.09 |
| | Non-Litigation | Partner | 346 | $435.00 | $645.00 | $824.80 | $639.60 | $620.39 | $594.87 |
| | | Associate | 377 | $290.00 | $395.00 | $500.00 | $413.43 | $402.42 | $387.03 |
| Bridgeport, CT | Litigation | Partner | 20 | $300.00 | $438.11 | $516.25 | $428.24 | $398.63 | $379.07 |
| | | Associate | 13 | $235.00 | $292.50 | $325.00 | $286.88 | $283.61 | $239.99 |
| | Non-Litigation | Partner | 37 | $275.00 | $350.00 | $490.00 | $392.66 | $395.14 | $389.95 |
| | | Associate | 31 | $235.00 | $280.00 | $340.00 | $279.06 | $283.99 | $267.73 |
| Buffalo, NY | Litigation | Partner | 61 | $215.69 | $300.00 | $320.00 | $279.43 | $276.49 | $271.23 |
| | | Associate | 47 | $160.00 | $195.00 | $220.00 | $194.75 | $199.77 | $192.93 |
| | Non-Litigation | Partner | 52 | $277.50 | $300.00 | $320.00 | $296.79 | $287.40 | $303.11 |
| | | Associate | 32 | $200.00 | $215.10 | $225.00 | $208.14 | $212.49 | $206.97 |
| Burlington, VT | Litigation | Partner | 11 | $210.00 | $225.00 | $250.00 | $236.27 | $283.48 | $310.94 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | n/a | $221.25 |
| | Non-Litigation | Partner | 8 | $217.50 | $260.00 | $300.00 | $261.24 | $256.76 | $248.85 |
| | | Associate | 7 | $150.00 | $150.00 | $175.00 | $166.43 | $174.49 | $173.85 |
| Charleston, SC | Litigation | Partner | 29 | $300.00 | $303.42 | $375.00 | $328.53 | $309.48 | $304.67 |
| | | Associate | 24 | $175.00 | $225.00 | $242.50 | $213.73 | $226.83 | $218.47 |
| | Non-Litigation | Partner | 23 | $280.00 | $314.00 | $392.85 | $327.31 | $297.80 | $268.05 |
| | | Associate | 15 | $190.00 | $255.34 | $283.50 | $247.20 | $208.07 | $204.28 |
| Charleston, WV | Litigation | Partner | 49 | $200.00 | $250.00 | $280.00 | $249.99 | $237.91 | $231.88 |
| | | Associate | 36 | $158.92 | $182.50 | $200.00 | $184.08 | $181.99 | $177.83 |
| | Non-Litigation | Partner | 21 | $225.00 | $240.00 | $330.00 | $268.89 | $254.82 | $254.59 |
| | | Associate | 10 | $171.47 | $197.00 | $225.00 | $201.64 | $193.79 | $183.50 |
| Charlotte, NC | Litigation | Partner | 72 | $290.00 | $379.00 | $527.40 | $434.76 | $462.11 | $463.88 |
| | | Associate | 56 | $204.45 | $251.00 | $347.17 | $289.38 | $294.91 | $305.17 |
| | Non-Litigation | Partner | 109 | $385.00 | $500.00 | $625.60 | $517.20 | $470.76 | $460.30 |
| | | Associate | 114 | $225.00 | $291.25 | $398.40 | $320.17 | $317.60 | $316.70 |
| Chicago, IL | Litigation | Partner | 781 | $360.00 | $550.00 | $702.27 | $550.10 | $538.03 | $531.47 |
| | | Associate | 895 | $235.00 | $349.00 | $440.94 | $356.27 | $345.44 | $335.01 |
| | Non-Litigation | Partner | 1,275 | $490.50 | $651.60 | $807.71 | $655.29 | $623.62 | $607.65 |
| | | Associate | 1,267 | $313.13 | $393.25 | $520.00 | $424.57 | $409.34 | $394.65 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# Section I: High-Level Data Cuts

