1  Annette D. Kirkham (SBN: 217958)
   annettek@lawfoundation.org
2  Nadia Aziz (SBN: 252966)
   nadia.aziz@lawfoundation.org
3  Matthew Warren (SBN: 305422)
   matthew.warren@lawfoundation.org
4  LAW FOUNDATION OF SILICON VALLEY
   152 North Third Street, 3rd Floor
5  San Jose, CA 95112
   Telephone: (408) 280-2411
6  Facsimile: (408) 293-0106

7  Robert A. Julian (SBN: 88469)
   rjulian@winston.com
8  Corey D. Attaway (SBN: 306752)
   cattaway@winston.com
9  WINSTON & STRAWN LLP
   101 California Street, 35th Floor
10 San Francisco, CA 94111-5840
   Telephone: (415) 591-1000
11 Facsimile: (415) 591-1400

12 Attorneys for Plaintiffs DOMENICA LEWIS,
   JERROLD LEWIS, E.L., S.L., AND PROJECT SENTINEL

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DOMENICA LEWIS et al.<br><br>Plaintiffs,<br><br>v.<br><br>SILVERTREE MOHAVE HOMEOWNERS' ASSOCIATION, INC., et al.<br><br>Defendants. | Case No. 3:16-cv-03581-WHA<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date: November 16, 2017<br>Time: 8:00 a.m.<br>Courtroom: 8, 19th Floor<br>Judge: Honorable William Alsup |

# **TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 1 |
| | A. Plaintiffs' Motion Was Filed In Full Compliance With This Court's Directives And The Parties' Settlement Agreement. | 1 |
| | B. The Billing Rates Proposed By Winston And The Law Foundation Are In Line With The Prevailing Market Rate In The Bay Area For Work On Complex Civil Rights Cases By Lawyers Of Reasonably Comparable Skill, Experience, and Reputation. | 4 |
| | 1. The hourly rates for Winston attorneys are comparable to the prevailing market rate for work in civil rights cases and class actions performed by other peer firms in the Bay Area. | 5 |
| | 2. The hourly rates that the Law Foundation requests have recently been declared reasonable for work performed in similar civil rights actions by two courts in this District. | 6 |
| | C. The Hours Expended by Winston and the Law Foundation Were Necessary To Rid The Complex Of Rules Discriminating Against Families With Children. | 7 |
| | D. Winston and the Law Foundation's Time Entries Contain Sufficient Detail To Allow For Meaningful Evaluation Of Their Reasonableness By The Court. | 10 |
| | E. The Time Entries That Are In Fact Block Billed Contain Enough Specificity As To Individual Tasks So That Their Reasonableness Can Be Effectively Evaluated By The Court. | 10 |
| | F. The Case Was Appropriately Staffed By The Law Foundation And Winston, Both Of Whom Exercised Independent Billing Judgment To Eliminate Unnecessary And Duplicative Tasks. | 12 |
| | G. Using A Percentage-Of-Recovery Method To Cross-Check The Requested Lodestar Fee Award Is Unhelpful As It Does Not Account For The Meaningful Injunctive Relief That The Class Received. | 13 |
| | H. Although Plaintiffs' Contend That Each Task Performed For Which It Now Seeks Reimbursement Was Necessary To Succeed In This Case, Plaintiffs Propose An Additional 5 Percent Reduction To Assist The Court. | 14 |
| III. | CONCLUSION | 14 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ave 6E Investments, LLC v. City of Yuma, Ariz.*,
 818 F.3d 493 (9th Cir. 2016) ..................................................................................................7

*Barjon v. Dalton*,
 132 F.3d 496 (9th Cir. 1997) ..................................................................................................5

*Blackwell v. Foley*,
 724 F. Supp. 2d 1068 (N.D. Cal. 2010) ..................................................................................6

*In re Bluetooth Prods. Liability Litig.*,
 654 F.3d 935 (9th Cir. 2011) .............................................................................................2, 13

*CBIA v. City of San Jose*,
 110CV167289 (Santa Clara Sup. Ct. 2015) ...........................................................................7

*Charlebois v. Angels Baseball LP*,
 993 F. Supp. 2d 1109 (C.D. Cal. 2012) ..................................................................................8

*Cotton v. City of Eureka*,
 889 F. Supp. 2d 1154 (N.D. Cal. 2012) ..................................................................................4

*Ferland v. Conrad Credit Corp.*,
 244 F.3d 1145 (9th Cir. 2001) ................................................................................................9

*Fischer v. SJB-P.D.*,
 214 F.3d 1115 (9th Cir. 2000) ..............................................................................................10

*G.F. v. Contra Costa County*,
 No. 13-cv-03667-MEJ, 2015 WL 7571789 (N.D. Cal. Nov. 25, 2015) ..................................5

*Garcia v. Resurgent Capital Servs., L.P.*,
 No. C-11-1253 EMC, 2012 WL 3778852 (N.D. Cal. Aug. 30, 2012) ..................................10

