IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMENICA LEWIS, JEROLD LEWIS, DOMENICA LEWIS as guardian ad-litem for her minor children, and PROJECT SENTINEL,<br><br>Plaintiffs,<br><br>v.<br><br>SILVERTREE MOHAVE HOMEOWNERS' ASSOCIATION, INC., CAROL LEE ADAMS, MARILYN BLACK, ANAND BHASKARAN, and TAMELA DURANT, individually and as members of the Board of Directors, and DONALD MURPHY individually and d/b/a/ MANAGEMENT SOLUTIONS,<br><br>Defendants. | No. C 16-03581 WHA<br><br>**ORDER RE MOTION FOR FINAL SETTLEMENT APPROVAL AND ATTORNEYS' FEES** |

**INTRODUCTION**

In this fair housing class action, plaintiffs move for final approval of a proposed settlement agreement and for attorneys' fees. The motion for final approval is **GRANTED**. The motion for attorneys' fees is **GRANTED IN PART**.

**STATEMENT**

Beginning in 2000 and continuing in substantially the same form until 2015, defendant Silvertree Mohave Homeowners' Association adopted a "no sports play" rule, which prohibited any children under the age of 14 from being in the complex's common areas without adult supervision, and from engaging in any "sports activities" in the common areas. The

homeowners' association board of directors enforced this rule, including by posting notice of the rule in the HOA's monthly newsletters and fining parents of children in breach of the rule. Though the "no sports play" rule was suspended for some time in 2015, the board voted to approve an emergency rule prohibiting bike and scooter riding, which was applied notwithstanding the suspension of the remainder of the rule (Dkt. No. 73 at 3–4; Dkt. No. 74 ¶¶ 9–12, 14–16).

In June 2016, plaintiffs filed suit against the HOA, its board members, and the complex manager, Donald Murphy (d/b/a/ Management Solutions). The complaint alleged seven claims for violations of federal and state fair housing and anti-discrimination laws, and sought monetary and injunctive relief on behalf of a putative class of residents of the complex who had minor children living with them in the complex during the class period.

In February 2017, plaintiffs filed an unopposed motion for appointment of interim class counsel in order to engage in settlement discussions. That motion observed that the plaintiffs had identified, through discovery, the scope and enforcement of the rule at issue, the likely size of the class, and the strength of class claims. Plaintiffs expressed their belief that this was the type of case in which early settlement discussions could lead to a resolution and conserve resources available to defendants for the benefit of the class (Dkt. No. 49 at 2–4).

Due to concerns that plaintiffs' counsel may discount a recovery based upon the risk that class certification would be denied, an order directed plaintiffs to make a preliminary showing that they were likely to succeed in certifying a Rule 23 class, and to indicate any circumstances that required settlement discussions other than concerns over wasting the defendants' insurance policy (Dkt. No. 50). After considering plaintiffs' response and declarations (Dkt. Nos. 53–55) an order appointed interim counsel and permitted plaintiffs to proceed to mediation before Magistrate Judge Jacqueline Corley (Dkt. No. 56).

While plaintiffs' motion for class certification proceeded, the parties reached a settlement agreement during a conference with Judge Corley (Dkt. No. 81). On June 15, 2017, an order preliminarily approved the proposed settlement and set a final approval hearing (Dkt. No. 84). A

July 14 order conditionally approved class notice, which notice was mailed on July 21, 2017 (Dkt. No. 90).

Plaintiffs now move for final approval of the settlement on behalf of a class defined as (Dkt. No. 83-1 ¶ 1(e)):

> All persons who currently live or have lived at the Silvertree-Mohave Condominium Complex in Fremont, California, at any time from January 1, 2011, through the present, and lived there with children under the age of 14, or who were themselves minor children under the age of 14.

The settlement provides for injunctive relief including, among other things, that defendants will permanently rescind all no-sports-play rules and will not enact any rule that prohibits children from playing in common areas in the future, that defendants will post signs in common areas making the new child-friendly policy known to residents, that defendants Carol Adams and Marilyn Black will resign from the board, that the board will receive fair housing training, and that the HOA will undertake a plan to evaluate the need for and provide play areas for children in the common areas of the complex (Dkt. No. 83 at 2–3). The settlement further provides that the class will receive $800,000 to be divided equally among the approximately 334 class members. Additionally, lead plaintiffs the Lewis family will receive $35,000, and lead plaintiff Project Sentinel will receive $19,000 (*id.* at 4). The settlement does not provide for any award of attorneys' fees, which the parties agreed will be determined separately by the Court (*id.* at 5).