## Cities
By Matter Type

| 2015—Real Rates for Partners and Associates | | | | | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|---|
| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
| Cincinnati, OH | Litigation | Partner | 58 | $305.00 | $426.50 | $470.00 | $405.85 | $384.56 | $372.01 |
| | | Associate | 37 | $210.00 | $230.00 | $260.00 | $234.40 | $232.44 | $230.85 |
| | Non-Litigation | Partner | 63 | $325.00 | $415.49 | $455.00 | $398.34 | $380.37 | $375.48 |
| | | Associate | 35 | $210.00 | $240.00 | $265.00 | $239.99 | $228.22 | $213.81 |
| Cleveland, OH | Litigation | Partner | 138 | $300.00 | $381.50 | $495.00 | $414.35 | $401.87 | $391.93 |
| | | Associate | 137 | $208.00 | $240.00 | $300.00 | $266.27 | $254.45 | $236.86 |
| | Non-Litigation | Partner | 247 | $330.00 | $400.00 | $526.30 | $435.98 | $439.20 | $420.31 |
| | | Associate | 243 | $208.00 | $253.75 | $295.00 | $267.01 | $264.57 | $253.01 |
| Columbia, SC | Litigation | Partner | 61 | $274.91 | $330.00 | $400.00 | $326.71 | $316.02 | $316.63 |
| | | Associate | 54 | $200.00 | $225.00 | $250.00 | $229.22 | $220.36 | $217.82 |
| | Non-Litigation | Partner | 48 | $275.00 | $325.00 | $406.22 | $340.59 | $327.74 | $293.40 |
| | | Associate | 30 | $195.00 | $233.91 | $272.60 | $239.15 | $215.67 | $217.20 |
| Columbus, OH | Litigation | Partner | 46 | $320.00 | $365.00 | $430.00 | $382.71 | $373.02 | $343.70 |
| | | Associate | 37 | $225.00 | $245.00 | $290.00 | $264.20 | $244.64 | $246.95 |
| | Non-Litigation | Partner | 66 | $335.00 | $394.98 | $470.00 | $415.81 | $409.08 | $369.54 |
| | | Associate | 43 | $217.00 | $280.00 | $310.00 | $275.46 | $257.97 | $244.93 |
| Dallas, TX | Litigation | Partner | 180 | $275.00 | $402.31 | $596.46 | $456.98 | $421.46 | $409.21 |
| | | Associate | 205 | $225.00 | $306.87 | $430.00 | $334.89 | $300.95 | $296.08 |
| | Non-Litigation | Partner | 285 | $440.00 | $632.03 | $775.00 | $625.96 | $589.43 | $566.84 |
| | | Associate | 326 | $317.20 | $402.75 | $520.19 | $424.70 | $383.73 | $366.29 |
| Denver, CO | Litigation | Partner | 125 | $323.49 | $393.79 | $475.00 | $412.05 | $383.33 | $363.61 |
| | | Associate | 119 | $245.00 | $282.03 | $315.00 | $292.57 | $275.61 | $272.09 |
| | Non-Litigation | Partner | 168 | $325.00 | $424.63 | $507.73 | $434.29 | $414.52 | $411.21 |
| | | Associate | 151 | $240.00 | $275.00 | $330.00 | $301.41 | $291.52 | $281.08 |
| Des Moines, IA | Litigation | Partner | 23 | $220.00 | $255.00 | $350.00 | $302.61 | $263.94 | $244.90 |
| | | Associate | 12 | $158.23 | $210.02 | $245.00 | $206.75 | n/a | $189.31 |
| | Non-Litigation | Partner | 11 | $190.00 | $250.00 | $373.50 | $282.15 | $283.46 | $268.63 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | n/a | $224.59 |
| Detroit, MI | Litigation | Partner | 117 | $200.00 | $265.00 | $356.70 | $276.01 | $268.22 | $276.64 |
| | | Associate | 97 | $175.00 | $200.00 | $250.00 | $217.85 | $215.36 | $211.99 |
| | Non-Litigation | Partner | 140 | $295.00 | $360.00 | $419.53 | $362.21 | $352.10 | $330.54 |
| | | Associate | 112 | $190.21 | $246.46 | $290.00 | $256.16 | $232.86 | $213.53 |
| Fresno, CA | Litigation | Partner | 8 | $187.50 | $277.50 | $294.44 | $239.24 | n/a | $267.14 |
| | | Associate | 8 | $165.00 | $176.89 | $235.00 | $196.12 | n/a | $217.87 |
| | Non-Litigation | Partner | 9 | $280.00 | $292.69 | $325.00 | $296.26 | $250.21 | $262.69 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | n/a | $163.13 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# Section I: High-Level Data Cuts