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod.'s Liab. Litig.*,
 55 F3d 768 (3d Cir. 1995)......................................................................................................2

*Guerrero v. California Dep't of Corr. & Rehab*,
 No. C 13-05671 WHA, 2016 WL 3360638 (N.D. Cal. June 16, 2016) .................................6

*Gutierrez v. Wells Fargo Bank, N.A.*,
 No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) .................................6

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ..............................................................................................13

*Harper v. Law Office of Harris & Zide LLP*,
　No. 15-cv-01114-HSG, 2017 WL 995215 (N.D. Cal. Mar. 15, 2017) ............................................. 6

*Hensley v. Eckerhart*,
　461 U.S. 424 (1983) ..................................................................................................................... 10

*Herson v. City of Richmond*,
　No. C 09-02516 PJH LB, 2012 WL 1189613 (N.D. Cal. Mar. 9, 2012), report and
　recommendation adopted, 2012 WL 1188898 (N.D. Cal. Apr. 6, 2012) ......................................... 4

*In re High-Tech Employee Antitrust Litig.*,
　No. 11-cv-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ........................................... 6

*Huynh v. Hous. Auth. of Cty. of Santa Clara*,
　14-cv-02367-LHK, 2017 WL 1050539 (N.D. Cal. Mar. 17, 2017) ........................................... 5, 6

*Ibrahim v. Dep't of Homeland Sec.*,
　No. C 06-00545 WHA, 2014 U.S. Dist. LEXIS 53239 (N.D. Cal. Apr. 15, 2014) ........................ 4

*Jackson v. City of Pittsburg*,
　No. C 09-01016 WHA, 2013 WL 3187326 (N.D. Cal. June 21, 2013) ........................................ 11

*Kakani v. Oracle Corp.*,
　No. C 06-06493 WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007) ..................................... 1-2

*Nitsch v. DreamWorks Animation SKG, Inc.*,
　No. 14-cv-04062-LHK, 2017 WL 2423161 (N.D. Cal. June 5, 2017) ........................................... 6

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
　114 F. Supp. 3d 819 (N.D. Cal. 2015) .......................................................................................... 10

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
　No. C 093329 CW 2016 WL 1255454 (N.D. Cal. Mar. 31, 2016) ......................................... 10-11

*In re Petition of Hill*,
　775 F.2d 1037 (9th Cir. 1985) ...................................................................................................... 13

*PQ Labs, Inc. v. Qi*,
　No. 12-0450 CW, 2015 WL 224970 (N.D. Cal. Jan. 16, 2015) ................................................... 10

*Prison Legal News v. Schwarzeneggar*,
　608 F.3d 446 (9th Cir. 2010) .......................................................................................................... 6

*Ridgeway v. Wal-Mart Stores Inc.*,
　No. 08-cv-05221-SI, 2017 WL 4071293 (N.D. Cal. Sept. 14, 2017) ........................................... 10

*Rosenfeld v. U.S. Dep't of Justice*,
　904 F. Supp. 2d 988 (N.D. Cal. 2012) ............................................................................................ 5

*Welch v. Metro. Life Ins. Co.*,
   480 F.3d 942 (9th Cir. 2007) ...................................................................................................5

**Rules**

Cɪᴠ. L.R. 54-5(a) ......................................................................................................................3, 4

Fᴇᴅ. R. Cɪᴠ. P. 23(e) ......................................................................................................................2

## I. INTRODUCTION

What is at stake in this case is an important public right involving children's health and safety. For over two years counsel for Plaintiffs worked to vindicate that right at the risk of non-payment, which it ultimately did via settlement with terms that not only provided for meaningful monetary compensation to all members of the settlement class, but also widespread injunctive relief that all but ensures similar discriminatory rules will never be in place at the Complex again. Given that the settlement terms inarguably result in an "alteration of the legal relationship of the parties" to the benefit of Plaintiffs, they are the "prevailing party" in this litigation entitled to reasonable attorney's fees and costs under the federal and state fee-shifting statutes through which they have asserted claims. Defendants do not contest this fact anywhere in their Opposition.

Rather, Defendants resort to arguments based on perceived technicalities and a misleading expert report to support their claims that the reimbursement to which Plaintiffs' counsel is entitled should either be dismissed entirely or reduced by almost seventy percent. These arguments, however, run counter to this Court's express directives, the parties' settlement agreement, governing law, and the realities of class action litigation. For these reasons they fall flat.

At bottom, counsel for Plaintiffs has complied with this Court's orders and submitted sufficient documentation to justify the tasks and fees that were necessary to protect an important public right and achieve a positive result for a large group of vulnerable people. Counsel for Plaintiffs thus respectfully requests that the Court enter an order awarding fees and costs as detailed in its papers, or in the alternative, an amount otherwise deemed appropriate by the Court.