In exchange, class members have agreed to release the first, second, third, fourth and seventh claims set forth in the complaint. To date, no putative class members have objected to the settlement, and the deadline for written objections has passed. Four class members have opted out (Dkt. No. 94-1 ¶ 4).[1]

Plaintiffs counsel also moves for attorneys' fees in the amount of $468,888, and costs in the amount of $3,461.02 (Dkt. No. 95 at 1).

---

[1] Fourteen class members had their notices returned to the claims administrator, KCC, as undeliverable. KCC found updated addresses and re-mailed notice to ten class members, though it has not explained what became of the other four undelivered notices (Dkt. No. 94-2 ¶ 3).

3

Defendants do not oppose the settlement, or the costs sought. They do oppose the amount of attorneys' fees. This order follows full briefing and oral argument.

**ANALYSIS**

**1. FINAL APPROVAL OF CLASS SETTLEMENT.**

Final approval of a proposed class settlement is appropriate upon a finding that the settlement is "fair, reasonable and adequate" taking into account: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." FRCP 23(e); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015).

"[S]ettlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998). As a result, district courts are "particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Here, there is no intimation of collusion or self-interest on the part of class counsel. Indeed, to guard against this concern, class counsel has agreed that it will not receive any fees as part of the settlement, and instead were required to make a separate fee application, which in no way bears upon the class members' recovery.

Moreover, settlement came after nearly a year of litigation during which time the parties had ample opportunity to take discovery and assess the merits of this action, and settlement talks were conducted under the supervision of Judge Corley. Ultimately, plaintiffs secured substantial relief for the class, including all of the injunctive relief sought as well as a monetary award of approximately $2,335 per plaintiff (under which scheme a family of four will receive

4

approximately $9,340). This is a reasonable recovery when weighed against the risk of going to trial.

Moreover, the release in the proposed class settlement is tailored to the claims actually pursued in this action, and does not bind any class member who could not be located with reasonable diligence, or who opts out. Finally, no class member has objected to the proposed class settlement, and the time for written objections has passed.

In short, having considered the applicable factors, this order finds the proposed class settlement is fair, reasonable, and adequate so as to warrant final approval. Accordingly, final approval is **GRANTED**.

2. **ATTORNEYS' FEES.**

"[T]he court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FRCP 23(h). In civil rights lawsuits such as the present action, courts use the lodestar method to calculate attorneys' fees. *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 222 (9th Cir. 2013). Under this method, a district court must first multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate to arrive at the lodestar, and then determine whether additional considerations warrant adjusting the lodestar. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). These additional considerations include "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d 935, 941 (9th Cir. 2011) (citations and quotations omitted).[2]

The reasonableness of an hourly rate should be determined based on the rates prevailing in the community for "lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, n.11 (1984)**.**

Here, plaintiffs counsel seek $468,888 total based on the expenditure of 897.32 hours (Dkt. No. 95 at 11). This amount is divided between the two firms that represented plaintiffs — Winston & Strawn billing $253,547.50 for 410.25 hours, and the Law Foundation of Silicon

---

[2] Defendants do not contest that plaintiffs are the prevailing party here, or that the lodestar method is the appropriate framework.

5

Valley billing $215,340.50 for 487.07 hours. In support of their billing amounts, both firms have provided task-by-task billing narratives, as well as the position, experience, and rates of each biller (Dkt. Nos. 95-2, 95-3, 95-6).[3]

Defendants first argues that plaintiffs' motion should be rejected out of hand because they failed to comply with Civil Local Rule 54-5(a)'s meet-and-confer requirement before submitting their fee motion to the Court (Dkt. No. 102 at 4). This argument is without merit. The "Notice Regarding Factors to Be Evaluated For Any Proposed Class Settlement" specifically instructed the parties that "the Court prefers that all settlements avoid any agreement as to attorney's fees and leave that to the judge" (Dkt. No. 19 at 4). By following this procedure, the parties avoid any collusion or impropriety in reaching a fee award. While parties must ordinarily meet and confer, the undersigned judge exempts class action settlements from this rule to promote a policy of fairness to class members. Defendants' contention that plaintiffs' counsel should have first met and conferred with them regarding a fee award is incorrect and plaintiffs award is not barred on this basis.