## Cities
By Matter Type

### 2015—Real Rates for Partners and Associates     Trend Analysis (Mean)

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| Grand Rapids, MI | Litigation | Partner | 7 | $219.69 | $250.00 | $350.00 | $275.38 | n/a | n/a |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $180.89 | n/a |
| | Non-Litigation | Partner | 11 | $270.00 | $415.00 | $510.00 | $385.99 | $322.39 | $306.39 |
| | | Associate | 10 | $87.80 | $220.00 | $260.00 | $196.57 | $210.65 | $174.70 |
| Greensboro, NC | Litigation | Partner | 16 | $250.00 | $282.00 | $352.50 | $294.25 | $301.62 | $300.94 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $220.11 | $226.64 |
| | Non-Litigation | Partner | 21 | $340.00 | $380.00 | $410.00 | $377.78 | $332.21 | $295.81 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $199.35 | $201.82 |
| Greenville, SC | Litigation | Partner | 30 | $260.00 | $340.00 | $405.00 | $338.63 | $336.67 | $338.50 |
| | | Associate | 16 | $162.50 | $222.79 | $255.00 | $215.87 | $214.68 | $223.09 |
| | Non-Litigation | Partner | 47 | $315.73 | $365.00 | $420.00 | $362.83 | $337.07 | $328.87 |
| | | Associate | 28 | $212.50 | $243.26 | $259.50 | $238.61 | $225.46 | $229.34 |
| Harrisburg, PA | Litigation | Partner | 14 | $200.00 | $287.50 | $350.00 | $315.85 | $333.98 | $336.68 |
| | | Associate | 9 | $125.00 | $165.00 | $215.00 | $172.78 | $213.00 | $226.60 |
| | Non-Litigation | Partner | 21 | $295.00 | $315.00 | $380.00 | $342.03 | $286.78 | $340.70 |
| | | Associate | 16 | $173.12 | $210.04 | $302.50 | $230.57 | $194.41 | $202.41 |
| Hartford, CT | Litigation | Partner | 66 | $292.00 | $405.00 | $481.56 | $396.93 | $377.15 | $352.52 |
| | | Associate | 36 | $195.00 | $252.50 | $295.00 | $247.86 | $254.51 | $235.64 |
| | Non-Litigation | Partner | 61 | $300.00 | $380.00 | $485.00 | $395.26 | $408.82 | $411.12 |
| | | Associate | 30 | $245.00 | $272.50 | $300.00 | $282.56 | $284.05 | $270.05 |
| Honolulu, HI | Litigation | Partner | 34 | $247.35 | $297.50 | $392.11 | $315.84 | $295.50 | $290.90 |
| | | Associate | 20 | $167.38 | $175.00 | $200.00 | $192.69 | $193.33 | $199.61 |
| | Non-Litigation | Partner | 40 | $249.17 | $282.50 | $360.00 | $308.72 | $306.21 | $279.53 |
| | | Associate | 18 | $170.00 | $175.00 | $200.00 | $197.18 | $193.66 | $178.09 |
| Houston, TX | Litigation | Partner | 166 | $295.00 | $450.00 | $623.00 | $460.34 | $452.25 | $473.90 |
| | | Associate | 118 | $245.00 | $314.89 | $395.00 | $324.63 | $318.53 | $309.97 |
| | Non-Litigation | Partner | 175 | $370.00 | $578.05 | $775.00 | $609.19 | $596.21 | $559.96 |
| | | Associate | 207 | $240.00 | $308.60 | $459.58 | $368.06 | $350.59 | $355.26 |
| Indianapolis, IN | Litigation | Partner | 93 | $245.00 | $384.40 | $500.00 | $378.47 | $344.00 | $342.18 |
| | | Associate | 66 | $165.00 | $234.36 | $290.00 | $240.32 | $242.30 | $223.46 |
| | Non-Litigation | Partner | 119 | $319.50 | $399.98 | $460.00 | $390.63 | $381.51 | $361.14 |
| | | Associate | 81 | $199.22 | $240.00 | $280.00 | $250.83 | $240.00 | $233.36 |
| Jackson, MS | Litigation | Partner | 75 | $250.00 | $295.00 | $370.00 | $312.43 | $287.05 | $281.70 |
| | | Associate | 57 | $175.00 | $185.00 | $215.00 | $193.99 | $193.37 | $198.82 |
| | Non-Litigation | Partner | 34 | $220.00 | $300.00 | $415.00 | $316.39 | $330.35 | $286.73 |
| | | Associate | 15 | $180.00 | $190.00 | $220.00 | $200.73 | $207.31 | $208.21 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# Section I: High-Level Data Cuts