## II. ARGUMENT

### A. Plaintiffs' Motion Was Filed In Full Compliance With This Court's Directives And The Parties' Settlement Agreement.

Since the outset of this case the Court has emphasized its concerns regarding "the potential for class action lawsuits to be 'a vehicle for collusive settlements that primarily serve the interests of defendants—by granting expansive protection from lawsuits—and of plaintiffs' counsel—by generating large fees gladly paid by defendants as a quid pro quo for finally disposing of any troublesome claims." *Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774, at *1, n.

1 (N.D. Cal. June 19, 2007) (J. Alsup) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod.'s Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995)). In an effort to avoid any appearance of collusion or other impropriety, the Court has consistently laid down very strict rules regarding communications and agreements between the parties related to the settlement of class claims pre-certification. *See In re Bluetooth Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (Pre-class certification settlements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."). For example, the Court barred the parties from engaging in settlement negotiations "until after Class Certification is determined" (Dkt. 43, Civil Minutes) and ordered the parties to refrain from private mediation altogether, referring the parties to Magistrate Judge Jacqueline C. Corley for mediation and settlement (Dkt. 46, Case Management Scheduling Order, ¶ 18). Counsel for Plaintiffs have been careful to heed the Court's concerns and comply with its directives, seeking express permission from the Court prior to engaging in any pre-class certification settlement discussions with Defendants (Dkt. 56, Order Appointing Interim Class Counsel), and ultimately settling the case with the assistance of Magistrate Judge Corley (Dkt. 81, Minute Entry).

Perhaps most important, the Court has made clear that "[t]o avoid collusive settlements, the Court prefers that all settlements avoid any agreement as to attorney's fees and leave that to the judge." Dkt. 19, Notice Regarding Factors To Be Evaluated For Any Proposed Class Settlement, p. 8. Again, mindful of the Court's concerns here, counsel for Plaintiffs expressly negotiated a provision with Defendants in their settlement agreement which provides that any reimbursement request for attorney's fees by Plaintiffs' counsel in connection with their work on this case would be submitted directly to the Court for resolution:

> "**c. Attorneys' Fees and Costs**
>
> Along with Plaintiffs' motion for final approval of the settlement, Plaintiffs will file a motion for separate award of attorney's fees and costs with the Court. The final amount of fees and costs shall be determined by the Court and will be in addition to any Settlement Sum and other amounts enumerated in *b. supra.*"

Dkt. 83-1, Settlement and Release Agreement, 2.c. The Court granted preliminary approval of the class action settlement on June 15, 2017. Dkt. No. 84 (Order Granting Preliminary Approval of

Class Action Settlement).  In compliance with this Court's directives and the parties' settlement agreement, Plaintiffs filed their Motion for Attorneys' Fees and Costs (Dkt. No. 95) along with their Motion for Final Approval of Class Settlement (Dkt. No. 94) on September 21, 2017.

On September 26, 2017, Lisa Roberts, counsel for Defendants, contacted Plaintiffs' counsel in connection with the recently filed Motion for Attorneys' Fees and Costs, requesting an "agreement to continue hearing on the motion for 90 days so that all documentation can be provided and analyzed." Dkt. No. 99-1, ¶ 14 (Kirkham Declaration).  Counsel for Plaintiffs explained that Plaintiffs were not inclined to agree to Defendants' request given that the current briefing schedule was previously agreed to by the parties and memorialized in the settlement agreement preliminarily approved by the Court. *Id.* at ¶ 15.  On October 3rd, the Court resolved the dispute ordering hearing on the motion continued for three weeks, and instructing that if "defendants seek discovery into plaintiffs' attorneys fees, they shall provide their own detailed time records covering the same relevant periods and tasks for plaintiffs to inspect." Dkt. No. 100 (Order).

Despite the Court's directives and the parties' settlement agreement covering the issue, the Defendants now argue here that Plaintiffs' failure to meet and confer with Defendants prior to the filing of their Motion warrants its dismissal under Local Rule 54-5(a).  Specifically, Defendants contend that if such communications had occurred, "Counsel could have had the opportunity to discuss and significantly whittle down the issues, or at least the challenged billing entries, that the Court would have to address in the subject fee and cost motion, conserving judicial resources." Opp'n at 5.[1]  In other words, Defendants believe that certain agreements regarding the scope and breadth of the attorney's fees and costs sought by Plaintiffs could have been made without oversight from the Court.  This, however, is precisely the type of conduct that often taints class action settlements with hints of collusion.  *See* McLaughlin on Class Action § 6.4 (12th ed. Revised 2015) ("Courts also have identified a special danger of collusiveness when the attorney fees, ostensibly stemming from a separate agreement, were negotiated simultaneously with the settlement.") (internal citation and quotation omitted).  Presumably, this is why the Court "prefers that all settlements avoid

---

[1] Citations to "Opp'n" refer to Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs.  Dkt. No. 102.