**A.     Rates.**

Defendants next contend that the rates plaintiffs' counsel have billed are unreasonable, and should be adjusted downward.

Plaintiffs' attorneys have billed the following rates (Dkt. No. 95 at 6; Dkt. No 49):

| Name | Title | Graduation Year (JD) | Hourly Rate |
|---|---|---|---|
| **Law Foundation of Silicon Valley** | | | |
| Annette Kirkham | Senior Attorney | 2001 | $660 |
| Nadia Aziz | Senior Attorney | 2007 | $545 |
| Thomas Zito | Senior Attorney | 2010 | $415 |
| Matthew Warren | Staff Attorney | 2015 | $325 |

---

[3] Winston & Strawn will receive no compensation for its time spent, and has agreed that it will donate any recovery to the Law Foundation (Dkt. No. 95 at 13–14).

6

| **Winston & Strawn** | | | | |
|---|---|---|---|---|
| Constance Ramos | Partner | 1999 | **2016** | **2017** |
| | | | $835 | $880 |
| Yelitza Dunham | Partner | 2001 | $755 | N/A |
| Scotia Hicks | Associate | 2007 | $725 | N/A |
| Corey Attaway | Associate | 2015 | $470 | $520 |

The Winston & Strawn attorneys charged their going rates (Dkt. No. 95-4), and the Law Foundation attorneys based their rates upon two civil rights cases in which the same Law Foundation attorneys were awarded fees at the same rates they now request (Dkt. No. 75 ¶ 4, Exh. C; *Huynh v. Hous. Auth. of Cty. of Santa Clara*, No. 14-CV-02367-LHK, 2017 WL 1050539, at *5 (N.D. Cal. Mar. 17, 2017) (Judge Lucy Koh); *CBIA v. City of San Jose*, 110CV167289 (Santa Clara Sup. Ct.)).

Defendants contend that these rates are unreasonably high, and not representative of the prevailing rate for similar work in the Bay Area, especially in light of the relative lack of complexity of this action (Dkt. No. 102 at 7). Defendants' expert, Gerald Knapton, suggests that appropriate billing rates for plaintiffs' attorneys are as follows:

| **Name** | **Title** | **Graduation Year (JD)** | **Hourly Rate** |
|---|---|---|---|
| **Law Foundation of Silicon Valley** | | | |
| Annette Kirkham | Senior Attorney | 2001 | **$290** |
| Nadia Aziz | Senior Attorney | 2007 | **$290** |
| Thomas Zito | Senior Attorney | 2010 | **$290** |
| Matthew Warren | Staff Attorney | 2015 | **$290** |
| **Winston & Strawn** | | | |
| Constance Ramos | Partner | 1999 | **$572** |
| Yelitza Dunham | Partner | 2001 | **$572** |
| Scotia Hicks | Associate | 2007 | **$432** |
| Corey Attaway | Associate | 2015 | **$432** |

7

Using these rates would reduce the total fee from $468,888 to $355,319.16. Knapton arrived at these numbers by consulting the 2016 Real Rate Report, a publication that collects data on legal spending, including fee rates by location, experience, firm size, areas of expertise, industry, and timekeeper role (Dkt. No. 102-3 ¶ 25; Exh. 2 at 5). He used the Real Rate Report's rates for Real Estate in San Francisco, which category includes fair housing and landlord/tenant issues. The Report shows an average rate of $679 per hour for a partner, and $475 per hour for an associate at a firm of Winston & Strawn's size, and an average rate of $356 per hour for partners and $284 per hour for associates at a firm with fifty or fewer lawyers such as the Law Foundation (*id.* ¶ 33). Instead of using the average rate, however, Knapton observed that "[t]his litigation is a standard landlord/tenant 'fair housing' dispute" and used the bottom quartile rates, which are reflected in the chart above (*id.* ¶ 34).