## Cities
By Matter Type

| | | | | 2015—Real Rates for Partners and Associates | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|---|
| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
| Jacksonville, FL | Litigation | Partner | 36 | $262.50 | $342.52 | $438.90 | $341.30 | $309.78 | $286.17 |
| | | Associate | 27 | $185.00 | $215.00 | $295.00 | $242.18 | $219.36 | $215.22 |
| | Non-Litigation | Partner | 36 | $275.00 | $315.00 | $430.05 | $353.20 | $359.49 | $347.34 |
| | | Associate | 23 | $175.00 | $235.00 | $285.00 | $227.71 | $261.19 | $242.36 |
| Kansas City, MO | Litigation | Partner | 119 | $310.09 | $400.00 | $475.00 | $397.38 | $365.38 | $358.42 |
| | | Associate | 105 | $225.00 | $246.00 | $295.00 | $257.42 | $250.04 | $239.65 |
| | Non-Litigation | Partner | 129 | $348.81 | $400.00 | $460.00 | $413.10 | $376.92 | $371.20 |
| | | Associate | 97 | $244.25 | $269.57 | $318.00 | $286.35 | $268.31 | $250.73 |
| Knoxville, TN | Litigation | Partner | 20 | $215.00 | $250.00 | $299.99 | $262.66 | $252.41 | $236.96 |
| | | Associate | 13 | $195.00 | $195.00 | $200.00 | $186.57 | $182.53 | $178.35 |
| | Non-Litigation | Partner | 7 | $230.00 | $230.00 | $275.00 | $250.54 | $247.50 | $239.81 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $189.18 | n/a |
| Las Vegas, NV | Litigation | Partner | 57 | $225.00 | $250.00 | $350.00 | $305.68 | $324.31 | $308.64 |
| | | Associate | 52 | $195.00 | $212.50 | $255.00 | $227.01 | $221.81 | $225.22 |
| | Non-Litigation | Partner | 55 | $250.00 | $380.00 | $475.00 | $380.16 | $387.68 | $379.22 |
| | | Associate | 45 | $185.00 | $250.00 | $280.00 | $245.97 | $251.53 | $236.85 |
| Lexington, KY | Litigation | Partner | 20 | $292.50 | $317.50 | $335.78 | $325.87 | $307.31 | $307.89 |
| | | Associate | 14 | $190.00 | $212.50 | $230.00 | $215.86 | $201.77 | $200.75 |
| | Non-Litigation | Partner | 19 | $300.00 | $350.00 | $385.00 | $343.23 | $329.22 | $313.98 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $204.51 | $166.68 |
| Little Rock, AR | Litigation | Partner | 36 | $215.00 | $261.45 | $300.00 | $258.14 | $260.34 | $231.74 |
| | | Associate | 14 | $165.00 | $182.00 | $190.00 | $173.79 | $177.18 | $160.66 |
| | Non-Litigation | Partner | 14 | $230.00 | $267.89 | $315.00 | $286.48 | $259.41 | $247.96 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $190.83 | $179.12 |
| Los Angeles, CA | Litigation | Partner | 662 | $340.00 | $525.00 | $745.00 | $563.85 | $525.35 | $529.53 |
| | | Associate | 890 | $248.13 | $375.00 | $525.00 | $399.20 | $375.58 | $366.49 |
| | Non-Litigation | Partner | 736 | $476.89 | $675.00 | $903.52 | $692.23 | $657.18 | $627.75 |
| | | Associate | 1,211 | $348.00 | $469.00 | $630.00 | $489.26 | $477.17 | $445.31 |
| Louisville, KY | Litigation | Partner | 50 | $242.00 | $326.50 | $395.00 | $325.13 | $307.08 | $321.73 |
| | | Associate | 46 | $175.00 | $180.00 | $199.78 | $186.81 | $181.90 | $186.52 |
| | Non-Litigation | Partner | 29 | $330.00 | $380.00 | $425.00 | $378.28 | $333.03 | $315.11 |
| | | Associate | 16 | $186.02 | $210.00 | $225.50 | $211.45 | $205.64 | $188.66 |
| Madison, WI | Litigation | Partner | 13 | $305.00 | $395.00 | $495.00 | $397.97 | $298.22 | $275.50 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $195.64 | $195.91 |
| | Non-Litigation | Partner | 15 | $332.39 | $450.00 | $520.00 | $422.41 | $300.45 | $262.14 |
| | | Associate | 12 | $217.50 | $272.50 | $360.00 | $286.71 | $251.65 | $253.30 |