*any agreement* as to attorney's fees and ***leave that to the judge***." Dkt. 19, Notice Regarding Factors To Be Evaluated For Any Proposed Class Settlement, p. 8 (emphasis added). Plaintiffs' counsel has thus complied with the Court's standing orders and the local rules by avoiding any agreement on the amount of counsel's fees, and limiting their meet and confer discussions to the parties' discovery dispute on the fee motion, which the Court resolved by order on October 3, 2017.

The cases cited by Defendants provide no support for their argument that Plaintiffs' motion should be dismissed for failing to meet and confer under Local Rule 54-5(a). These cases are single or double plaintiff cases that were resolved through either summary judgment or trial—not class actions that were resolved by settlement—where special concerns regarding collusion do not exist like they do here.[2] *See* Opp'n at 4-5 (citing *Ibrahim v. Dep't of Homeland Sec.*, No. C 06-00545 WHA, 2014 U.S. Dist. LEXIS 53239, at *15 (N.D. Cal. Apr. 15, 2014) (single plaintiff case resolved through trial) and *Herson v. City of Richmond*, No. C 09-02516 PJH LB, 2012 WL 1189613, at *5 (N.D. Cal. Mar. 9, 2012), report and recommendation adopted, 2012 WL 1188898, at *1 (N.D. Cal. Apr. 6, 2012) (double plaintiff case resolved by summary judgment). Defendants thus provide no relevant support for a position that runs counter to this Court's consistent directives and the parties' settlement agreement.

> **B. The Billing Rates Proposed By Winston And The Law Foundation Are In Line With The Prevailing Market Rate In The Bay Area For Work On Complex Civil Rights Cases By Lawyers Of Reasonably Comparable Skill, Experience, and Reputation.**

The determination of a reasonable hourly rate "involves examining the prevailing market rates in the community charged for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1167 (N.D. Cal. 2012). The "relevant community" for purposes of determining the reasonable hourly rate is the district in

---

[2] In fact, Civil Local Rule 54-5(a) on its face does not even govern motions for awards of attorney's fees sought following a settlement agreement, let alone a class action settlement where the risks of collusion are high. The Rule is framed in the context of matters resolved via trial or summary judgment, stating in relevant part that "motions for awards of attorney's fees by the Court must be served and filed within 14 days of ***entry of judgment*** by the District Court." Civ. L.R. 54-5(a) (emphasis added). Here, there is no entry of judgment, only a settlement agreement which already governs the timing and manner that attorney's fees are to be determined. Consequently, the related meet and confer requirement of Civil Local Rule 54-5(a) does not apply.

which the lawsuit proceeds. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).

### 1. The hourly rates for Winston attorneys are comparable to the prevailing market rate for work in civil rights cases and class actions performed by other peer firms in the Bay Area.

As Defendants concede, the determination of a reasonable hourly rate is "established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." Opp'n at 6 (quoting *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007)). The billing rates proposed by Winston here are precisely that, what Winston charges its paying clients for similar work performed by the associates and partners that performed work on this case. *See* Dkt. No. 95-4, ¶¶ 4-7 (Attaway Declaration); *see also* Dkt. No. 75-4, ¶ 7 (Attaway Declaration). Moreover, courts in this district have also found rates similar to those requested by Winston—an internationally recognized tier-one law firm (*see* Dkt. No. 95-4, ¶ 3)—as reasonable in civil rights cases that are highly comparable to the claims and issues here. This is important as "[c]omparable fee awards by courts are competent evidence for determining the reasonableness of hourly rates." *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1003 (N.D. Cal. 2012). For example, in *Huynh v. Hous. Auth. of Cty. of Santa Clara*, Judge Lucy Koh just recently approved the rates of several Fish & Richardson P.C. attorneys for their work on a federal fair housing class action, which included rates ranging from $676-$862 for partners, and $329-530 for associates. 14-cv-02367-LHK, 2017 WL 1050539, at *6 (N.D. Cal. Mar. 17, 2017). Similarly, in *G.F. v. Contra Costa County*, a federal civil rights class action that was resolved through settlement, Magistrate Judge Maria-Elena James approved rates of $845 to $975 for senior litigators, and $210 to $700 for other attorneys as reasonable in this District. No. 13-cv-03667-MEJ, 2015 WL 7571789, at *13-14 (N.D. Cal. Nov. 25, 2015).