In their reply, plaintiffs' counsel object to this method, arguing that this was not a typical landlord tenant/fair housing case, but was instead a complex, class-action civil-rights case, and should be billed as such (Dkt. No. 105 at 5). *Huynh*, in which Judge Koh approved the same rates that plaintiffs' counsel asks for here, was likewise a fair housing class action (Reply at 5). Other courts in this district have approved similar rates being sought here for work in civil rights class actions. *See, e.g. G.F. v. Contra Costa County,* No. 13-cv-03667-MEJ, 2015 WL 7571789, at \*13-14 (N.D. Cal. Nov. 25, 2015) (Magistrate Judge Maria-Elena James) (civil rights class action settlement approving rates as high as $975 per hour for senior litigators).

Furthermore, "attorneys are not limited to [comparing] only the rates charged or awarded in [fair housing matters]. Instead, they are entitled to the rates charged by attorneys handling similarly complex federal cases in other fields as well, including, when appropriate, class actions." *Guerrero v. California Dep't of Corr. & Rehab*, No. C 13-05671 WHA, 2016 WL 3360638, at \*9 (N.D. Cal. June 16, 2016). Having considered the arguments of both sides, the experience of the attorneys, and the complexity of the legal issues in this matter, this order finds that a ten percent rate reduction is appropriate. This reduction will be applied after all other reductions set forth below.

**B.     Excessive Hours?**

Defendants next argue that plaintiffs' counsel have billed excessive hours on several tasks including (1) investigation (91.98 hours billed at $45,226), (2) preparation of the complaint (185.71 hours billed at $111,768), (3) settlement-related tasks (124.29 hours billed at $66,769), and (4) the motion for class certification (161.86 hours billed at $77,825). Defendants' attorneys' allegedly billed 348.7 hours total on this case (Dkt. No. 102-1 ¶ 8), less than half of the 897.32 hours billed by plaintiffs' counsel, though they have not provided billing entries to support their claimed hours. Defendants seek to reduce the hours spent on the investigation and complaint to 100, hours spent on the class certification motion to 100, and hours spent on settlement to 75.

Plaintiffs' counsel first observes that a comparison between their hours and the hours expended by defense counsel is inapt because unlike plaintiffs, defendants "served no discovery, took no depositions, were not required to petition the Court for interim appointment of class counsel, filed only one opposition to class certification, and did not handle anything related to administration of the settlement class" (Dkt. No. 105 at 9). Moreover, there is no way to check the hours defense counsel expended in this action because defense counsel failed to supply a breakdown of their hours, instead, merely stating that they spent 348.7 hours in total.

Plaintiffs counsel further contends that the time spent investigating this action and preparing the complaint were reasonable under the particular circumstances of this case. They point out that "given the nature of class actions, many of the tasks under this category involved corresponding and coordinating with potential plaintiffs to determine if a class was even viable" (Dkt. No. 105 at 7). Moreover, many of the statutes plaintiffs brought claims under carry specific pre-suit requirements (such as the Davis-Stirling pre-suit alternative dispute resolution requirements), which necessitated detailed research, thus expanding the time spent on the complaint (*ibid.*). Furthermore, the complaint, plaintiffs counsel contends, was highly fact-specific, requiring the review of hundreds of documents, largely made up of monthly newsletters distributed to tenants, which incorporated the discriminatory rules dating back to 2000 (Dkt. No.

9

105 at 8). Much of this review, plaintiffs' counsel argues, also applied toward discovery, but was done up front in order to craft a comprehensive and effective complaint.

Even taking plaintiffs' arguments into consideration, the 277.69 hours and $156,994 expended on investigatory tasks and drafting the complaint is not reasonable. Accordingly, this order applies a fifty percent reduction to these hours, resulting in a reduction of $78,497.