©2016 CEB. All rights reserved. GCR166424PR
wkelmsolutions.com

cebglobal.com

# Section I: High-Level Data Cuts

## Cities
By Matter Type

| | | | | 2015—Real Rates for Partners and Associates | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|---|
| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
| Memphis, TN | Litigation | Partner | 41 | $200.00 | $295.00 | $375.00 | $297.99 | $309.41 | $293.88 |
| | | Associate | 18 | $185.00 | $194.76 | $225.00 | $200.89 | $217.24 | $205.91 |
| | Non-Litigation | Partner | 32 | $267.50 | $331.25 | $376.35 | $326.21 | $323.90 | $303.83 |
| | | Associate | 20 | $180.00 | $210.00 | $219.83 | $197.07 | $195.53 | $202.36 |
| Miami, FL | Litigation | Partner | 248 | $250.00 | $350.00 | $475.00 | $377.78 | $373.44 | $374.11 |
| | | Associate | 219 | $190.00 | $255.00 | $329.00 | $282.25 | $260.60 | $267.53 |
| | Non-Litigation | Partner | 190 | $350.00 | $450.00 | $590.00 | $482.49 | $444.08 | $429.07 |
| | | Associate | 136 | $212.41 | $272.50 | $350.00 | $295.49 | $272.94 | $286.35 |
| Milwaukee, WI | Litigation | Partner | 70 | $240.00 | $310.00 | $380.00 | $323.03 | $316.67 | $330.51 |
| | | Associate | 62 | $215.00 | $250.00 | $275.23 | $250.99 | $233.36 | $226.51 |
| | Non-Litigation | Partner | 103 | $325.00 | $375.00 | $475.00 | $417.59 | $396.65 | $395.87 |
| | | Associate | 63 | $225.00 | $260.00 | $278.00 | $261.73 | $253.78 | $246.45 |
| Minneapolis, MN | Litigation | Partner | 180 | $250.02 | $375.00 | $507.50 | $391.96 | $376.57 | $369.52 |
| | | Associate | 186 | $200.00 | $259.27 | $333.47 | $264.01 | $258.95 | $251.30 |
| | Non-Litigation | Partner | 202 | $350.00 | $450.00 | $535.00 | $452.51 | $405.25 | $392.60 |
| | | Associate | 206 | $240.00 | $280.00 | $347.63 | $335.87 | $288.17 | $291.59 |
| Nashville, TN | Litigation | Partner | 56 | $256.96 | $327.50 | $422.50 | $339.98 | $346.63 | $342.12 |
| | | Associate | 57 | $192.08 | $210.00 | $248.36 | $221.80 | $215.67 | $210.36 |
| | Non-Litigation | Partner | 106 | $315.00 | $394.19 | $445.76 | $380.38 | $367.26 | $356.58 |
| | | Associate | 94 | $182.47 | $215.00 | $248.76 | $220.65 | $199.39 | $207.87 |
| New Haven, CT | Litigation | Partner | 10 | $340.00 | $382.87 | $449.69 | $376.92 | $362.47 | $327.65 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $351.06 | $377.64 |
| | Non-Litigation | Partner | 16 | $320.00 | $377.50 | $420.00 | $380.34 | $390.98 | $346.29 |
| | | Associate | 15 | $235.00 | $262.07 | $296.40 | $264.44 | $251.41 | $302.54 |
| New Orleans, LA | Litigation | Partner | 102 | $200.00 | $276.98 | $330.00 | $278.92 | $262.75 | $258.57 |
| | | Associate | 89 | $160.00 | $200.00 | $225.75 | $200.79 | $208.14 | $197.87 |
| | Non-Litigation | Partner | 44 | $250.00 | $300.00 | $350.00 | $305.66 | $304.27 | $314.46 |
| | | Associate | 34 | $160.00 | $195.00 | $225.00 | $198.11 | $217.29 | $212.29 |
| New York, NY | Litigation | Partner | 1,312 | $400.00 | $635.00 | $860.00 | $642.06 | $616.16 | $611.67 |
| | | Associate | 1,591 | $275.00 | $395.00 | $559.06 | $426.44 | $409.65 | $404.00 |
| | Non-Litigation | Partner | 2,411 | $639.00 | $864.18 | $1,072.91 | $845.43 | $809.50 | $783.87 |
| | | Associate | 3,545 | $405.00 | $540.00 | $704.00 | $552.31 | $516.41 | $507.82 |
| Oklahoma City, OK | Litigation | Partner | 39 | $200.00 | $265.50 | $330.00 | $275.97 | $261.51 | $269.47 |
| | | Associate | 33 | $150.00 | $175.00 | $205.00 | $178.34 | $169.05 | $173.22 |
| | Non-Litigation | Partner | 25 | $200.00 | $280.38 | $340.00 | $281.91 | $266.91 | $272.28 |
| | | Associate | 17 | $175.00 | $190.00 | $200.00 | $196.06 | $191.93 | $200.24 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# Section I: High-Level Data Cuts