Also, despite what Defendants' purported billing expert suggests (*see* Knapton Decl., ¶¶ 24-34),[3] "Plaintiff's attorneys are not limited to [comparing] only the rates charged or awarded in [fair housing matters]. Instead, they are entitled to the rates charged by attorneys handling similarly

---

[3] All citations to the "Knapton Decl." are to the Declaration of Gerald G. Knapton in Support of Defendants' Opposition to Plaintiffs' Motion for Attorney Fees. Dkt. No. 102-3.

complex federal cases in other fields as well, including, when appropriate, class actions." *Guerrero v. California Dep't of Corr. & Rehab*, No. C 13-05671 WHA, 2016 WL 3360638, at *9 (N.D. Cal. June 16, 2016) (citing *Prison Legal News v. Schwarzeneggar*, 608 F.3d 446, 455 (9th Cir. 2010) (J. Alsup). Courts in this District evaluating the reasonableness of hourly rates in other class actions have approved rates comparable to those requested by Winston here. *In re High-Tech Employee Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (approving hourly rate ranging from $490 to $975 for partners and $310 to $800 for associates in federal class action resolved through settlement); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (approving rates of between $475 to $975 for partners and $300 to $490 for associates in class action); *Nitsch v. DreamWorks Animation SKG, Inc.*, No. 14-cv-04062-LHK, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (approving rates of $870 and $1200 for lead attorneys and $275 to $750 for associates in class action resolved through settlement).

### 2. The hourly rates that the Law Foundation requests have recently been declared reasonable for work performed in similar civil rights actions by two courts in this District.

Defendants ignore that two courts located in this District have found the rates currently requested by the Law Foundation to be reasonable and justified for work performed in civil rights matters that are highly analogous to the case here. Such evidence is highly persuasive in determining whether the requested rates are reasonable. *See, e.g., Harper v. Law Office of Harris & Zide LLP*, No. 15-cv-01114-HSG, 2017 WL 995215, at *7 (N.D. Cal. Mar. 15, 2017); *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1083-84 (N.D. Cal. 2010).

Earlier this year, in a separate fair housing matter, Judge Lucy Koh approved the following rates for each of the Law Foundation attorneys that have performed work in this case: Annette Kirkham ($660), Nadia Aziz ($545), Thomas Zito ($415), and Matthew Warren ($325). *Huynh*, 2017 WL 1050539, at *5 (N.D. Cal. Mar. 17, 2017). These are precisely the same rates that the Law Foundation has requested here. Mot. at 6.[4] Similarly, the Honorable Mark Pierce of Santa Clara

---

[4] All citations to "Mot." are to Plaintiffs' Motion for Attorneys' Fees and Costs. Dkt. No. 95.

County Superior Court approved these billing rates as well in connection with the Law Foundation's attorney fee motion in another case, *CBIA v. City of San Jose*, 110CV167289 (Santa Clara Sup. Ct.). Dkt. 75, ¶ 4 (Zito Declaration).

### C. The Hours Expended by Winston and the Law Foundation Were Necessary To Rid The Complex Of Rules Discriminating Against Families With Children.

Regardless of the Law Foundation's expertise in fair housing matters, fair housing cases involving discriminatory rules directed at children are never "standard," as Defendants suggest. Opp'n at 8. Rather, they involve hard-to-detect injury, sensitive issues, and important rights that the public has deemed worthy of protection. *Ave 6E Investments, LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 503 (9th Cir.) ("Today, the policy to provide fair housing nationwide announced in the FHA remains as important as ever."). This is why Defendants' Opposition, which goes to great pains to critique the amount of time counsel for Plaintiffs spent to investigate and vindicate these civil rights for which it is responsible for violating, is troubling.

Defendants first take issue with the "number of hours expended on investigation," calling it "exceptionally high, even just at a glance." Opp'n at 8. But one look at the actual entries—rather than Defendants' expert's self-selected categorical lumping—demonstrates that each task was warranted and necessary to achieve the desired result in this case. *See* Knapton Decl., Ex. 3. For example, given the nature of class actions, many of the tasks under this category involved corresponding and coordinating with potential plaintiffs to determine if a class was even viable. *See, e.g.*, *id.* at Entry 5 ("Initial interview and site visit with client"); *id.* at Entry 10 ("Email to A.M. and V.J. re making an appointment to talk about incident"); *id.* at Entry 188 ("Conf. Call with co-counsel re. Lewis sale and need for more plaintiffs"). Also, this category captures detailed research that was necessary prior to filing the complaint given that many of the statutes under which Plaintiffs brought claims have very specific pre-suit requirements. *See, e.g., id.* at 171 ("Research Davis-Stirling pre-suit ADR requirements"); *id.* at Entry 176 ("Conference with C. Attaway re ADR requirements and notice issues under the statutes, and review memorandum re same"). Each of these tasks were important to Plaintiffs' ultimate success in this case. Finally, the "investigation" category utilized by Defendants' billing expert is overly broad, encompassing tasks that relate specifically to other stages

of litigation, thus skewing the numbers to favor Defendants' arguments. *See, e.g.*, *id.* at Entry 445 (categorizing as "investigation" the following time entry relating to class certification: "Create damages assessment sheet analyzing potential damages for identified class members; conduct review of initial disclosures for information to use in damages assessment sheet").