Plaintiffs' counsel also argue that class certification was "belabored with unnecessary document review and case strategy given defendants' failure to timely produce several thousand documents that were highly relevant to establishing a class" (Dkt. No. 105 at 9). This argument, however, rings hollow, as defendants already paid fees for the first class certification motion filed without the aid of these documents, and plaintiffs' counsel is seeking fees here only for the second class certification motion, which should have taken less research and labor given that they had already briefed class certification once, albeit without the benefit of the newly disclosed documents. The 162 hours and $77,825 expended on this second motion, even with the newly disclosed documents, is excessive. This order reduces the amount recoverable for plaintiffs' second class certification motion by fifty percent, resulting in a reduction of $38,913.

Finally, plaintiffs counsel contend that the 125 hours and $66,769 spent on settlement efforts was not unreasonable observing that plaintiffs petitioned for appointment of interim class counsel, and participated in several settlement conferences with Judge Corley. As noted, defendants have failed to provide a comparison of the number of hours they spent on settlement-related tasks. Moreover, plaintiffs' counsel alone petitioned for appointment of interim class counsel, and handled all of the settlement administration. Given the substantial efforts required to successfully settle this action, plaintiffs' counsel are entitled to the requested fees in this area.

### C. Inadequate Narratives/Inappropriate Tasks?

#### *(1) Vague Entries.*

Defendants next argue that certain entries should be altogether disregarded, or at least discounted because by leaving these entries vague plaintiffs have failed to meet their burden to show that the hours were reasonable. By way of example, defendants point to twenty six Law Foundation time entries, which state "work on complaint," or slight variations such as "continue

work on complaint" (Dkt. No. 102-5, Exh. 3). Many entries state merely "phone call to client" or "e-mail to D. Lewis." These entries do not specify the work done or why it was necessary.

Plaintiffs sole response is that "courts consistently find billing entries with almost exactly the same amount of detail as sufficient for effective evaluation" (Dkt. No. 105 at 10). They point to a single decision, *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 114 F. Supp. 3d 819, 832 (N.D. Cal. 2015) (Magistrate Judge Nathaniel Cousins), *objections overruled in relevant part*, No. C 09-3329 CW, 2016 WL 1255454 (N.D. Cal. Mar. 31, 2016), in which the court held that "short descriptions such as 'draft complaint' permit the court to fairly evaluate the reasonableness of time expended." There is a difference, however, between short descriptions and vague descriptions. For example, "draft complaint" generally means wrote, or assembled portions of the complaint. Worked on complaint, on the other hand, could mean that the biller wrote a portion of the complaint, or that he performed research related to the complaint, or did anything else that he might characterize as "work" to the complaint. This is vague. Similarly, entries such as "email to client," "phone call with client," and "complete internal memo for FHLP" (Dkt. No. 102-6), are likewise vague. In other words, the narrative does not give the reader a clear idea of what work was performed, the work's connection to the case, or whether the work was necessary. Approximately three quarters of the entries that defendants claim are vague (amounting to a total of $12,999) are in fact too vague for the court to meaningfully review. Many of these entries, however, relate to investigating the claims and drafting the complaint, time which this order has already substantially discounted. Accordingly, an additional $3,000 discount for vague entries is appropriate here.

### *(2) Administrative Tasks.*

Defendants further argue that numerous entries relate to administrative tasks, which should not have been performed by an attorney, but rather should have been performed by an administrative assistant, and absorbed in the attorneys' fees. Defendants identify forty one hours of such work, billed at a total of $19,567 (Dkt. Nos. 102 at 13; 102-6). The tasks defendants claim are clerical in nature include filing documents on ECF, preparing exhibits and cover sheets, preparing *pro hac vice* applications and notices of appearance, updating calendars, and

11

attending meetings. Many, if not all of these tasks, would normally be performed by a non-attorney. Accordingly, this order reduces the fee award by an additional $19,567.