## Cities
By Matter Type

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | **2015—Real Rates for Partners and Associates** | | | **Trend Analysis (Mean)** | | |
| Omaha, NE | Litigation | Partner | 22 | $225.00 | $275.00 | $328.41 | $273.62 | $247.59 | $243.73 |
| | | Associate | 16 | $170.00 | $182.50 | $196.00 | $183.69 | $189.11 | $183.09 |
| | Non-Litigation | Partner | 47 | $250.00 | $321.09 | $375.00 | $309.67 | $259.92 | $267.20 |
| | | Associate | 25 | $175.00 | $200.00 | $230.00 | $198.41 | $191.80 | $182.26 |
| Orlando, FL | Litigation | Partner | 56 | $264.41 | $320.00 | $432.01 | $372.78 | $338.89 | $326.65 |
| | | Associate | 69 | $210.00 | $230.00 | $266.00 | $236.37 | $223.65 | $214.59 |
| | Non-Litigation | Partner | 59 | $310.00 | $400.00 | $545.00 | $444.35 | $399.69 | $367.95 |
| | | Associate | 44 | $246.26 | $297.09 | $366.54 | $320.81 | $280.02 | $277.35 |
| Philadelphia, PA | Litigation | Partner | 617 | $348.98 | $486.87 | $630.00 | $495.44 | $488.52 | $468.53 |
| | | Associate | 776 | $225.00 | $300.00 | $393.69 | $312.53 | $300.79 | $302.26 |
| | Non-Litigation | Partner | 564 | $450.00 | $590.97 | $725.00 | $595.19 | $547.95 | $535.07 |
| | | Associate | 657 | $275.00 | $335.00 | $430.00 | $361.08 | $326.78 | $329.15 |
| Phoenix, AZ | Litigation | Partner | 94 | $265.00 | $334.83 | $445.00 | $358.58 | $354.34 | $350.63 |
| | | Associate | 64 | $180.00 | $229.75 | $305.79 | $246.06 | $243.55 | $243.71 |
| | Non-Litigation | Partner | 149 | $279.00 | $360.00 | $445.97 | $374.58 | $357.35 | $360.92 |
| | | Associate | 92 | $216.07 | $250.00 | $286.25 | $251.51 | $249.63 | $248.04 |
| Pittsburgh, PA | Litigation | Partner | 119 | $300.00 | $475.00 | $575.00 | $455.14 | $464.44 | $438.23 |
| | | Associate | 163 | $197.51 | $304.48 | $348.75 | $295.47 | $288.11 | $295.39 |
| | Non-Litigation | Partner | 181 | $380.00 | $495.00 | $585.00 | $491.09 | $467.77 | $449.52 |
| | | Associate | 248 | $251.63 | $311.68 | $361.83 | $316.87 | $292.80 | $282.40 |
| Portland, ME | Litigation | Partner | 25 | $200.00 | $310.00 | $373.46 | $313.77 | $314.59 | $293.42 |
| | | Associate | 13 | $180.00 | $200.00 | $225.00 | $217.06 | $220.13 | $215.63 |
| | Non-Litigation | Partner | 39 | $204.47 | $315.00 | $356.24 | $302.24 | $274.91 | $279.51 |
| | | Associate | 16 | $160.00 | $195.00 | $227.00 | $204.47 | $191.64 | $201.49 |
| Portland, OR | Litigation | Partner | 95 | $298.00 | $370.00 | $428.00 | $366.97 | $369.13 | $361.58 |
| | | Associate | 76 | $220.00 | $262.00 | $312.08 | $266.70 | $252.32 | $245.35 |
| | Non-Litigation | Partner | 111 | $320.00 | $377.41 | $445.50 | $386.02 | $378.82 | $365.08 |
| | | Associate | 145 | $224.00 | $250.00 | $301.28 | $260.40 | $258.37 | $248.38 |
| Providence, RI | Litigation | Partner | 15 | $175.00 | $185.00 | $260.00 | $217.43 | $294.19 | $313.69 |
| | | Associate | 17 | $175.00 | $195.00 | $235.00 | $198.19 | $175.19 | $180.38 |
| | Non-Litigation | Partner | 17 | $250.00 | $330.00 | $425.00 | $365.51 | $310.30 | $320.22 |
| | | Associate | 20 | $142.50 | $181.75 | $225.00 | $190.93 | $198.88 | $194.14 |
| Raleigh, NC | Litigation | Partner | 34 | $250.00 | $329.00 | $380.00 | $331.29 | $346.80 | $334.52 |
| | | Associate | 19 | $165.00 | $205.00 | $280.88 | $222.64 | $221.72 | $229.04 |
| | Non-Litigation | Partner | 53 | $300.00 | $360.00 | $454.50 | $384.13 | $347.93 | $344.88 |
| | | Associate | 26 | $225.00 | $265.00 | $294.01 | $265.41 | $242.86 | $231.58 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# Section I: High-Level Data Cuts

## Cities
By Matter Type

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| | | | | **2015—Real Rates for Partners and Associates** | | | **Trend Analysis (Mean)** | | |
| Reno, NV | Litigation | Partner | 7 | $225.00 | $302.66 | $350.00 | $292.82 | $296.26 | $295.89 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $230.72 | $221.89 |
| | Non-Litigation | Partner | 10 | $300.00 | $362.50 | $425.00 | $370.93 | $375.76 | $368.91 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $266.46 | $251.65 |
| Richmond, VA | Litigation | Partner | 75 | $250.00 | $348.47 | $472.00 | $380.91 | $411.80 | $366.14 |
| | | Associate | 95 | $200.00 | $295.00 | $346.00 | $284.22 | $275.85 | $259.28 |
| | Non-Litigation | Partner | 104 | $372.50 | $550.00 | $675.00 | $527.01 | $470.76 | $470.24 |
| | | Associate | 127 | $275.00 | $330.00 | $385.00 | $336.37 | $328.18 | $319.16 |
| Riverside, CA | Non-Litigation | Partner | 21 | $290.00 | $300.00 | $300.00 | $305.84 | $274.58 | $268.34 |
| | | Associate | 7 | $220.00 | $280.00 | $300.00 | $266.81 | $259.40 | n/a |
| Rochester, NY | Litigation | Partner | 17 | $215.00 | $320.59 | $370.00 | $306.52 | $333.18 | $322.36 |
| | | Associate | 18 | $175.00 | $225.00 | $250.00 | $212.63 | $220.79 | $212.17 |
| | Non-Litigation | Partner | 19 | $280.00 | $354.72 | $390.00 | $340.85 | $329.27 | $307.21 |
| | | Associate | 9 | $175.00 | $280.00 | $305.00 | $246.23 | $241.51 | $225.79 |
| Sacramento, CA | Litigation | Partner | 27 | $285.00 | $327.86 | $510.67 | $403.83 | $365.52 | $346.67 |
| | | Associate | 45 | $236.98 | $250.00 | $269.81 | $274.53 | $251.85 | $246.21 |
| | Non-Litigation | Partner | 29 | $323.08 | $400.00 | $571.50 | $456.08 | $428.81 | $454.24 |
| | | Associate | 33 | $250.00 | $295.00 | $350.00 | $333.14 | $298.96 | $338.48 |
| Salt Lake City, UT | Litigation | Partner | 55 | $225.00 | $300.21 | $400.00 | $321.26 | $312.24 | $307.85 |
| | | Associate | 12 | $165.00 | $195.00 | $212.81 | $191.97 | $198.52 | $212.22 |
| | Non-Litigation | Partner | 61 | $275.00 | $320.00 | $395.00 | $339.96 | $320.69 | $320.16 |
| | | Associate | 41 | $178.50 | $204.00 | $300.00 | $244.13 | $355.12 | $311.65 |
| San Antonio, TX | Litigation | Partner | 13 | $225.00 | $256.50 | $325.00 | $276.99 | $322.61 | $356.80 |
| | | Associate | 7 | $195.00 | $225.00 | $225.00 | $207.14 | $239.90 | $243.45 |
| | Non-Litigation | Partner | 7 | $325.00 | $325.00 | $350.00 | $337.63 | $374.31 | $391.56 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $269.53 | $252.65 |
| San Diego, CA | Litigation | Partner | 119 | $265.00 | $380.00 | $603.00 | $454.92 | $442.48 | $436.54 |
| | | Associate | 113 | $185.00 | $245.00 | $325.00 | $282.07 | $277.44 | $282.92 |
| | Non-Litigation | Partner | 115 | $325.00 | $465.30 | $725.00 | $514.53 | $525.35 | $512.33 |
| | | Associate | 91 | $187.59 | $285.00 | $440.00 | $331.82 | $346.16 | $353.42 |
| San Francisco, CA | Litigation | Partner | 358 | $324.57 | $530.00 | $730.00 | $543.73 | $545.03 | $552.27 |
| | | Associate | 339 | $235.00 | $323.00 | $464.31 | $366.35 | $365.45 | $366.44 |
| | Non-Litigation | Partner | 429 | $457.07 | $625.41 | $794.00 | $636.51 | $634.35 | $634.57 |
| | | Associate | 337 | $300.00 | $400.00 | $530.00 | $429.57 | $417.84 | $413.06 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# Section I: **High-Level Data Cuts**

## Cities
By Matter Type

| | | | | 2015—Real Rates for Partners and Associates | | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|---|---|
| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | | 2015 | 2014 | 2013 |
| San Jose, CA | Litigation | Partner | 67 | $560.00 | $717.83 | $849.47 | | $715.50 | $630.98 | $681.60 |
| | | Associate | 45 | $260.00 | $375.00 | $552.50 | | $389.22 | $388.16 | $421.07 |
| | Non-Litigation | Partner | 196 | $550.00 | $761.27 | $898.66 | | $750.41 | $676.35 | $671.46 |
| | | Associate | 149 | $285.00 | $375.00 | $555.00 | | $439.72 | $422.38 | $429.60 |
| San Juan, PR | Litigation | Partner | 30 | $175.00 | $191.66 | $247.50 | | $208.56 | $207.03 | $207.02 |
| | | Associate | 39 | $125.00 | $140.00 | $150.00 | | $137.47 | $143.02 | $147.89 |
| | Non-Litigation | Partner | 46 | $165.00 | $213.26 | $250.00 | | $208.31 | $224.64 | $226.91 |
| | | Associate | 18 | $130.00 | $144.86 | $160.00 | | $149.95 | $148.72 | $150.69 |
| Savannah, GA | Litigation | Partner | 8 | $200.00 | $250.00 | $282.50 | | $245.63 | $258.75 | $245.85 |
| | | Associate | 7 | $180.00 | $190.00 | $200.00 | | $191.51 | n/a | $176.17 |
| | Non-Litigation | Partner | 8 | $150.00 | $287.50 | $355.00 | | $265.00 | $242.00 | $268.90 |
| | | Associate | n/a | n/a | n/a | n/a | | n/a | n/a | $181.52 |
| Seattle, WA | Litigation | Partner | 142 | $325.00 | $400.37 | $490.00 | | $416.19 | $417.47 | $383.52 |
| | | Associate | 98 | $234.70 | $274.78 | $351.50 | | $296.82 | $285.98 | $259.73 |
| | Non-Litigation | Partner | 286 | $370.00 | $450.00 | $512.76 | | $456.29 | $429.57 | $418.88 |
| | | Associate | 189 | $247.23 | $290.00 | $352.00 | | $315.98 | $297.30 | $282.08 |
| St. Louis, MO | Litigation | Partner | 142 | $235.00 | $328.25 | $416.00 | | $331.70 | $341.18 | $342.68 |
| | | Associate | 134 | $165.00 | $184.00 | $248.53 | | $208.66 | $218.47 | $215.10 |
| | Non-Litigation | Partner | 122 | $320.00 | $405.23 | $473.18 | | $395.22 | $382.49 | $353.74 |
| | | Associate | 94 | $180.00 | $226.53 | $270.00 | | $236.98 | $224.02 | $226.49 |
| Syracuse, NY | Litigation | Partner | 29 | $210.00 | $239.63 | $275.00 | | $251.20 | $241.80 | $221.39 |
| | | Associate | 23 | $140.00 | $175.00 | $185.00 | | $163.50 | $173.04 | $177.86 |
| | Non-Litigation | Partner | 23 | $234.00 | $285.00 | $332.00 | | $284.07 | $285.38 | $287.52 |
| | | Associate | n/a | n/a | n/a | n/a | | n/a | $203.95 | $199.77 |
| Tallahassee, FL | Litigation | Partner | 20 | $310.00 | $367.50 | $485.00 | | $416.00 | $366.87 | $419.78 |
| | | Associate | 12 | $230.00 | $275.00 | $295.00 | | $267.73 | $269.96 | $259.12 |
| | Non-Litigation | Partner | 22 | $335.00 | $432.50 | $500.00 | | $446.23 | $387.40 | $406.39 |
| | | Associate | n/a | n/a | n/a | n/a | | n/a | $272.92 | $293.04 |
| Tampa, FL | Litigation | Partner | 83 | $275.00 | $365.00 | $425.00 | | $360.65 | $342.42 | $337.78 |
| | | Associate | 45 | $195.00 | $230.00 | $280.00 | | $242.06 | $234.57 | $229.99 |
| | Non-Litigation | Partner | 62 | $295.00 | $407.50 | $520.00 | | $414.10 | $397.60 | $386.56 |
| | | Associate | 43 | $208.64 | $283.50 | $315.00 | | $272.03 | $244.49 | $248.55 |
| Trenton, NJ | Litigation | Partner | 28 | $410.00 | $494.64 | $548.26 | | $492.06 | $455.48 | $417.16 |
| | | Associate | 21 | $278.44 | $350.00 | $400.00 | | $354.85 | $316.37 | $292.51 |
| | Non-Litigation | Partner | 37 | $400.00 | $475.00 | $510.00 | | $469.47 | $446.42 | $444.89 |
| | | Associate | 27 | $270.00 | $325.00 | $415.00 | | $337.45 | $313.03 | $316.37 |

©2016 CEB. All rights reserved. GCR166424PR

wkelmsolutions.com

cebglobal.com

# Section I: High-Level Data Cuts

## Cities
By Matter Type

| | | | | 2015—Real Rates for Partners and Associates | | | Trend Analysis (Mean) | | |
|---|---|---|---|---|---|---|---|---|---|
| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2015 | 2014 | 2013 |
| Tulsa, OK | Litigation | Partner | 14 | $221.00 | $277.50 | $316.00 | $266.41 | $272.31 | $283.11 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $180.98 | n/a |
| | Non-Litigation | Partner | 13 | $270.00 | $315.00 | $340.00 | $308.12 | $280.91 | $269.43 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| Virginia Beach, VA | Litigation | Partner | 14 | $300.00 | $340.00 | $400.00 | $357.49 | $331.93 | $337.72 |
| | | Associate | 14 | $175.00 | $212.50 | $306.64 | $232.71 | n/a | $222.38 |
| | Non-Litigation | Partner | 12 | $275.00 | $345.00 | $448.50 | $369.78 | $341.75 | $332.73 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $194.36 | $187.27 |
| Washington, DC | Litigation | Partner | 1,020 | $589.60 | $702.63 | $828.75 | $702.34 | $675.27 | $656.66 |
| | | Associate | 893 | $340.00 | $430.00 | $535.00 | $446.91 | $433.68 | $414.84 |
| | Non-Litigation | Partner | 1,760 | $584.54 | $705.00 | $838.72 | $719.96 | $684.71 | $667.68 |
| | | Associate | 1,579 | $331.81 | $425.00 | $535.05 | $449.37 | $424.14 | $413.15 |
| Winston-Salem, NC | Litigation | Partner | 9 | $325.00 | $395.00 | $490.00 | $397.00 | $333.96 | $319.79 |
| | | Associate | 7 | $185.00 | $212.00 | $247.50 | $223.03 | $255.59 | $248.75 |
| | Non-Litigation | Partner | 9 | $300.00 | $395.00 | $435.00 | $365.78 | $335.58 | $389.22 |
| | | Associate | n/a | n/a | n/a | n/a | n/a | $317.52 | $329.25 |

©2016 CEB. All rights reserved. GCR166424PR