The Complaint itself, which Defendants characterize as containing "relatively standard housing discrimination causes of action" (Opp'n at 8), was highly fact-specific and required careful review of hundreds of documents, largely made up of monthly newsletters distributed to the tenants of the Complex which had incorporated the discriminatory rules since 2000. Thus, much of the document review that was necessary to effectively litigate this case was done upfront, rather than during discovery. *See, e.g.*, Knapton Decl., Ex. 3 at Entry 6 ("Review copious client documents and indexing"); *id.* at Entry at 153 ("Strategize re complaint; review and analyze documents"). Moreover, the Complaint is reflective of several strategic decisions with respect to the claims alleged that Plaintiffs and their counsel needed to vet at the outset of this case. *Id.* at Entry 161 ("Research elements for each cause of action asserted in complaint"); *id.* at 242 ("Conduct research re causes of action to incorporate into complaint"). The time expended drafting the Complaint was evidently well spent, as Defendants did not even seek to challenge it by motion to dismiss. *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1124-25 (C.D. Cal. 2012) ("Frankly, the Court suspects that several of the complaints it dismisses every week fail to state a claim because attorneys spend too *little* time researching the grounds for their case; the Court sees no reason why it should punish the attorney that researches the law and facts before putting paper to pen.") (emphasis original).

Defendants likewise claim that the hours spent by counsel for Plaintiffs on settlement and class certification-related tasks were "excessive" and "unreasonable." Opp'n at 8-9. With respect to settlement, Plaintiffs from the outset of the case made a concerted effort at settlement given the unique situation presented where members of the putative class, as members of the Association,[5] would potentially be forced to fund the defense through special assessments imposed by the Board. Plaintiffs thus separately petitioned the Court for appointment of interim class counsel in order to

---

[5] "Association" refers to the Silvertree Mojave Homeowner's Association.

8

1 gain permission to begin settlement pre-class certification (Dkt. Nos. 49-52) and participated in
2 several successive settlement conferences with Magistrate Judge Corley (Dkt Nos. 61, 64-65, 67,
3 81). All of these efforts were necessary to reach a quick and fair resolution for the class. Also,
4 contrary to what Defendants represent, Plaintiff Project Sentinel did make significant pre-litigation
5 efforts to mediate a settlement in this case, which were ultimately unsuccessful. Dkt. No. 1, ¶ 93
6 (Complaint). Following the mediation, Defendants distributed a letter to all members of the
7 Association impermissibly disclosing confidential mediation information. *Id.* at ¶ 94. Moreover,
8 class certification was belabored with unnecessary document review and case strategy given
9 Defendants' failure to timely produce several thousand documents that were highly relevant to
10 establishing a class. *See* Dkt. Nos. 68-72.

11 Defendants provide "by way of comparison" their purported total time spent on this case at
12 348.7 hours. Opp'n at 9. Yet, Defendants provide no documentation to support that these hours are
13 accurate, as Plaintiffs do here. Moreover, the difference in hours expended can be explained by the
14 fact that Plaintiffs competently and aggressively litigated this case given that a very important public
15 right was at stake. The tasks Plaintiffs undertook which were necessary to achieve the result here
16 included conducting a pre-lawsuit investigation, drafting and filing a complaint, serving discovery,
17 reviewing thousands of documents, taking depositions, petitioning for appointment of interim class
18 counsel, briefing two class certification motions, participating in several settlement conferences with
19 Magistrate J. Corley, drafting the settlement agreement, drafting the motion for approval of
20 settlement, and handling administration of the class. Defendants, "by way of comparison," did not
21 file a motion to dismiss, served no discovery, took no depositions, were not required to petition the
22 Court for interim appointment of class counsel, filed only one opposition to class certification, and
23 did not handle anything related to administration of the settlement class. It is for this reason the
24 Ninth Circuit has cautioned that "[c]omparison of the hours spent in particular tasks by the attorney
25 for the party seeking fees and by the attorney for the opposing party, therefore, does not necessarily
26 indicate whether the hours expended by the party seeking fees were excessive . . . Rather, any such
27 comparison must carefully control for factors such as those mentioned, as well as for the possibility
28 that the prevailing party's attorney—who, after all, did prevail—spent more time because she did

better work." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001).

**D. Winston and the Law Foundation's Time Entries Contain Sufficient Detail To Allow For Meaningful Evaluation Of Their Reasonableness By The Court.**

Contrary to Defendants' assertions (Opp'n at 10-11), Plaintiffs have more than satisfied their burden of submitting sufficiently detailed billing records. *Fischer v. SJB-P.D.,* 214 F.3d 1115, 1121 (9th Cir. 2000) ("counsel is not required to record in great detail how each minute of his time was expended") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, n. 12 (1983)). In support of their position Defendants point to entries in Plaintiffs' time records, such as "work on complaint" and "phone call to Project Sentinel," and argue that these and other billing entries are too vague for the Court to evaluate their reasonableness. Opp'n at 10. However, courts consistently find billing entries with almost exactly the same amount of detail as sufficient for effective evaluation and therefore enough to support the full amount of attorney's fees requested. *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 114 F. Supp. 3d 819, 832 (N.D. Cal. 2015) (noting that "[e]ven short descriptions such as 'Draft complaint' permit the court to fairly evaluate the reasonableness of time expended."). Thus, Plaintiffs arguments here are without merit and should be rejected.

**E. The Time Entries That Are In Fact Block Billed Contain Enough Specificity As To Individual Tasks So That Their Reasonableness Can Be Effectively Evaluated By The Court.**

Defendants' characterization of block billing[6] as *per se* "impermissible" is inaccurate (Opp'n at 11), as courts in this district have repeatedly held that block billing is appropriate so long as the "instances of alleged block-billing contain enough specificity as to individual tasks to ascertain whether the amount of time spent performing them was reasonable." *Garcia v. Resurgent Capital Servs., L.P.*, No. C-11-1253 EMC, 2012 WL 3778852, at *8 (N.D. Cal. Aug. 30, 2012); *PQ Labs*, 2015 WL 224970, at *3 (declining to reduce a fee award due to block-billed entries because "Plaintiffs' time entries, though block-billed, contain sufficient detail to identify precisely the task accomplished."); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, No. C 093329 CW 2016 WL

---

[6] "Block billing is a time-keeping method where an attorney enters the total daily time spent working on a case, rather than itemizing the time spent on a specific task." *PQ Labs, Inc. v. Qi*, No. 12-0450 CW, 2015 WL 224970, at *3, n. 2 (N.D. Cal. Jan. 16, 2015).

1255454, at *6 (N.D. Cal. Mar. 31, 2016) (noting that "the Court agrees with Magistrate Judge Cousins' finding that the identified [block billed] entries 'contain enough specificity as to individual tasks to ascertain whether the amount of time spent performing them was reasonable.'"); *Ridgeway v. Wal-Mart Stores Inc.*, No. 08-cv-05221-SI, 2017 WL 4071293, at *7 (N.D. Cal. Sept. 14, 2017) (holding that "[t]he Court will not reduce plaintiffs' fees due to block billing" because "such time [was] reasonably billed to this case and therefore compensable."); *Jackson v. City of Pittsburg*, No. C 09-01016 WHA, 2013 WL 3187326, at *3 (N.D. Cal. June 21, 2013) (refusing to reduce fees due to block billing because "the time entries were sufficiently detailed to determine what tasks were performed.").

Here, the entries that Defendants characterize as being block billed are either not appropriately categorized as such, or contain enough detail for this Court to meaningfully evaluate their reasonableness. For example, Defendants characterize numerous time entries as block billed even though they involve description of only one task. *See, e.g.* Knapton Decl., Ex. 3 at Entry No. 149 ("Continue review and edits of initial complaint; forward suggested edits to team in preparation of meeting"); *id.* at Entry No. 475 ("Finalize 30(b)(6) deposition notice to Silvertree Mojave; forward 30(b)(6) deposition notice to C. Ramos for comment and review"); *id.* at Entry No. 477 ("Finalize 30(b)(6) deposition notice to Silvertree Mojave; forward 30(b)(6) deposition notice to C. Ramos for comment and review"). More importantly, though, is that those time entries which can accurately be characterized as block billed contain detailed descriptions of the tasks performed, effectively allowing this Court to analyze whether the time spent was appropriate. *See, e.g.* Knapton Decl., Ex. 3 at Entry No. 540 (4.12 hours billed to "[r]eview declarations of D. Lewis and J. Lewis; draft relevant facts section for class certification motion; coordinate running cite and substance check for class certification brief; review and edit class certification motion"); *id.* at Entry No. 528 (3.75 hours billed to "[c]ompile chart outlining numerosity evidence for upcoming class certification motion; conduct review of numerosity section of class certification motion; attend call with T. Zito to coordinate tasks before filing class certification motion"). For these reasons the Court should decline to reduce the amount of fees awarded to Plaintiffs for block billed entries as Defendants request.

### F. The Case Was Appropriately Staffed By The Law Foundation And Winston, Both Of Whom Exercised Independent Billing Judgment To Eliminate Unnecessary And Duplicative Tasks.

The Law Foundation and Winston initially staffed this case anticipating a large class action litigation with important rights at stake. As the case progressed, and the scope and trajectory of the litigation became more clear, both firms adjusted their staffing to appropriately adapt to the needs of the case on the ground. Viewing the breakdown of hours billed by each of Plaintiffs' attorneys confirms this fact, and demonstrates that despite Defendants' claims that Winston and the Law Foundation overstaffed this case with 8 attorneys from two firms, only five attorneys, *i.e.*, Annette Kirkham, Thomas Zito, Matthew Warren, Constance Ramos, and Corey Attaway, devoted meaningful time to this case. Moreover, each of these attorneys handled discrete tasks during the litigation, were careful not to work on the same projects or duplicate efforts, and only worked together when necessary to discuss important strategic decisions. This arrangement did not lead to inflated higher fees; on the contrary, the coordinated efforts resulted in cost savings, as the more junior attorneys did the majority of the work on the case as set forth in the table below:

| Attorney | Graduation Date | Hours |
|---|---|---|
| Thomas Zito | 2010/2015 | 303 |
| Corey Attaway | 2015 | 253 |
| Constance Ramos | 1999 | 118 |
| Matthew Warren | 2015 | 87 |
| Annette Kirkham | 2001 | 70 |
| Scotia Hicks | 2007 | 35 |
| Nadia Aziz | 2007 | 27 |
| Yelitza Dunham | 2001 | 3 |

However, aware that with two firms working on the same case there would inevitably be some overlap in work, both the Law Foundation and Winston exercised independent billing judgment and made a concerted effort to eliminate tasks it deemed possibly duplicative or overstaffed. In the end the Law Foundation removed tasks from its fee motion amounting to approximately 150 hours (Dkt.

No. 95-1, ¶ 12 (Kirkham Declaration)), while Winston removed tasks amounting to approximately 55.09 hours, resulting in a total discount of $41,337.55 (Dkt No. 95-4, ¶ 9) (Attaway Declaration)).

### G. Using A Percentage-Of-Recovery Method To Cross-Check The Requested Lodestar Fee Award Is Unhelpful As It Does Not Account For The Meaningful Injunctive Relief That The Class Received.

The Ninth Circuit has made clear that "[t]he 'lodestar method' is appropriate in class actions brought under the fee-shifting statutes (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). This, here, is such a case, where the primary relief to the class is injunctive in nature, not monetary. As part of the settlement, separate and apart from the $800,000 common fund, Defendants agreed to refrain from promulgating rules that unreasonably restrict children from playing outside at the Complex going forward; to prominently post signs in the common areas and notices in the monthly newsletters reminding all residents and their children of their right to play outside at the Complex; and to reconstitute the Board of Directors and take other similar steps to ensure that the rights of families with children are adequately protected going forward. Dkt. No. 83 (Joint Statement of Settlement).

Defendants argue, however, that it would useful for this Court to cross-check the requested lodestar fee with the percentage-of-recovery method, which considers "what percentage the total requested fees are of the sum of the total amount of the class' recovery and the total fees." Opp'n at 13. But using this method here would be unhelpful as it fails to account for any benefits that the class received from the comprehensive injunctive relief included in the settlement agreement—which was the primary thrust of this lawsuit. Both class action experts and courts in this District have long recognized the inappropriateness of employing a percentage-of-recovery approach in situations where certain benefits received by the class are not readily quantifiable. Manual for Complex Litigation (Fourth), § 14.121 at 256 ("Particularly where the common benefits are in the form of . . . injunctive relief, estimates of the value or even the existence of a common fund may be

13

unreliable, rendering application of any percentage-of-recovery approach inappropriate."); *In re Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) ("The common fund or common benefit doctrine is limited to those instances when . . . the benefits can be accurately traced"). As such, Defendants request that the Court cross-check the proposed lodestar fee using the percentage method should be disregarded as unhelpful.

### H. Although Plaintiffs' Contend That Each Task Performed For Which It Now Seeks Reimbursement Was Necessary To Succeed In This Case, Plaintiffs Propose An Additional 5 Percent Reduction To Assist The Court.

Given the important public rights at stake in this case, and the possible size of the putative class at issue, Plaintiffs made sure to sufficiently staff this case with two highly-experienced firms. Although it is Plaintiffs' position that each task performed for which it now requests reimbursement was necessary to succeed in this case, Plaintiffs also recognize that some overlapping of efforts was inevitable. With this is mind, and to assist the Court, Plaintiffs propose reducing the requested fees by 5 percent beyond what Plaintiffs have already deducted to account for any possible duplication of efforts or other concerns the Court may have. With the additional 5 percent reduction, Plaintiffs total requested fees come to $445,444.00.

## III. CONCLUSION

Plaintiffs' counsel in the end, were successful in promptly vindicating via settlement an important public right involving children's health and safety, at the risk of non-payment, thereby qualifying for an award of fees and costs. Counsel has made a prima facie showing that it is entitled to the requested fees by providing detailed documentation of the attorneys and work necessary to achieve this result. Accordingly, Counsel respectfully requests that the Court enter an order awarding fees and costs as detailed in its papers, or in the alternative, an amount otherwise deemed appropriate by the Court.

Dated: November 2, 2017

LAW FOUNDATION OF SILICON VALLEY
FAIR HOUSING LAW PROJECT

By: /s Annette D. Kirkham
Annette D. Kirkham

WINSTON & STRAWN LLP

By: /s/ Corey Attaway
Corey Attaway
Attorneys for Plaintiffs

Pursuant to Local Rule 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.