### *(3)* *Block Billing.*

Defendants next contend that numerous time entries have been block-billed — *i.e.* the narratives list the total time spent on all tasks in one day as opposed to itemizing time spent on a particular task. This practice, they contend, impedes the judge from determining whether the time billed for each individual task is reasonable. Accordingly, they seek a thirty percent reduction for all block-billed entries

Courts may reduce attorneys' fee requests where block billing makes it difficult to ascertain whether the time per task is reasonable, *see Ryan v. Editions Ltd. West*, 786 F.3d 754, 765 (9th Cir. 2015), though they may also permit an award for block-billed time when the entries contain sufficient detail to determine whether billing for the *combined* tasks was reasonable, *see Jackson v. City of Pittsburg*, No. C 09-01016 WHA, 2013 WL 3187326, at *3 (N.D. Cal. June 21, 2013). Here, no reduction is necessary. *First*, numerous entries that defendants characterize as block-billing describe only a single task (*see, e.g.*, Knapton Decl. Exh. 3, Entry No. 149 ("Continue review and edits of initial complaint; forward suggested edits to team in preparation of meeting"); *id.* at Entry No. 475 ("Finalize 30(b)(6) deposition notice to Silvertree Mojave; forward 30(b)(6) deposition notice to C. Ramos for comment and review"); *id.* at Entry No. 477 ("Finalize 30(b)(6) deposition notice to Silvertree Mojave; forward 30(b)(6) deposition notice to C. Ramos for comment and review"). Moreover, most entries that are block-billed contain reasonably detailed descriptions from which it can be determined exactly what tasks were performed. Since this order has already applied overall reductions for tasks it deemed over-billed, it has already captured any waste (including in block-billed entries) and an additional reduction for block billing would be duplicative.

### **D.** **Duplicative Efforts?**

Defendants next argue that this case was overstaffed, with eight attorneys from two firms, which inevitably led to duplicative billing. They point to what they believe to be particularly egregious examples of duplicative or unnecessary billing including: Winston & Strawn partner

Ramos spent eight hours reviewing the complaint and legal issues; Winston Associates Hicks and Attaway spent another combined fourteen hours reviewing the complaint, and Attaway spend an additional 9.7 hours researching the elements of the claims in the complaint, which Attorney Zito had already spent 30.5 hours researching in connection with drafting the complaint (Dkt. No. 102 at 12-13). In total, defendants identify 55 entries totaling 124 hours that they claim are duplicative and should be reduced by 50 percent.

Whether termed duplicative or excessive, however, these problems have already been captured by the substantial reductions applied above (including a fifty percent reduction for time spent on the complaint and preliminary investigation, and a fifty percent reduction for time spent on class certification). Accordingly, no further reduction is warranted.

### E. Cross Check?

Defendants further argue that a cross-check is appropriate to determine whether the requested fees are excessive. While the lodestar method is an appropriate way to calculate attorneys' fees, our court of appeals has "encouraged courts to guard against an unreasonable result by cross-checking their calculations against" a 25% benchmark – the "percentage of recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 945 (9th Cir. 2011). This second look guards against exorbitant rates and overbilling.

Here, total class recovery is $800,000. Plaintiffs attorneys are seeking $468,888, which is approximately 37% of the total outlay. The reductions applied by this order, however, reduce the recovery to $296,020, which amounts to 27% of the total outlay. Given the substantial injunctive relief secured by plaintiffs' counsel, this is well within the range of a reasonable recovery.

### CONCLUSION

The proposed class settlement is fair, reasonable, and adequate. Therefore, plaintiffs' motion for final approval of the class settlement is **GRANTED**. Plaintiffs' counsel's motion for attorneys' fees and costs is **GRANTED IN PART**. Applying the above reductions to plaintiffs' counsel's fee request, plaintiffs' counsel are entitled to **$296,020** in attorneys' fees. This order

further approves **$3,461** in costs.

If either side wishes to continue litigating the amount of the fee award, then the Court will appoint a special master to further evaluate said amount. The parties will share responsibility for paying the special master's fees except that, if one side requests a special master but fails to substantially shift the amount awarded in their favor, then that side will likely pay most, if not all, of the special master's fees.

By **NOVEMBER 30, AT NOON**, each side shall file a statement either unequivocally accepting $296,020 as the amount of attorneys' fees awarded in this action, or requesting appointment of a special master to further evaluate the same.

Also by **NOVEMBER 30, AT NOON**, the parties shall jointly submit a proposed form of judgment. Class counsel shall append to the proposal (1) a list of the names of all class members bound by the class settlement, and (2) a list of all class members excluded from the class settlement for any reason. Class counsel shall file under seal versions of the aforementioned lists that include the last-known address of each class member.

**IT IS SO ORDERED.**

Dated: November 16, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE